KRISTEN DONOGHUE
DAVID RUBENSTEIN
CYNTHIA GOOEN LESSER
MAUREEN MCOWEN
JONATHAN REISCHL
(202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
1700 G Street, NW
Washington, DC 20552

*Attorneys for Plaintiff Bureau of
Consumer Financial Protection*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>    *Plaintiff*,<br><br>            v.<br><br>PROGREXION MARKETING, INC.; PGX HOLDINGS, INC.; PROGREXION TELESERVICES, INC.; EFOLKS, LLC; CREDITREPAIR.COM, INC.; JOHN C. HEATH, ATTORNEY AT LAW, PLLC, D/B/A LEXINGTON LAW<br><br>    *Defendants.* | Case No. 2:19-cv-00298-DBP<br><br>COMPLAINT |

The Bureau of Consumer Financial Protection (Bureau) brings this action against PGX Holdings, Inc. (PGX Holdings), and its subsidiaries Progrexion Marketing, Inc. (Progrexion Marketing), Progrexion Teleservices, Inc. (Progrexion Teleservices), eFolks, LLC (eFolks), and CreditRepair.com, Inc. (CreditRepair.com), and John C. Heath, Attorney at Law, PLLC (Heath PLLC), d/b/a Lexington Law Firm or Lexington Law, and alleges the following:

## INTRODUCTION

1. The Bureau brings this action against Defendants alleging deceptive acts and practices in violation of sections 1031 and 1036 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531 and 5536, and deceptive and abusive telemarketing acts or practices in violation of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 et seq., and its implementing rule, the Telemarketing Sales Rule (TSR), 16 C.F.R. §§ 310.3 and 310.4.

2. Defendants operate two of the largest credit repair companies in the country, Lexington Law and CreditRepair.com. They market their services through various media, including online and over the telephone, offering to help consumers remove negative information from their credit reports and improve their credit scores. Consumers sign up for Defendants' credit repair services and pay hundreds of

dollars in fees seeking to improve their credit scores and get better access to credit products, on better terms.

3.      To generate credit repair sales, Defendants rely on a network of marketing affiliates who advertise a variety of products and services, often related to consumer credit products. As alleged below, Progrexion's marketing affiliates have used deceptive, bait advertising to generate referrals to Lexington Law's credit repair service. For example, one of Progrexion's most productive marketing affiliates falsely advertised that it "guarantee[d] ANYONE a 0-3.5% Down Home Loan no matter how bad their Credit is when we start!"  In reality, the affiliate did not provide any loans at all.  Interested consumers were told that, to participate in the (non-existent) loan program, they had to sign up with Lexington Law. The Progrexion Defendants paid this marketing affiliate for each credit repair sale that resulted from its efforts, despite knowing that it engaged in deceptive practices.

4.      Defendants also violated the law in another way.  Federal law forbids requesting or receiving payment upfront for certain telemarketed credit repair services; if a company offers services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating, fees can only be collected after a certain time period has elapsed and it has been demonstrated that the promised results have been achieved. As alleged below,

Defendants charged consumers when they signed up for the service and on a monthly basis thereafter, without waiting the prescribed period of time and demonstrating that the promised results were achieved, in violation of the federal ban on this type of upfront fee.

5.    The Bureau brings this action to stop Defendants from engaging in ongoing, unlawful practices that harm consumers nationwide by charging consumers unlawful advance fees in connection with credit repair services and by marketing and telemarketing those services through deceptive representations, and to obtain relief for consumers who were harmed by these practices.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action because it concerns federal consumer financial law, 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

7.    Venue is proper in this district because all Defendants reside in or do business in this district. 12 U.S.C. § 5564(f).

## PARTIES

8.    **The Bureau** is an independent agency of the United States. 12 U.S.C. § 5491. The Bureau is charged with enforcing Federal consumer financial laws. 12

U.S.C. §§ 5563 and 5564. The Bureau has independent litigating authority, 12 U.S.C. § 5564(a) and (b), including the authority to enforce the TSR with respect to the offering or provision of a consumer financial product or service subject to the CFPA, 15 U.S.C. § 6105(d).

9.    **PGX Holdings** is a Delaware corporation with its principal place of business in Salt Lake City, Utah. It is the holding company that wholly owns and controls Defendants Progrexion Marketing, Progrexion Teleservices, eFolks, and CreditRepair.com (referred to collectively, with PGX Holdings, as Progrexion or the Progrexion Defendants). A subsidiary of PGX Holdings owns and licenses proprietary software that serves as the platform for most of the credit repair services provided by Heath PLLC and CreditRepair.com, including initiating challenges related to tradelines appearing on consumers' credit reports. Other subsidiaries of PGX Holdings perform telemarketing and telesales for Lexington Law and CreditRepair.com services. Through its subsidiaries and the Progrexion common enterprise, PGX Holdings offers and provides financial advisory services and services relating to consumer report information and engages in telemarketing and telesales.

10.    **Progrexion Marketing** is a Delaware corporation with its principal place of business in Salt Lake City, Utah. It provides advertising and marketing services,

including identifying consumer leads through telemarketing, to Heath PLLC and

CreditRepair.com. It also provides key parts of the credit repair services marketed

and sold to consumers under the brand names Lexington Law and

CreditRepair.com. For example, Progrexion Marketing contracted with one or

more major consumer reporting agencies to obtain copies of Defendants'

customers' credit reports and to allow Progrexion to challenge its customers' credit

report information directly through electronic portals between Progrexion and the

consumer reporting agency. Directly, through its affiliates, and through the

Progrexion common enterprise, Progrexion Marketing offers and provides

financial advisory services and services relating to consumer report information

and engages in telemarketing and telesales.

11.     **Progrexion Teleservices** is a Delaware corporation with its principal place

of business in Salt Lake City, Utah. It telemarkets and sells Lexington Law credit

repair services on behalf of Progrexion and Heath PLLC. Progrexion Teleservices

employs approximately 1,200 people, most of whom are "telephone service

representatives." Directly and through the Progrexion common enterprise,

Progrexion Teleservices offers and provides financial advisory services and

services relating to consumer report information and engages in telemarketing and

telesales.

12.     **eFolks** is a Delaware limited liability company with its principal place of business in Salt Lake City, Utah. It generates leads for and telemarkets Lexington Law and CreditRepair.com credit repair services on behalf of Progrexion. eFolks also owns the trademarks for the CreditRepair.com name and logo and licenses them to CreditRepair.com. Directly and through the Progrexion common enterprise, eFolks offers and provides financial advisory services and services relating to consumer report information and engages in telemarketing and telesales.

13.     **CreditRepair.com** is a Florida corporation with its principal place of business in Salt Lake City, Utah. PGX Holdings created CreditRepair.com in January 2012 as PGX Holdings' direct-to-consumer brand of credit repair services. CreditRepair.com engages in its own telesales to enroll consumers, handling inbound, outbound, and live-transfer calls. It generates leads directly through its website and through Progrexion Marketing and eFolks. Directly and through the Progrexion common enterprise, CreditRepair.com offers and provides financial advisory services and services relating to consumer report information and engages in telemarketing and telesales.

14.     **Heath PLLC** is a law firm based in North Salt Lake, Utah that does business under the trade names Lexington Law Firm and Lexington Law. Heath PLLC has been associated with Progrexion, or its predecessors, and has licensed

the trademark "Lexington Law" since at least 2004. Progrexion conducts most of

Lexington Law's core business operations, but Heath PLLC, operating as

Lexington Law Firm, serves as the face of Lexington Law. For example, Heath

PLLC is the entity that formally registers as Lexington Law for purposes of the

applicable state credit services or credit repair registrations and bonds. Heath

PLLC also fields consumers' complaints about the credit repair services, and

consumers' contracts are with Heath PLLC. Heath PLLC contracts with PGX

Holdings' subsidiaries, including Defendants Progrexion Marketing and

Progrexion Teleservices, to: (1) have Progrexion market, telemarket, and sell over

the telephone the credit repair services that Heath PLLC provides; (2) use

Progrexion's proprietary credit repair products, the tradename Lexington Law, and

the domain name www.LexingtonLaw.com; and (3) obtain other business services,

such as payment processing and payroll services. Because Heath PLLC is a law

firm, Progrexion markets Lexington Law's credit repair services as legal services.

15.    Heath PLLC offers or provides financial advisory services and services

relating to consumer report information that are for use by consumers primarily for

personal, family, or household purposes, or that are delivered, offered, or provided

in connection with such a consumer financial product or service; Heath PLLC

thereby offers or provides a consumer financial product or service as that term is

defined by 12 U.S.C. § 5481(5). *See also* 12 U.S.C. § 5481(15)(A)(viii), (ix).

16.    The Progrexion Defendants are, and have been at all times relevant to this Complaint, "covered persons," as that term is defined by 12 U.S.C. § 5481(6)(A), because they offer or provide a financial product or service for use by consumers primarily for personal, family, or household purposes; or that is delivered, offered, or provided in connection with such a product or service. The products or services they offer or provide consist of financial advisory services, including credit counseling, and the service of "collecting, analyzing, maintaining, or providing consumer report information or other account information, including information relating to the credit history of consumers, used or expected to be used in connection with any decision regarding the offering or provision of a consumer financial product or service." 12 U.S.C. § 5481(15)(A)(viii), (ix).

17.    Progrexion Marketing, Progrexion Teleservices, and eFolks are, and have been at all times relevant to this Complaint, "service providers" to a covered person as that term is defined by 12 U.S.C. § 5481(26), because they have provided material services to covered persons, including the persons offering or providing Lexington Law and CreditRepair.com credit repair services.

18.    PGX Holdings is, and has been at all times relevant to this Complaint, a "related person," as that term is defined by 12 U.S.C. § 5481(25), because it has

been, directly or indirectly, the controlling owner of Progrexion Marketing, Progrexion Teleservices, eFolks, and CreditRepair.com, and because it has been a shareholder, consultant, joint venture partner, or other person who materially participated in the conduct of the affairs of those entities. By virtue of its status as a "related person" under the CFPA, PGX Holdings is also a "covered person" under the CFPA. 12 U.S.C. § 5481(25)(B).

19.    The Progrexion Defendants operate as a common enterprise. They have conducted the business practices described below through interconnected companies that operate under common control, have common business functions, officers, employees, and office locations, and share advertising and marketing. Accordingly, an act by one entity constitutes an act by each entity comprising the common enterprise, and PGX Holdings, Progrexion Marketing, Progrexion Teleservices, CreditRepair.com, and eFolks are each jointly and severally liable for the acts and practices of the Progrexion Defendants, or the acts and practices for which the Progrexion Defendants are responsible, as alleged below.

20.    The Progrexion Defendants and Heath PLLC are, and have been at all times relevant to this Complaint, "sellers," as that term is defined by 16 C.F.R. § 310.2(dd), because, in connection with telemarketing transactions, they provide, offer to provide, or arrange for others to provide goods or services to customers in

exchange for consideration.

21.     The Progrexion Defendants are, and have been at all times relevant to this Complaint, "telemarketers," as that term is defined by 16 C.F.R. § 310.2(ff), because, in connection with telemarketing, they initiate or receive telephone calls to or from customers.

22.     Progrexion Marketing has directed and controlled the telemarketing and telesales activities of Progrexion Teleservices and eFolks, and authorized Progrexion Teleservices and eFolks to market Lexington Law and CreditRepair.com credit repair services. Progrexion Marketing has knowledge of and controls or has the ability to control the activities of Progrexion Teleservices and eFolks discussed herein.

23.     Progrexion Marketing, as the principal of Progrexion Teleservices and eFolks, is liable for the actions of its agents.

24.     Progrexion Marketing has directed and controlled the marketing and telemarketing activities of its marketing affiliates acting on its behalf, and authorized them to market Lexington Law and CreditRepair.com credit repair services. Progrexion Marketing has knowledge of and controls or has the ability to control the activities of its marketing affiliates discussed herein.

25.     Progrexion Marketing, as the principal of its marketing affiliates, is liable for

the actions of its agents.

26.     PGX Holdings has directed and controlled the activities of Progrexion Marketing, Progrexion Teleservices, eFolks, and CreditRepair.com, and authorized those entities to offer and provide credit repair services and to market Lexington Law and CreditRepair.com credit repair services. PGX Holdings has knowledge of and controls or has the ability to control the activities of Progrexion Marketing, Progrexion Teleservices, eFolks, and CreditRepair.com discussed herein.

27.     PGX Holdings, as the principal of Progrexion Marketing, Progrexion Teleservices, eFolks, and CreditRepair.com, is liable for the actions of its agents.

## FACTUAL ALLEGATIONS

### Progrexion's "Hotswap Program"

28.     Lexington Law and CreditRepair.com are among the largest credit repair brands in the United States.

29.     Progrexion, or its predecessors, has been in the business of providing credit repair services to consumers under the trade names "Lexington Law Firm" and "Lexington Law" since approximately 1994, and through CreditRepair.com since at least 2012.

30.     Progrexion receives the majority of the revenue generated from the sale of Lexington Law credit repair services.

11

31.     To market Lexington Law's and CreditRepair.com's services, Progrexion

employs affiliate marketing programs. As Progrexion says on its website, "One of

the primary ways Progrexion generates massive quantities of leads for our clients

is through our strong working relationships with numerous affiliates."

32.     One of the affiliate marketing programs Progrexion uses to generate such

"massive quantities of leads" is its "Hotswap Program."

33.     The marketing affiliates that participate in this program — "Hotswap

Partners" — are companies that offer certain products such as rent-to-own housing

contracts, mortgages, auto loans, or personal loans.

34.     Hotswap Partners use telemarketing campaigns consisting of inbound and

outbound telephone calls to consumers across the country to market these products

and services to consumers.

35.     During these telemarketing calls, the Hotswap Partner identifies potential

credit repair customers to refer to Progrexion, and live-transfers them to

Progrexion's telemarketing sales operations.

36.     Progrexion refers to these live telephone transfers as "hotswaps."

37.     In some instances, however, the Hotswap Partner does not actually offer the

products or services it purports to provide, and is instead functioning purely as a

source of consumer leads for Progrexion.

38.     Progrexion cultivates and manages its relationships with Hotswap Partners through Progrexion Marketing.

39.     A significant amount of Progrexion's credit repair business is generated by its Hotswap Partners.

40.     The Hotswap Program is intended to convince consumers to purchase credit repair services when they have been denied a product or service they wanted. According to Progrexion's website, "This call-based program is so effective because it connects people to credit repair at the moment they've been denied credit."

41.     Hotswap Partners typically offer their products and services through their websites. They drive consumer traffic to their websites through a variety of methods, including: Search Engine Optimization methods that make their websites more likely to appear in an internet search for a product or service; advertisements on third-party websites such as Facebook and Craigslist; and the use of affiliate marketing networks where the Hotswap Partners pay commissions to other companies for providing leads or directing consumers to their websites.

42.     If consumers are interested in the products or services advertised by the Hotswap Partner, they are directed to either call the Hotswap Partner or provide their personal contact information and authorize the Hotswap Partner to contact

them via telephone.

43.     Consumers who provide their information are either contacted via telephone by the Hotswap Partner, or their contact information — a "lead" — is sent to a third-party company that calls the consumer.

44.     Some leads generated by Hotswap Partners are sent to eFolks for it to conduct outbound telemarketing for Lexington Law or CreditRepair.com.

45.     When a Hotswap Partner contacts a consumer by phone, it provides the consumer with further information about the products and services advertised by the Hotswap Partner.

46.     The Hotswap Partners also pitch Lexington Law's and CreditRepair.com's credit repair services, typically after telling the consumer that he or she has been denied a particular credit product or service, offering the consumer unfavorable terms on a loan, or telling the consumer that he or she will be eligible for the product or service, or for better terms on the product, if they first enroll in the credit repair service.

47.     For example, a telemarketing script used by one or more of Progrexion's marketing affiliates, which Progrexion reviewed and distributed to at least one marketing affiliate as a model script, says:

> They are credit analysts and have the legal ability to remove questionable negative items on your credit report such as: **(LIST Negatives Client**

**mentioned)**. By removing these negative items, it should allow us to come back and look to refinance you with a conventional lender offering better rates and terms in the future.

48.     Progrexion instructs Hotswap Partners to pre-qualify a consumer as suitable for Lexington Law or CreditRepair.com credit repair services prior to the hotswap transfer.

49.     Prequalification involves Hotswap Partners ascertaining the following, prior to transferring a consumer to Progrexion: (1) the consumer has derogatory tradelines on his or her credit reports; (2) the consumer is not already a customer of Lexington Law or CreditRepair.com; and (3) the consumer has a valid credit or debit card that they could use to pay for credit repair services.

50.     Progrexion instructs the Hotswap Partners to disguise these qualifications for Lexington Law and CreditRepair.com as purported qualifications for the Hotswap Partners' products and services.

51.     Once pre-qualified, consumers are offered the opportunity to be connected with Lexington Law or CreditRepair.com for a "free credit repair consultation."

52.     Progrexion instructs Hotswap Partners to tie the credit repair consultation to obtaining the consumer's desired product or service.

53.     Hotswap Partners follow this instruction. For example, one Hotswap Partner script told consumers, "in order for you to qualify, you need to work on improving

15

your credit score and the first step in the Rent to Own program is a credit

consultation with Lexington Law."

54.     Once the Hotswap Partner completes its pitch, it transfers the consumer to a

Progrexion call center through a dedicated telephone line assigned to the particular

Hotswap Partner.

55.     Once connected, the Hotswap Partner indicates to the Progrexion

representative that he or she is calling on behalf of the Hotswap Partner, introduces

the consumer, and states the consumer's credit goal or the reason why they are

seeking credit repair.

56.     Progrexion then proceeds to offer the consumer its free credit repair

consultation and pitch its credit repair services, all the while repeatedly referencing

the consumer's credit goal, as provided by the Hotswap Partner during the live

transfer.

57.     Progrexion tells consumers that during the credit repair consultation, "[w]e

will … go over your credit score, review the reasons for your score and then

provide you solutions to improve your credit score and report."

58.     After reviewing a consumer's summary credit report, Progrexion

Teleservice's telemarketing script instructs its employees to tell consumers, "based

on what we have discussed about your credit situation, it sounds like you may be a

good candidate for our services." Thereafter, consumers are offered the opportunity to enroll in Lexington Law's or CreditRepair.com's credit repair services.

59.     Progrexion pays a fee or a commission to its Hotswap Partners for each consumer transferred to Progrexion who signs up for Lexington Law or CreditRepair.com.

60.     At times, Progrexion has trained its teleservices employees on the purported products and services of particular Hotswap Partners so that they could better connect credit repair to the initial offering by those Hotswap Partners.

61.     For example, one Progrexion call center held training sessions with its telemarketing staff on the particular services of major Hotswap Partners, the demographics of the consumers the Hotswap Partners transferred to Progrexion, and key points that the Hotswap Partners wanted emphasized about their services and the importance of credit repair.

62.     At other times, Progrexion provided written guidance to its telemarketing staff about the Hotswap Partners' purported products and services, including whether the Hotswap Partner required consumers to sign up for Progrexion credit repair services as a condition of accessing the Hotswap Partner's purported products or services.

63.     Progrexion provided other assistance to Hotswap Partners, such as:

    a.  Providing telemarketing scripts, editing Hotswap Partners' telemarketing scripts, and providing model telemarketing calls for training and scripting purposes;

    b.  Providing prizes and incentives to Hotswap Partner employees for increased credit repair sales;

    c.  Assisting with website design and the creation of new marketing campaigns to replace or supplement the Hotswap Partner's current lead generation activities;

    d.  Creating email templates for direct-to-consumer marketing; and

    e.  Providing Hotswap Partners with demographic information on Lexington Law clients so that the Hotswap Partners could target particular lead sources and optimize their scripting.

64.     Progrexion provides this assistance to its Hotswap Partners because creating a clear connection between the products and services offered to consumers and credit repair is a key part of its marketing strategy.

65.     Describing the Hotswap Program, Progrexion's website says, "This program provides a way for companies to monetize their non-qualified customers by live transferring them to our call centers for a free consultation with the hopes of

retaining them in one of our credit repair programs."

66.    This approach gives consumers the impression that they will be able to obtain the product they sought from the Hotswap Partner after their credit is fixed through Progrexion's credit repair service.

67.    Progrexion's marketing to consumers includes representations that directly tie Lexington Law's and CreditRepair.com's services to particular products — what Progrexion calls, in its marketing and telemarketer training materials, a consumer's aspirational credit "dreams."

68.    For example, in a general guidance document that appears to have been distributed widely to Hotswap Partners, Progrexion provided Hotswap Partners with a sample telemarketing script that references "key components" Hotswap Partners are required to say to generate credit repair leads. The script includes language telling consumers that credit repair services will get them one step closer to obtaining the Hotswap Partner's purported products:

- Credit repair "can just make the whole process of getting this loan funded easier"; and

- "[Y]ou just need to get a few things taken care of with your credit in order to get qualified for a loan, that is *exactly* what Lexington specializes in."

19

69.    By creating a connection between the consumer's desired credit product and credit repair, through the representations of its Hotswap Partners, Progrexion sought to increase Lexington Law's and CreditRepair.com's sales.

70.    As one Progrexion Marketing Affiliate Manager explained to a Hotswap Partner in an email dated December 9, 2015, the "biggest/main point to make (in order for this lead to convert on our end) is that the client has to feel that credit repair is a necessary and easy step in the RTO [rent-to-own]->Mortgage process."

**Deceptive Hotswap Marketing**

71.    At least one, if not more, of Progrexion's Hotswap Partners have made misrepresentations to consumers to generate consumer leads and induce consumers to sign up for Lexington Law or CreditRepair.com.

72.    Hotswap Partners have used advertisements that included fake real estate ads, fake rent-to-own housing opportunities, fake relationships with lenders, false credit guarantees, and false and unsubstantiated statements about past consumer outcomes. The ads have also included false and unsubstantiated statements about consumers' likelihood of success in obtaining products and services such as rent-to-own housing contracts, mortgages, or personal loans.

73.    Additionally, although Progrexion's website portrays the Hotswap Partner program as an opportunity for partners to sell consumer leads as a source of

revenue when consumers do not qualify for the products or services the partner is providing, one or more Hotswap Partners did not actually offer or provide any such products or services. Instead, they offered illusory products or services to lure in consumers and market credit repair services.

74.     From at least 2012 through 2017, one of Progrexion's most productive Hotswap Partners, referred to in this Complaint as "HSP1," used misrepresentations to induce consumers to sign up for Lexington Law.

75.     From at least 2012 through 2017, HSP1 contacted consumers across the country through campaigns and programs of inbound and outbound phone calls, and transferred to Progrexion over 100,000 consumers who signed up for Lexington Law credit repair services.

76.     HSP1 purported to offer consumers low-interest mortgages, access to rent-to-own housing, and other products or services, but in reality did not provide any such products or services.

77.     HSP1, in its own words, acted "merely as an affiliate call center that transfers potential clients to Lexington Law."

78.     Despite merely serving as an affiliate call center, HSP1 advertised extensively on Craigslist and Facebook, and through a network of paid affiliates, claiming to be able to help consumers with poor credit scores obtain favorable

mortgages and rent-to-own housing contracts.

79.    At various times from 2012 through 2017, HSP1 employed numerous falsehoods to induce consumers to contact, or agree to be contacted by, its telemarketing operation, including:

a. One of HSP1's websites stated that enrolling in its service guaranteed any consumer "a 0-3.5% down" mortgage "no matter how bad their Credit is when we start";

b. Another HSP1 website represented that the company had helped "over 15,000 people buy a home that started with under a 500 Credit Score when they came to [HSP1]";

c. HSP1's ads offered housing that was not actually available and instead routed interested consumers to HSP1 or, at times, directly to Progrexion;

d. HSP1's Facebook advertisements often referenced a "90-day Blitz" program offering home financing in a very short timeframe with express promises such as: "BUY A HOME IN THE NEXT 30-90 DAYS NO MATTER WHERE YOUR CREDIT IS NOW"; and

e. Other HSP1 advertisements said: "Are you tired of dead ends? Games? Gimmicks? Bad Houses and Fake Ads? Would You like to END all

that? We know you would…. We … have helped over 12,000 people

get homes who NEVER thought they could."

80.    Once consumers were on the phone with HSP1, HSP1 made additional

misrepresentations. For example, some consumers were told that HSP1's program

for achieving home ownership "works every time."

81.    In some instances, consumers were told that if they achieved a 640 credit

score they would "qualify with one of our lenders." HSP1, which merely acted as a

call center, had no associated lenders.

82.    HSP1's marketing also included specific claims about Progrexion's credit

repair services. For example, one of HSP1's telemarketing scripts stated about

Lexington Law: "They will review everything with you and put a plan together to

eliminate any negative items to boost your score."

83.    At times, HSP1 told consumers that they had to sign up with Lexington Law

in order to enroll in HSP1's services and ultimately obtain the products or services

advertised by HSP1.

84.    HSP1 told consumers, without any review of their credit history or other

eligibility factors, that their credit score was the only thing keeping them from their

desired product.

85.    For example, one HSP1 telemarketing script told consumers "you'd be the

perfect candidate for rent-to-own, but your credit is the only thing holding you back – this makes you a great match for credit repair."

### Progrexion's Knowledge of Deceptive Practices in its Hotswap Program

86.   Progrexion had knowledge that HSP1 engaged in the deceptive practices described in Paragraphs 74-85, above.

87.   Progrexion claims that it prescreens and monitors Hotswap Partner websites prior to and during its marketing relationship with the Hotswap Partners.

88.   Despite purportedly monitoring Hotswap Partner websites, Progrexion allowed the misrepresentations described in Paragraph 79(a) and (b) to remain on HSP1's websites while HSP1 generated leads for Progrexion.

89.   Progrexion also had knowledge that HSP1 used the fake ads described in Paragraph 79(c). For example, a Progrexion employee who reviewed one of HSP1's ads posted on Craiglist noted: "Seeing the ad firsthand, I understand why so many of these clients feel misled when they call in."

90.   Consumer complaints to the Better Business Bureau and law enforcement agencies describe other Progrexion Hotswap Partners using Craigslist ads with fake housing opportunities to draw in customers.

91.   Progrexion had a company policy in place in 2016 that restricted Hotswap Partners' use of Craigslist to generate traffic for Progrexion.

92.     Despite this policy, Progrexion knew that certain Hotswap Partners were using Craigslist ads in their marketing and continued to do business with them for years.

93.     At least one other rent-to-own housing Hotswap Partner continued to use Craigslist rent-to-own housing ads in its marketing activities through at least 2018.

94.     Progrexion was also aware of HSP1's 90-Day Blitz advertising on Facebook described in Paragraph 79(d), in which it told consumers that they could get into a home in 90 days regardless of their credit situation. At one point a Progrexion employee emailed the owner of HSP1 and stated that the company was aware of the 90-Day Blitz program and was concerned that the program was setting "unreal expectations for clients" and creating confusion. She noted that "[m]ost of these clients need more than 3 months of credit repair…."

95.     Despite Progrexion's acknowledgement that most consumers would not be able to obtain a mortgage in the promised timeframe, Progrexion continued its marketing relationship with HSP1 even as HSP1 continued to advertise the 90-Day Blitz on Facebook.

96.     Progrexion also provided model scripts to HSP1 and its other Hotswap Partners, and even created entire scripts for some affiliates, including HSP1, that set consumer expectations about the likely results of the credit repair services.

97.     For example, Progrexion authored a telemarketing script for HSP1 that included statements asking if consumers were interested in "repairing [their] credit to get approved for a [mortgage, refinance, rent-to-own, or car]" and telling consumers that their credit was "the only thing holding you back" from the products they desired.

98.     Progrexion also routinely reviewed, and provided edits and suggestions for, the telemarketing scripts used by HSP1 and other Hotswap Partners.

99.     For example, Progrexion reviewed the telemarketing script from which HSP1 made representations regarding the ability of consumers to qualify with one of its purported lenders as well as Lexington Law's capability to "eliminate any negative items to boost your score."

100.    Progrexion also had knowledge that HSP1 did not offer or provide the products and services it advertised, such as low-down-payment mortgages and rent-to-own housing contracts.

101.    For example, Progrexion learned that HSP1 did not collect location information from consumers inquiring about its rent-to-own housing and mortgage offers when eFolks entered into an agreement with HSP1 to receive leads generated by its marketing activities.

102.    The failure to collect location information was unusual among Progrexion's

rent-to-own housing Hotswap Partners.

103.   One eFolks employee noted that such information was necessary to "know the area [consumers are] looking to buy." In fact, eFolks' system required such information in order for the leads to upload into its automatic dialer.

104.   Despite such warnings, Progrexion continued its marketing relationship with HSP1 and suggested that the company simply make up zip codes for the consumer leads so that eFolks could upload them into its automatic dialer for the purpose of contacting the consumers directly to market Progrexion and Heath PLLC's credit repair services.

105.   Progrexion was aware that other Hotswap Partners marketing rent-to-own housing engaged in questionable marketing activities.

106.   For example, in a July 2016 email, a Progrexion employee reported concerns to another Progrexion employee that certain Hotswap Partners offering rent-to-own housing were making implicit guarantees that credit repair would result in consumers obtaining the rent-to-own housing advertised. The Progrexion employee suggested that this situation be handled by changing the scripting used by Hotswap Partners in order to "avoid our agents hearing those expectations. The logic being that it is easier to plead ignorance if you're truly ignorant."

107.   In another example, in a December 2014 email, Progrexion's Senior

Director of Compliance reported that "[m]any [clients] have claimed that [a marketing affiliate] is guaranteeing loan approval as long as they sign up for Lexington's services." In response, one of Progrexion's marketing directors noted that the affiliate "is one of our largest Hotswap Partners" and that the company had previously heard the same complaint before.

108.   In August 2016, a consumer filed a complaint with the Bureau claiming that the same marketing affiliate discussed in Paragraph 107 represented that "after enrollment with Lexington Law I was guaranteed a loan." The Bureau forwarded the complaint to Heath PLLC, who replied to the Bureau and the consumer that it had "no knowledge" of the affiliate. Despite it being one of the "largest Hotswap Partners" sending consumers to Lexington Law, and despite Progrexion's prior knowledge of similar guarantee claims, Heath PLLC claimed that the consumer "appears to have constructed a relationship between us and [the marketing affiliate]…that we are unaware of." Heath PLLC further stated that it could not "take responsibility for the alleged representations that may or may not have been made to this person" by the marketing affiliate.

**Defendants' Marketing and Sale of Services to Fix Consumers' Credit**

109.   The Telemarketing Sales Rule prohibits telemarketers and sellers from "[r]equesting or receiving payment" upfront for "goods or services represented to

remove derogatory information from, or improve, a person's credit history, credit record, or credit rating."

110.   On behalf of consumers, Lexington Law and CreditRepair.com initiate disputes with furnishers and consumer reporting agencies related to tradelines appearing on consumers' credit reports.

111.   Progrexion markets Lexington Law and CreditRepair.com as providing services that will assist consumers in removing derogatory information from, or improving, the consumers' credit history, credit record, or credit rating.

112.   For example, at various times since July 21, 2011, the Lexington Law website included the following representations:

    a.  "If questionable negative items are hurting your credit, removing them can improve your score. Here's how we do it:

        1. ANALYZE
           We work with you to identify any questionable negative items hurting your score.
        2. ADDRESS
           We challenge those negative items with the bureaus and your creditors.
        3. ACCELERATE
           We keep the process going, helping you reach your credit goals."

    b.  "Lexington Law is here to help you meet your credit score goals. No matter your credit history and financial standing, our credit repair services are designed to help you improve your credit score";

    c.   "Lexington Law's lawyers have the knowledge and tools to start fixing your credit score by working to remove inaccurate items on your report";

    d.   "**Our results prove it can be done**. From late payments to charge-offs to bankruptcies, our firms [sic] clients have improved their credit, by removing practically every type of questionable negative item" (bolded language in larger font type on the website);

    e.   "**Ask for professional help:** If you want to dramatically improve your credit standing — ultimately leading to approval for bigger loans with better terms — consider asking a professional. You can considerably improve your financial standing with the right help"; and

    f.   "Lexington Law has developed tools and strategies that have proven to be effective at removing unfair, inaccurate, and unsubstantiated negative items."

113.   Other examples are found in Lexington Law's advertisements published online at various times since July 21, 2011, such as:

    a.   "Need Credit Repair Help? Lexington Law can help you remove negative items on your credit reports. . . .  Lexington Law | Trusted Leaders in Credit Repair."

    b.   "Credit not where you need it to be? . . . Fix Your Bad Credit. Lexington

Law® has assisted over 500,000 clients with their credit profile."

c. "40 POINTS ON YOUR CREDIT COULD COST YOU $40,000 ON A

30-YEAR MORTGAGE. Challenge questionable items with bureaus . . .

TRUSTED LEADERS IN CREDIT REPAIR FOR A REASON."

114.   Another Lexington Law advertisement published online in at least January

2019 stated:



115.   Another Lexington Law advertisement published online in at least January

2019 stated:



116.   Another Lexington Law advertisement published online in at least January

2019 stated:



117.   At various times since July 21, 2011, CreditRepair.com's services were marketed as follows:

a.  "We work with the credit bureaus and your creditors to challenge the unfair or inaccurate negative report items that affect your credit score . . . . This can all help to fix your credit";

b.  "CreditRepair.com will help you challenge the negative items on credit reports with the intention of getting them removed";

c.  "Our credit repair services help to fix your credit report";

d.  "Previous members have seen an average 40 point TransUnion credit score gain during four months of membership";

e.  "CreditRepair.com Averages 11.6 removals in 4 months";

f.  "TURN A HIGH CREDIT SCORE INTO A LOW MORTGAGE RATE. IMPROVE YOUR CREDIT SCORE AND QUALIFY FOR A LOW INTEREST MORTGAGE THAT FITS YOUR NEEDS"; and

g.  "Not Sure What to Do About Bad Credit? Let us help guide the way. You don't have to live with bad credit and high interest rates. Take advantage of our knowledge, experience, and advanced technology, and we'll help you create a personal game plan to help you repair your credit. Call 1-844-372-1974 to get started. Sign Up Today! Our System is Proven and It Works."

118.   One CreditRepair.com advertisement published online in at least August

2018 stated:



119.   During telemarketing calls, Progrexion and its marketing affiliates make

additional representations that their credit repair services will result in the removal

of derogatory tradelines from credit reports or improvements to the consumer's

credit rating.

120.   For example, one Progrexion telemarketing script from 2012 says: ". . . our

service includes an array of letters with your creditors . . . designed to persuade

your creditors to remove items;" and "[we] will analyze your credit reports … and

show specific ways you can improve your credit . . . ." The script tells consumers:

> You can see that your credit score can have dramatic effects on your life. Your
> credit score is comprised solely from the information found in your credit
> report. In other words, if you want to improve your score, you have to improve
> your credit report.

The script also asks the consumer: "[h]ow would your life be different in a year from now with good credit?"

121.   In an audio recording of a telemarketing call from May 2016, a Progrexion agent told a consumer "we assist our clients with cleaning up their credit reports completely by working on getting every single negative item, amount, and remark completely deleted off their reports altogether. It is what we do best. In other words, credit repair."

**Illegal Upfront Fees for Telemarketed Credit Repair Services**

122.   The Telemarketing Sales Rule states that fees for telemarketed "goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating" cannot be charged until the time frame in which the seller has represented all of the goods or services will be provided to that person has expired and the seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved.

123.   At the time of enrollment with Lexington Law or CreditRepair.com, Progrexion charges consumers a fee, which has been between $9.99 and $14.99 since July 2011, for a complete copy of their TransUnion credit report.

124.   Consumers are told that paying this fee is necessary to begin the credit repair process.

125.   After enrolling with Lexington Law or CreditRepair.com, consumers are then charged their first credit repair service work fee, typically $99.95, five to fifteen days after enrollment.

126.   Consumers are then charged ongoing monthly fees by Progrexion and Heath PLLC for their credit repair services of $79.95 to $129.95, depending on the service level the consumer chooses.

127.   Heath PLLC and Progrexion request and receive these fees from consumers prior to providing consumers with documentation, in the form of a consumer report from a consumer reporting agency, demonstrating that the promised credit repair results have been achieved, such report having been issued more than six months after the results were achieved.

128.   Heath PLLC and Progrexion continue to charge monthly fees until consumers affirmatively cancel their Lexington Law or CreditRepair.com contracts.

**COUNT I**

**The Progrexion Defendants and Heath PLLC Charged Advance Fees for Credit Repair Services in Violation of the TSR**

129.   The Bureau re-alleges and incorporates by reference Paragraphs 1-128.

130.   It is an abusive telemarketing act or practice and a violation of the TSR for any seller or telemarketer to request or receive payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating, until:

a.   The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and

b.   The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved. 16 C.F.R. § 310.4(a)(2).

131.   The Progrexion Defendants and Heath PLLC are sellers and the Progrexion Defendants are telemarketers under the TSR. 16 C.F.R. § 310.2(dd), (ff).

132.   The Progrexion Defendants' and Heath PLLC's credit repair services are represented to consumers as services to remove derogatory information from, or improve, the consumers' credit histories, credit reports, or credit ratings.

37

133.   Progrexion Defendants and Heath PLLC routinely requested and received payment of a fee or consideration for their credit repair services before:

    a.   The time frame in which they represented all of their goods or services would be provided to the consumer expired; or

    b.   They provided the consumer with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results were achieved, such report having been issued more than six months after the results were achieved.

134.   Therefore, the Progrexion Defendants' and Heath PLLC's conduct constitutes abusive telemarketing acts or practices in violation of 16 C.F.R. § 310.4(a)(2).

## COUNT II
### The Progrexion Defendants Engaged in Deceptive Acts or Practices in Violation of the CFPA

135.   The Bureau re-alleges and incorporates by reference Paragraphs 1-128.

136.   It is unlawful for any covered person or service provider to engage in a deceptive act or practice in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service. 12 U.S.C. §§ 5531 and 5536(a)(1)(B).

137.   The Progrexion Defendants are covered persons, service providers, or both,

under the CFPA. 12 U.S.C. § 5481(6), (26).

138.   In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of Lexington Law and CreditRepair.com credit repair services, the Progrexion Defendants, directly or through at least one affiliate, acting on Progrexion's behalf and for its benefit, have represented, expressly or by implication, that:

   a.   The advertised product or service, such as a loan or rent-to-own housing contract, was available through the affiliate, or that it would be available after signing up for credit repair services with Lexington Law or CreditRepair.com; or

   b.   Consumers were either guaranteed or had a high likelihood of obtaining the advertised product or service, such as a loan or rent-to-own housing contract.

139.   In truth and in fact:

   a.   The advertised product or service was not available through the affiliate; or

   b.   Neither Progrexion nor the affiliate had a reasonable basis for representing that consumers were either guaranteed or had a high likelihood of obtaining the advertised product or service, such as a loan

or rent-to-own housing contract.

140.   These representations have been material and likely to mislead consumers acting reasonably under the circumstances.

141.   The Progrexion Defendants had actual knowledge of the misrepresentations, reckless indifference to the misrepresentations, or an awareness of the high probability of the misrepresentations along with an intentional avoidance of the truth, with respect to the deceptive representations made by at least one affiliate.

142.   Despite this knowledge, the Progrexion Defendants continued to sign up consumers through the affiliate or participated in the affiliate's deceptive conduct.

143.   Therefore, the representations as set forth in Paragraph 138 of this Complaint are false and misleading, and constitute deceptive acts or practices in violation of 12 U.S.C. §§ 5531 and 5536(a)(1)(B).

## COUNT III
### The Progrexion Defendants Made False or Misleading Statements to Induce Another Person to Pay for Goods or Services in Violation of the TSR

144.   The Bureau re-alleges and incorporates by reference Paragraphs 1-128.

145.   It is a deceptive telemarketing act or practice and a violation of the TSR for a seller or telemarketer to make a false or misleading statement to induce another person to pay for goods or services. 16 C.F.R. § 310.3(a)(4).

146.   The Progrexion Defendants are telemarketers, sellers, or both, under the

TSR. 16 C.F.R. § 310.2(dd), (ff).

147. In connection with the telemarketing of Lexington Law and CreditRepair.com credit repair services, the Progrexion Defendants, directly or through at least one affiliate, acting on Progrexion's behalf and for its benefit, have represented, expressly or by implication, that:

    a. The advertised product or service, such as a loan or rent-to-own housing contract, was available through the affiliate, or that it would be available after signing up for credit repair services with Lexington Law or CreditRepair.com; or

    b. Consumers were either guaranteed or had a high likelihood of obtaining the advertised product or service, such as a loan or rent-to-own housing contract.

148. In truth and in fact:

    a. The advertised product or service was not available through the affiliate; or

    b. Neither Progrexion nor the affiliate had a reasonable basis for representing that consumers were either guaranteed or had a high likelihood of obtaining the advertised product or service, such as a loan or rent-to-own housing contract.

149.   These representations have been material and likely to mislead consumers acting reasonably under the circumstances.

150.   The Progrexion Defendants had actual knowledge of the misrepresentations, reckless indifference to the misrepresentations, or an awareness of the high probability of the misrepresentations along with an intentional avoidance of the truth, with respect to the deceptive representations made by at least one affiliate.

151.   Despite this knowledge, the Progrexion Defendants continued to sign up consumers through the affiliate or participated in the affiliate's deceptive conduct.

152.   Therefore, the representations as set forth in Paragraph 147 of this Complaint are false and misleading, and constitute deceptive telemarketing acts or practices in violation of 16 C.F.R. § 310.3(a)(4).

## COUNT IV
### The Progrexion Defendants Violated the CFPA by Substantially Assisting a Covered Person Engaged in Deceptive Acts or Practices

153.   The Bureau re-alleges and incorporates by reference Paragraphs 1-128.

154.   It is unlawful for any person to knowingly or recklessly provide substantial assistance to a covered person or service provider in violation of the provisions of 12 U.S.C. § 5531. 12 U.S.C. § 5536(a)(3).

155.   At least one of the Progrexion Defendants' affiliates, HSP1, was, at all times relevant to this Complaint, a "covered person," as that term is defined by 12 U.S.C.

§ 5481(6)(A), because it offered or provided financial products or services for use by consumers primarily for personal, family, or household purposes, or that were delivered, offered, or provided in connection with such a product or service. The products or services HSP1 offered or provided included consumer credit, including mortgages; financial advisory services, including credit counseling; and services relating to consumer report information, including credit repair services. 12 U.S.C. § 5481(15)(A)(i), (viii), (ix).

156.   At least one of the Progrexion Defendants' affiliates, HSP1, was also, at all times relevant to this Complaint, a "service provider" to a covered person as that term is defined by 12 U.S.C. § 5481(26), because it provided material services to one or more covered persons, including Progrexion.

157.   At all times relevant to this Complaint, at least one affiliate, HSP1, engaged in deceptive acts or practices in violation of the CFPA, 12 U.S.C. §§ 5531 and 5536(a)(1)(B), by misrepresenting, expressly or by implication, the availability of an advertised product or service, such as a loan, or that consumers were either guaranteed or had a high likelihood of obtaining the advertised product or service. These misrepresentations have been material and likely to mislead consumers acting reasonably under the circumstances.

158.   The Progrexion Defendants provided substantial assistance to at least one

affiliate, HSP1, including by providing advice and content for the affiliate's
telemarketing scripts, advice regarding its websites and other marketing vehicles,
the means and mechanisms for live-transferring consumers between the affiliate
and Progrexion, and payment for each lead that resulted in a Lexington Law or
CreditRepair.com sale.

159.    The Progrexion Defendants had the requisite knowledge of or reckless
disregard for the deceptive conduct described in Paragraph 157.

160.    Therefore, the Progrexion Defendants violated 12 U.S.C. § 5536(a)(3).

## COUNT V
**The Progrexion Defendants Assisted and Facilitated Violations of the TSR**

161.    The Bureau re-alleges and incorporates by reference Paragraphs 1-128.

162.    It is a deceptive telemarketing act or practice and a violation of the TSR for
a person to provide substantial assistance or support to any seller or telemarketer
when that person knows or consciously avoids knowing that the seller or
telemarketer is engaged in any act or practice that violates 16 C.F.R. §§ 310.3(a),
(c), (d), or 310.4. 16 C.F.R. § 310.3(b).

163.    At least one of the Progrexion Defendants' affiliates, HSP1, was, at all times
relevant to this Complaint, a "telemarketer," as that term is defined by 16 C.F.R. §
310.2(ff), that was offering or providing consumer financial products or services,
including consumer credit, financial advisory services, or services relating to

consumer report information. 12 U.S.C. § 5481(15)(A)(i), (viii), (ix).

164.   At all times relevant to this Complaint, at least one affiliate, HSP1, made false or misleading statements to induce another person to pay for goods or services in violation of the TSR, 16 C.F.R. § 310.3(a)(4), by misrepresenting, expressly or by implication, the availability of an advertised product or service, such as a loan, or that consumers were either guaranteed or had a high likelihood of obtaining the advertised product or service.

165.   The Progrexion Defendants provided substantial assistance or support to at least one affiliate, HSP1, including by providing advice and content for the affiliate's telemarketing scripts, advice regarding its websites and other marketing vehicles, the means and mechanisms for live-transferring consumers between the affiliate and Progrexion, and payment for each lead that resulted in a Lexington Law or CreditRepair.com sale.

166.   The Progrexion Defendants provided substantial assistance or support to at least one affiliate telemarketer, HSP1, when the Progrexion Defendants knew or consciously avoided knowing that the affiliate made false or misleading statements to induce consumers to pay for goods and services, in violation of the TSR, 16 C.F.R. § 310.3(a)(4).

167.   Therefore, the Progrexion Defendants violated 16 C.F.R. § 310.3(b).

## THIS COURT'S POWER TO GRANT RELIEF

168. The CFPA empowers this Court to grant any appropriate legal or equitable relief including, without limitation, a permanent or temporary injunction, rescission or reformation of contracts, the refund of monies paid, restitution, disgorgement or compensation for unjust enrichment, damages, and monetary relief, including but not limited to civil money penalties, to prevent and remedy any violation of any provision of law enforced by the Bureau. 12 U.S.C. §§ 5564(a), 5565.

## PRAYER FOR RELIEF

169. The Bureau requests that the Court, as permitted by 12 U.S.C. § 5565:

    a. Impose appropriate injunctive relief against the Progrexion Defendants for their violations of the CFPA and the TSR and other provisions of Federal consumer financial law as defined by 12 U.S.C. § 5481(14);

    b. Impose appropriate injunctive relief against Heath PLLC for its violations of the TSR;

    c. Grant additional injunctive relief as the Court may deem to be just and proper;

    d. Award monetary relief, including, but not limited to, rescission or reformation of contracts; the refund of monies paid; restitution;

disgorgement or compensation for unjust enrichment; and payment of

damages;

e.  Award Plaintiff civil money penalties;

f.  Award Plaintiff the costs of bringing this action; and

g.  Award such other and additional relief as the Court may determine to be

just and proper.

Dated: May 2, 2019                          Respectfully submitted,

KRISTEN DONOGHUE
*Enforcement Director*

DAVID RUBENSTEIN
*Deputy Enforcement Director*

CYNTHIA GOOEN LESSER
*Assistant Deputy Enforcement Director*

/s/ Maureen McOwen
MAUREEN MCOWEN
JONATHAN REISCHL
*Senior Litigation Counsel*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov

*Attorneys for Plaintiff Bureau of*
*Consumer Financial Protection*