Karra J. Porter
Christensen & Jensen
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
(801) 323-5000
karra.porter@chrisjen.com

Thomas M. Hefferon
Goodwin Procter LLP
901 New York Ave., NW
Washington, DC 20001
(202) 346-4000
thefferon@goodwinlaw.com
(additional counsel listed on signature page)

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>              Plaintiff,<br><br>        v.<br><br>PROGREXION MARKETING, INC.; PGX HOLDINGS, INC.; PROGREXION TELE-SERVICES, INC.; EFOLKS, LLC; CREDITREPAIR.COM, INC.; and JOHN C. HEATH, ATTORNEY AT LAW, PLLC, D/B/A/ LEXINGTON LAW,<br><br>              Defendants. | Case No. 2:19-CV-00298-BSJ<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT** |

## <u>TABLE OF CONTENTS</u>

ARGUMENT ............................................................................................................. 1

I.   THE COMPLAINT DOES NOT MEET RULE 9(b) PLEADING STANDARDS, REQUIRING DISMISSAL OF COUNTS II-V. .................................................. 1

II.   THE COMPLAINT'S ALLEGATIONS IN SUPPORT OF COUNTS II TO V ARE INSUFFICIENT UNDER ANY STANDARD. .................................................. 4

A.   THE COMPLAINT'S CONCLUSORY ALLEGATIONS ABOUT UNIDENTIFIED INTRODUCERS SHOULD NOT PROCEED AS A BASIS FOR COUNTS II-V. ......... 4

B.   COUNTS II AND III SHOULD BE DISMISSED. ............................................ 6

C.   COUNTS IV AND V SHOULD BE DISMISSED. ......................................... 11

III.   COUNT I SHOULD BE CONFINED TO THE LIMITATIONS PERIOD .................... 13

IV.   THE COMPLAINT RELIES ON GROUP PLEADING, AND DOES NOT PLAUSIBLY ALLEGE A COMMON ENTERPRISE. ......................................................... 13

V.   THE CFPB ADMITS IT IS UNCONSTITUTIONAL SO THE LAWSUIT SHOULD BE DISMISSED. .................................................................................... 14

CONCLUSION ....................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................................4

*Bandimere v. SEC*,
    844 F.3d 1168 (10th Cir. 2016), *cert. denied*, 138 S. Ct. 2706 (2018)....................................16

*Bell v. 3M Co.*,
    344 F. Supp. 3d 1207 (D. Colo. 2018)...................................................................................3

*Bell v. Fur Breeders Agric. Coop.*,
    348 F.3d 1224 (10th Cir. 2003) .............................................................................................13

*Bielicki v. Terminix Int'l Co., L.P.*,
    225 F.3d 1159 (10th Cir. 2000) ..............................................................................................9

*Cannon v. PNC Bank, N.A.*,
    No. 2-15-cv-00131-BSJ, 2016 WL 9779290 (D. Utah Aug. 31, 2016)....................................3

*CFPB v. CashCall, Inc.*,
    No. 15-07522-JFW, 2018 WL 485963 (C.D. Cal. Jan. 19, 2018) ............................................3

*CFPB v. Nationwide Biweekly Admin., Inc.*,
    No. 15-cv-02106-RS, 2017 WL 3948396 (N.D. Cal. Sept. 8, 2017)........................................3

*CFPB v. RD Legal Funding, LLC*,
    332 F. Supp. 3d 729 (S.D.N.Y. 2018)....................................................................................16

*Cocona, Inc. v. Singtex Indus. Co.*,
    No. 14-cv-01593-MJW, 2014 WL 5072730 (D. Colo. Oct. 9, 2014)......................................3

*Collins v. Mnuchin*,
    No. 17-20364, 2019 WL 4233612 (5th Cir. Sept. 6, 2019) (en banc) (Willett,
    J., dissenting in relevant part) .................................................................................................16

*CFPB v. Universal Debt & Payment Sols., LLC*,
    2015 WL 11439178 (N.D. Ga. 2015) ..................................................................................12

*FEC v. NRA Political Victory Fund*,
    6 F.3d 821 (D.C. Cir. 1993)..................................................................................................16

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
  561 U.S. 477 (2010)..................................................................................15, 16

*FTC v. Affiliate Strategies, Inc.*,
  No. 09-4104-JAR-KGS, 2010 WL 11470099 (D. Kan. June 4, 2010)......................................5

*FTC v City West Advantage, Inc.*,
  No. 2:08-CV-00609-BES-GWF, 2008 WL 2844696 (D. Nev. July 22, 2008) ......................11

*FTC v. Credit Bureau Ctr., LLC*,
  235 F. Supp. 3d 1054 (N.D. Ill. 2017) ..............................................................9, 11

*FTC v. Freecom Commcn's, Inc.*,
  401 F.3d 1192 (10th Cir. 2005) .......................................................................2, 3

*FTC v. IAB Mktg. Assocs., LP*,
  746 F.3d 1228 (11th Cir. 2014) ........................................................................10

*FTC v. LeadClick Media, LLC*,
  838 F.3d 158 (2d Cir. 2016).............................................................................10

*FTC v. Lifewatch Inc.*,
  176 F. Supp. 3d 757 (N.D. Ill. 2016) .................................................................11

*Gallagher v. Shelton*,
  587 F.3d 1063 (10th Cir. 2009) .....................................................................4, 5, 8

*HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*,
  805 F. Supp. 2d 1115 (D. Colo. 2011)..................................................................3

*Integrated Bus. Techs., LLC v. Netlink Sols., LLC*,
  No. 16-CV-048-TCK-PJC, 2016 WL 4742306 (N.D. Okla. Sept. 12, 2016)...........................3

*Jackson v. Phillip Morris Inc.*,
  46 F. Supp. 2d 1217 (D. Utah 1998)....................................................................3

*Lincoln v. Maketa*,
  880 F.3d 533 (10th Cir. 2018) ..........................................................................2

*Lucia v. SEC*,
  138 S. Ct. 2044 (2018)..................................................................................16

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
  138 S. Ct. 1461 (2018)..................................................................................16

*PHH Corp. v. CFPB,*
881 F.3d 75 (D.C. Cir. 2018) (en banc) (Henderson, J. dissenting) .................................16, 17

*PHH Corp. v. CFPB,*
No. 15-1177, 2016 WL 6994388 (D.C. Cir. Nov. 29, 2016)....................................................17

*Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.,*
376 F.3d 664 (7th Cir. 2004) ...................................................................................................9

*SW Gen., Inc. v. NLRB,*
796 F.3d 67 (D.C. Cir. 2015), *aff'd*, 137 S. Ct. 929 (2017)...................................................16

*Wolfe v. Tex. Co.,*
83 F.2d 425 (10th Cir. 1936) ...................................................................................................9

**Constitution, Statutes, and Rules**

16 C.F.R. §§ 310.3(a) and (b) ...................................................................................................7

12 U.S.C. § 289.........................................................................................................................14

12 U.S.C. § 5302.......................................................................................................................15

12 U.S.C. § 5491(a) ..................................................................................................................16

12 U.S.C. § 5531.........................................................................................................................7

12 U.S.C. §§ 5536(a)(1)-(3).......................................................................................................7

12 U.S.C. §§ 5562(b), (c)...........................................................................................................4

12 U.S.C. § 5564.......................................................................................................................15

15 U.S.C. § 45(a)(2)...................................................................................................................7

Fed. R. Civ. P. 8 .....................................................................................................................4, 14

Fed. R. Civ. P. 9(b) .........................................................................................................1, 2, 3, 4

U.S. Const. art. I, § 9, cl. 7.......................................................................................................14

**Other Authorities**

156 Cong. Rec. H5239 (2010) ..................................................................................................16

In its opposition, CFPB confirms that it does not assert that Defendants misrepresented the credit repair services provided by Lexington Law or by CreditRepair.com.  CFPB also makes no claim that consumers did not get the legal advice and credit repair services they sought.  That CFPB does not allege any misrepresentations or any consumer harm is especially notable because this suit comes after a multi-year, pre-suit investigation.

Nonetheless, CFPB opposes dismissal because a third party who introduced some consumers to Defendants for credit repair services, named HSP1, supposedly misrepresented that the third party's credit products would be available after the consumer worked with Defendants.  And, CFPB speculates (as it did in the Complaint) that there may be more third-party introducers who did something similar.  The Opposition suggests that the government's theory for holding Defendants liable for introducers' supposed misconduct is a straightforward application of "well-established law" and so is a proper basis for suit.  Opp. at 7.  But, instead, targeting introducers by seeking to punish the introduced—companies and a law firm who honestly delivered what consumers requested—is wholly novel.  If CFPB is concerned about HSP1 and other introducers that it believes deceived consumers, it can and should sue them.  But this suit against Defendants is not appropriate.  And, given the absence of any misconduct by Defendants, this suit is legally unfounded and should be dismissed.

## <u>ARGUMENT</u>

### I.   THE COMPLAINT DOES NOT MEET RULE 9(b) PLEADING STANDARDS, REQUIRING DISMISSAL OF COUNTS II-V.

In its Motion, Defendants demonstrated that Counts II through V of the Complaint fall short of meeting Rule 9(b)'s pleading requirements, which apply because those counts each are based on alleged fraudulent conduct.  Mot. at 10-12.  The CFPB's sole response is to argue that

those requirements do not apply.  Opp. at 3-7.  Having thus conceded that it did not plead with

the specificity required by Rule 9(b), if the Court finds the Rule applies, dismissal is required.

CFPB is wrong about Rule 9(b), which requires particularity in pleading "the circum-

stances constituting fraud or mistake."  FED R. CIV. P. 9(b).  Because the Complaint alleges that

the Progrexion Company Defendants knowingly participated in the deceptive acts of third par-

ties, the law requires that the Complaint identify those third parties, their deceptive actions, and

the specific facts making Defendants responsible for that misconduct.  Mot. at 10-16.

To relax its pleading standard, the CFPB asserts that the Tenth Circuit "clear[ly] in-

struct[ed]" that Rule 9(b) does not apply to any type of consumer protection deception claims.

Opp. at 7 (citing *FTC v. Freecom Commcn's, Inc.,* 401 F.3d 1192, 1203 n.7 (10th Cir. 2005)).

The CFPB misrepresents the import of that case, in two ways.  First, the case never addressed the

use of Rule 9(b) to test the pleadings at the outset of a case, the circumstance the Rule is de-

signed to address by enabling a defendant to better prepare its investigation and response to the

lawsuit.  Instead, *Freecom* involved a unique use of the Rule where, four days before trial, the

court ordered that evidence would be excluded *in limine* to the extent the related frauds had not

been pled in compliance with Rule 9(b).  The *Freecom* court found it unnecessary in the appeal

to address the challenge to that ruling, relegating the issue to *dicta* in a footnote, but expressed its

concern that the late order "effectively dismiss[ed]" claims "at the last moment."  401 F.3d at

1203 n.7.  Off point dicta like this is not controlling law.  *E.g.*, *Lincoln v. Maketa*, 880 F.3d 533,

544 (10th Cir. 2018) (statement in footnote "constitutes dicta and is not controlling").

Second, to the extent the *Freecom* footnote suggested that Rule 9(b) might not have ap-

plied in that case, the Court said that was because the claim being made there (under a section of

2

the FTC Act) did not require proof of "scienter, reliance, or injury".  *Freecom,* 401 F.3d at n.7.

The claims here are different, so Freecom is distinguishable.  CFPB admits it has the burden in

this lawsuit of alleging and proving scienter.  Opp. at 8 (Counts II and III); at 18 (Counts IV and

V).  And, unlike *Freecom*, CFPB also must prove—and thus plead—reliance and injury here,

because the Complaint seeks restitution.  *See, e.g.*, *CFPB v. CashCall, Inc.*, No. 15-07522-JFW

(RAOx), 2018 WL 485963, at *11-12 (C.D. Cal. Jan. 19, 2018) (restitution claim based on de-

ceptive conduct requires the proof consumers did not receive the benefit of the bargain); *CFPB v.*

*Nationwide Biweekly Admin., Inc.*, No. 15-cv-02106-RS, 2017 WL 3948396, at *11 (N.D. Cal.

Sept. 8, 2017) (restitution claim required showing no benefit to consumers or that no fully in-

formed consumer would ever elect to pay to participate in the at issue program).

  In any event, Rule 9(b) is routinely applied to claims in this Circuit that 'sound in fraud',

whether common law or statutory in nature.  *E.g.*, *Cannon v. PNC Bank, N.A.*, No. 2-15-cv-

00131-BSJ, 2016 WL 9779290, at *8 (D. Utah Aug. 31, 2016); *Bell v. 3M Co.*, 344 F. Supp. 3d

1207, 1228 (D. Colo. 2018); *Integrated Bus. Techs., LLC v. Netlink Sols., LLC*, No. 16-CV-048-

TCK-PJC, 2016 WL 4742306, at *4 (N.D. Okla. Sept. 12, 2016);[1] *Cocona, Inc. v. Singtex Indus.*

*Co.*, No. 14-cv-01593-MJW, 2014 WL 5072730, at *8 (D. Colo. Oct. 9, 2014).  And courts in

this Circuit regularly apply Rule 9(b) to actions brought under consumer-protection statutes.

*See, e.g.*, *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120-21

(D. Colo. 2011); *Jackson v. Phillip Morris Inc.*, 46 F. Supp. 2d 1217, 1222 (D. Utah 1998).

  It is unclear why CFPB is so reluctant to state the 'time, place and manner' of the alleged

deceptive conduct, devoting five full pages to arguing Rule is inapplicable rather than defending

---

[1] Contrary to the CFPB's assertion (Opp. at 6), the claims in *Netlink* are similar to the CFPB's
claims here—they both allege knowing misrepresentations.

3

its Complaint.  Remarkably, CFPB goes one step further and suggests Rule 9(b) should not apply for the further reason that this case involves "government action."  Opp. at 6 (citation omitted). If anything, the fact this is an action by the government *supports* the use of Rule 9(b), rather than counsels against it.  Unlike a private plaintiff, CFPB enjoys one-sided pre-complaint subpoena power, including the ability to take pre-suit depositions, (12 U.S.C. §§ 5562(b), (c)), as a prelude to framing its allegations in any filed complaint.  It took advantage of those powers over years of investigation of Defendants.  The CFPB should not escape the Rule 9(b) standard when civil plaintiffs, who lack those advantages, are held to it.

## II.     THE COMPLAINT'S ALLEGATIONS IN SUPPORT OF COUNTS II TO V ARE INSUFFICIENT UNDER ANY STANDARD.

Even if Rule 9(b) does not apply, the Complaint fails even the less-demanding Rule 8 standard, because the CFPB's allegations are either too conclusory or do not state sufficient relevant facts to state a plausible claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

## A.     THE COMPLAINT'S CONCLUSORY ALLEGATIONS ABOUT UNIDENTIFIED INTRODUCERS SHOULD NOT PROCEED AS A BASIS FOR COUNTS II-V.

As the Motion argued, in asserting the Progrexion Company Defendants' liability for alleged introducer misconduct, the Complaint identified only one introducer out of hundreds who interacted with Defendants during the relevant time.  Mot. at 8.  The Complaint effectively concedes this introducer (HSP1) is the only one engaged in the conduct this suit seeks to address. *Id*. (quoting Compl. ¶ 71) (alleging misrepresentation by "[a]t least one, if not more" introducers).  Lacking any facts about any introducer other than HSP1, the Complaint has not stated any plausible claim for recovery based on the conduct of other, unnamed third parties.

4

CFPB contends it has pled enough because, after its concession in paragraph 71, the Complaint contains broad assertions that there were "other" introducers who made "similar" representations.  Opp. at 25. As an initial matter, most of the citations in the Opposition do not even support that point.  The allegations cited are mainly about what allegedly was said about Lexington Law's and CreditRepair.com's credit repair services (*e.g.,* Compl. ¶¶ 47, 53, 68-70, 96), but CFPB never claims it was the credit repair services that were misrepresented.  And the only case cited by CFPB to defend the Complaint's references to unnamed persons is an FTC case where all the parties allegedly engaged in deceptive conduct were identified and sued.  *FTC v. Affiliate Strategies, Inc.*, No. 09-4104-JAR-KGS, 2010 WL 11470099, at *1 (D. Kan. June 4, 2010).

CFPB's reliance on the Complaint's conclusory allegations about "other" third party introducers robs Defendants of the fair notice the rules demand.  Mot. at 8-9.  CFPB is well aware that Defendants interacted with hundreds of third-party introducers that helped consumers find out about Lexington Law and credit repair services.  Yet this Complaint leaves Defendants completely at sea in figuring out which of those hundreds, other than HSP1, supposedly did something wrong and what they specifically did wrong.  Rolling all of the introducers into one ball and claiming, without naming names, that some of them used "fake" advertisements and guarantees and some of them (maybe or maybe not the same ones, the Complaint does not say) made "false and unsubstantiated statements", is unfair.  Opp. at 25.  *Gallagher*, 587 F.3d at 1068.

Aside from this failure to defend the lack of specific allegations about the introducers, the Opposition also does not convincingly explain how the Complaint alleges sufficient facts to plausibly claim that the Progrexion Company Defendants knew about and exercised control over this supposed misconduct by these introducers.  Opp. at 25.  What it cites is unhelpful.  For ex-

5

ample, it cites allegations that: consumers complained to the Better Business Bureau about un-named introducers and that, during the investigation, the CFPB told Lexington Law about a single consumer complaint (Compl. ¶¶ 90, 108); unidentified introducers used Craigslist to advertise (which the CFPB does not allege was itself deceptive conduct) (Compl. ¶¶ 91-93); and the Progrexion Company Defendants knew that some unidentified introducers might be making implicit guarantees about those introducers' products (as opposed to guarantees about Lexington Law's or CreditRepair.com's credit repair work) (Compl. ¶¶ 105-107).  Even if these were deemed sufficiently specific, allegations of sporadic and isolated incidents cannot plausibly support the claim being made—that the Progrexion Defendants' had knowledge of all the supposed misconduct of all the unnamed introducers over many years.

**B.    COUNTS II AND III SHOULD BE DISMISSED.**

The Progrexion Company Defendants moved to dismiss Counts II and III because the Complaint does not allege that they made any misrepresentations, and there is no factual or legal basis for holding them liable for the alleged conduct of introducers.  Mot. at 9-16.  CFPB does not disagree with the first argument, conceding that the Complaint's theory is that Defendants are liable indirectly, "for the deceptive statements of a marketing affiliate."  Opp. at 7.

The Opposition asserts three theories of indirect liability—"knowing participation," principal and agent, and receipt of a benefit from "bait" advertising (Opp. at 8-17)—but none of them pass muster.  As the Motion argues, none of these theories of indirect liability are a legal basis for recovery because alternative theories of liability cannot be implied in a statute that defines and limits the scope of potentially-liable parties.  Mot. at 12, *citing Central Bank of Denver etc.*  Congress (for the Consumer Financial Protection Act, which is the basis for Count II) and

the FTC (for the Telemarketing Sales Rule, which is the basis for Count III) each went to the trouble of defining in great detail who could be a potentially-liable party, including specific rules for which persons could be liable for the acts of another or for aiding a third party.  12 U.S.C. §§ 5531, 5536(a)(1)-(3); 16 C.F.R. §§ 310.3(a) and (b).  CFPB's position (Opp. at 7-8, 11-12, 15, 21, 26-30) that it can sue anyone who *either* fits into one of those detailed and limited statutory definitions,[2] *or* fits into expansive generic concepts like agency or common enterprise is completely at odds with how the CFPA and TSR were crafted.  CFPB's reliance on FTC Act cases to excuse its indirect liability theories is wholly inapposite, because the FTC Act applies to "persons," (15 U.S.C. § 45(a)(2)), a term which left room for judicial extrapolation.  Further, those cases and cited cases under the CFPA are not instructive because none of them considered the binding impact of *Central Bank of Denver*.

Assuming indirect liability is possible, none of the government's three alternatives provide a factual basis to hold Defendants liable.  As to alleged liability for knowingly participating in an introducer's supposed misconduct, CFPB concedes the Complaint needs to allege both Defendants' knowledge of those misrepresentations and either control over them or direct participation in the introducers' supposed frauds.  Opp. at 8.  As to knowledge, the Opposition does not respond directly to the motion's four-page discussion other than to label it "alternative explanations."  Opp. at 10.  That is not so: Defendants have shown that the Complaint does not plausibly show Defendants' knowledge of the purported misrepresentations by the third-party introducers.  Mot. at 12-16, 17-22; *Gallagher*, 587 F.3d at 1068.

---

[2]  CFPB does not deny that PGX Holdings fits into none of these definitions.  Mot. at 28.

The Complaint citations CFPB relies on are not to the contrary.  CFPB again gives a very high-level summary of its allegations, grossly exaggerating what it actually pled.  The paragraphs referenced (Opp. at 10), only say that Progrexion reviewed introducers' websites and advertisements (Compl. ¶ 87); that the Progrexion Defendants "reviewed" and made "suggestions" about marketing scripts that addressed the description of credit repair services (Compl. ¶¶ 96-99); that consumers complained to the Better Business Bureau about unidentified introducers (Compl. ¶ 90); that some employees of one of the Progrexion Company Defendants offered isolated observations that unnamed introducers were making implicit guarantees that the introducer would get the consumer a loan (Compl. ¶¶ 106-07); and that in leads sent to eFolks, HSP1 did not include consumer zip codes in the data provided on at least one occasion.[3]  Compl. ¶ 104.  What is missing are allegations that Defendants knew or recklessly avoided knowing that HSP1 or other introducers *did not actually* offer loans or that they made guarantees about products *that were not available*.  Mot. at 18-22.

As an inadequate substitute to show the second element of knowing participation, control, which is also a key element of any agency theory, CFPB points primarily to allegations involving the Progrexion Company Defendants' efforts to influence how HSP1 explained *Lexington Law's and CreditRepair.com's credit repair products*, and that do not allege that these Defendants controlled (or even had any input into) how HSP1 or others described *their own offerings*.  Opp. at 11-14.  But even these do not allege control: the scripting comments given by the Progrexion Defendants are characterized as merely "edits and suggestions."  Compl. ¶ 98; Opp. at 14.  Receiv-

---

[3] CFPB does not deny that this allegation is disconnected from the claims in this case, which concern the "Hotswap" live-transfer program, not leads eFolks called.  Mot. at 20.

ing and adopting "edits and suggestions" about what credit repair services Defendants would of-fer, if asked by a consumer, does not allege control over the introducer.

The remainder of the allegations cited by CFPB to show that control has been alleged do not accomplish that aim.  Assertions that these Defendants instructed HSP1 to prequalify con-sumers for *credit repair services* prior to introducing consumers (¶¶ 48-55, 96-99), that introduc-ers connect consumers to Progrexion representatives and that the representatives offer *credit re-pair consultations and services* (¶¶ 56-58), and that Progrexion has trained *its employees* on in-troducers' products (¶¶ 60-62), do not plead any facts pertinent to the relevant inquiry—whether Defendants exercised control or participated in the alleged misrepresentations about allegedly phony products offered by one or more introducers.  Compl. ¶¶ 138-139, 147-148.  While CFPB asserts that it plausibly pled control here by ratification, because the Progrexion Defendants al-legedly knew of HSP1's representations about Lexington Law and CreditRepair.com's credit re-pair services (Opp. at 14-15), this just highlights the Complaint's failure to allege that the Pro-grexion Company Defendants knew that HSP1 or others falsely advertised or guaranteed other types of products or services.[4]

---

[4] The CFPB's reliance on ratification caselaw is inapposite.  Opp. at 13.  Those cases address whether principals are liable for business transactions or contracts entered into by their agents, *see Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664 (7th Cir. 2004); *Wolfe v. Tex. Co.*, 83 F.2d 425 (10th Cir. 1936), and one case addresses the availability of punitive damages against a corporation for the acts of its employee, *Bielicki v. Terminix Int'l Co., L.P.*, 225 F.3d 1159 (10th Cir. 2000).  The sole case where the defendants allegedly ratified a third party's mis-representation—*FTC v. Credit Bureau Ctr., LLC*, 235 F. Supp. 3d 1054, 1061-62 (N.D. Ill. 2017)—involved wholly distinct allegations because the company owner directed edits to the ads about its marketers' fraudulent products to help drive consumers to the company, and was direct-ly told about a "pattern of complaints" about the fraudulent ads.

The agency theory not only lacks sufficient indicia of control, CFPB has pointed to no allegation that the Progrexion Company Defendants appointed HSP1 (or any other introducer) to act on its behalf and to make statements about the introducers' products as part of that purported agency.  Mot. at 14-15.  While CFPB contends that HSP1 existed only for the benefit of the Progrexion Company Defendants, that does not make HSP1 an appointed agent (putting aside the fact the cited paragraphs do not even fairly allege that).  Opp. at 15 (citing Compl. ¶¶ 76-77).

The CFPB's cited authorities also do not advance its novel claims of indirect liability.  Opp. 9-10, 16.  In *LeadClick Media*, the defendant middleman LeadClick was held liable for its vendors' misleading advertisements because it knew about the fake news websites and edited the misrepresentations made on those webpages.  *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 164-65 (2d Cir. 2016).[5]  And, in *IAB Marketing,* the FTC sought to hold a trade association liable for misrepresentations made by a telemarketer about the defendant trade association.  *FTC v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, 1231 (11th Cir. 2014).  Here, in contrast, the Complaint alleges misrepresentation by the introducers about their own products, not Defendants'.

Finally, CFPB cites "bait advertising" cases (a characterization nowhere explained in the Complaint) to suggest it is "well established under federal law" that "a corporation can be held liable for [a third party's] marketing misrepresentations even if those misrepresentations are not directly about the corporation's product or service."  Opp. at 15.  But none of its cited cases involve that fact pattern.  In *Lifewatch*, the FTC sought to hold Lifewatch liable based on misrepresentations a telemarketer made specifically about Lifewatch's medical devices, just without ex-

---

[5] The CFPB also quotes *LeadClick* to claim Defendants had a legal responsibility "to ensure that the advertisements produced by its affiliate network were not deceptive or misleading" (Opp. at 9), but that quotation concerned LeadClick's responsibility for the very advertisements it hired the network to create—not some independent aspect of the network's business.  *Id.* at 162.

plicitly using the "Lifewatch" brand name. *FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 775 (N.D. Ill. 2016). In *FTC v City West Advantage, Inc.*, the sole defendants were a telemarketing company and its owner sued for their own misrepresentations about phony vacations and gift certificates, not those made by a separate third party. No. 2:08-CV-00609-BES-GWF, 2008 WL 2844696, at *3 (D. Nev. July 22, 2008). And in *Credit Bureau Centers,* the "corporation" had one owner/employee (Brown) who directly told a marketer what to have the marketer's sub-agent say in a letter that falsely told people that Brown's "corporation" would simply provide a one-time credit report for a rental application, when in fact it signed them up for monthly credit monitoring. 235 F. Supp. 3d at 1061. None of these cases lend any authority for the novel theory of holding a party responsible for a third party's misrepresentations about the third party's own services because the defendant was later introduced to the consumer.

### C.      COUNTS IV AND V SHOULD BE DISMISSED.

For similar reasons, the CFPB's arguments do not support the sufficiency of the allegations as to Counts IV and V. In response to Defendants' argument that the Complaint fails to allege the Progrexion Company Defendants' culpable state of mind regarding HSP1's deceptive conduct (Mot. at 16-22), the CFPB mischaracterizes and exaggerates the import of its allegations. Opp. at 18-19. First, the CFPB argues that these Defendants had a requisite state of mind by virtue of "reviewing and approving misleading ads and scripts." Opp. at 19. But, again, the scripts described in the Complaint relate to credit repair services, not introducers' services. Mot. at 17. The CFPB also asserts that Defendants received "consumer complaints" and "notice of a regulatory investigation" regarding unfulfilled promises by HSP1 (Opp. at 19, citing Compl. ¶¶ 47, 86-108), but the Complaint makes no such allegations.

Perhaps recognizing the weakness of its allegations, CFPB protests that it is too "oner-ous" for it to plead scienter as to each Defendant.  This is an odd position, since the government does not dispute that knowledge is, in fact, an element under both substantial assistance counts. Opp. at 20-21.  Defendants are unaware of any authority that permits generic assertions of knowledge across multiple defendants to substitute for stating a legally-sufficient claim against each one that would stand up on its own.  And CFPB's assertion that this case was "pleaded in the same way and with the same level of detail" as *Universal Debt*, adds nothing to the analysis. Opp. at 21, citing *Consumer Fin. Prot. Bureau v. Universal Debt & Payment Sols., LLC*, 2015 WL 11439178 (N.D. Ga. 2015).  The *Universal Debt* opinion found the complaint there suffi-cient based on there being "particular allegations as to each" defendant, including differing sci-enter allegations.  *Universal Debt*, at 8-13, 19.

As to the allegations that the Progrexion Company Defendants provided substantial assis-tance, CFPB agrees that to state a claim it must allege they "(1) in some sort associated [them-selves] with the venture; (2) participated in it as in something that [each] wished to bring about; and (3) sought by [their] action to make it succeed."  Opp. at 22-23; Mot. at 22 (citing 12 U.S.C. § 5536(a)(3) (internal quotation marks omitted)).  In the face of the Motion's showing that these elements have not been alleged, CFPB refers back to essentially the same facts that were inade-quate to support Counts II and III (*see supra* § II.B) and then offers other 'facts' that are not in its Complaint—including that the Progrexion Company Defendants provided "substantial mone-tary compensation for HSP1's marketing" and "strategic advice"; that introducers used the "abil-ity to consummate a sale [and] take payment from consumers " as necessary for the introducer to "generate revenue"; and they "wished to bring about" HSP1's "venture."  Opp. at 23-24 (citing

complaint paragraphs that do not contain those allegations).  CFPB's improper attempt to inter-

ject facts outside the pleadings must be rejected.  *Bell v. Fur Breeders Agric. Coop.*, 348 F.3d

1224, 1230 (10th Cir. 2003).  Further, even if the new facts are credited anyway, the allegations

should not be enough to show impermissible assistance: the asserted conduct boils down to the

assertion that the Progrexion Defendants provided substantial assistance because they accepted

introductions and paid introducers.  If that amounts to substantial assistance, then the theory of

recovery would be nearly boundless.

## III.    COUNT I SHOULD BE CONFINED TO THE LIMITATIONS PERIOD.

CFPB protests that there is "not yet a 'factual basis'" for application of the default three-

year statute of limitations, (Opp. at 25-26), when in fact the CFPB has manufactured this absence

by withholding an admission of when it "discovered" the conduct at issue.  CFPB should not be

permitted to frustrate the reasonable time limits established by Congress, and to burden the par-

ties and the Court, only because it has coyly held back admitting that it seeks redress for acts or

conduct beyond the statute of limitations.

## IV.    THE COMPLAINT RELIES ON GROUP PLEADING, AND DOES NOT PLAU-
##         SIBLY ALLEGE A COMMON ENTERPRISE.

CFPB does not dispute that the Complaint has a group pleading approach, but tries to ex-

cuse that by contending, essentially, that it has adequately put all of the Progrexion Company

Defendants on notice that they are on the hook for everything.  Opp. at 30.  That retort simply

reveals that the Complaint fails to provide adequate notice at all, particularly where it is undis-

puted that the various Defendants' roles were different from each other.  Compl. ¶¶ 9-15.

CFPB's other asserted avoidance is that it alleges a common enterprise.  Opp. at 26-27.  Even if

that theory of liability is viable, which Defendants dispute, the only paragraph it points to in sup-

13

port (Compl. ¶ 19) is just a plainly-boilerplate regurgitation of the legal elements of common enterprise coupled with unadorned conclusions that fail basic Rule 8 pleading, and most notably excludes HSP1—the only bad actor identified in the Complaint.

## V.   THE CFPB ADMITS IT IS UNCONSTITUTIONAL SO THE LAWSUIT SHOULD BE DISMISSED.

The CFPB now admits that its structure is unconstitutional and violates Article II because its Director is not subject to Presidential removal.  ECF No. 43.  This concession requires the Court to consider whether that flaw requires dismissal.  But first, the Court should reject as unconstitutional, CFPB's power to appropriate money from the Treasury.  Mot. at 31-32.

CFPB asserts that "Congress 'can create governmental institutions reliant on fees, assessments, or investments rather than the ordinary appropriations process,'" but that mischaracterizes CFPB's funding.  Opp. at 35 (citation omitted).  Unlike other self-funding agencies reliant on fees or the like, CFPB has an open line of credit from the Federal Reserve to appropriate funds (not generated by the CFPB's activities) that would otherwise go the Treasury for Congressional appropriation when in surplus.  12 U.S.C. § 289.  Although the Appropriations Clause is silent as to agencies putting revenue they generate to use, the Clause explicitly forbids funding drawn from the Treasury without congressional appropriation.  U.S. Const. art. I, § 9, cl. 7.  The Opposition cites no authority to support how the Director's ability to determine CFPB's own appropriations outside of Congress' exclusive appropriations power is valid.  It is not, and the agency's funding structure renders the CFPB unconstitutional.  Mot. at 31-32.  While CFPB asserts that the constitutional concerns are moot because Congress created the agency and can at any time reverse CFPB's Treasury draws (Opp. at 34-35), undeniably Congress cannot be allowed to violate the Constitution simply because it might fix things later.

14

The agency is further unconstitutional because the collective Article I and II violations that result from the agency's structure place the CFPB uniquely far beyond the bounds of the Constitutional system of checks and balances, and subject to no democratic control by the people.  Mot. at 29.  Even if the removal or the funding provision were independently constitutional (neither is), in combination they are unquestionably unconstitutional.  *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 483–84 (2010).

What remains is the proper remedy for these constitutional infirmities.  Here, the remedy is to dismiss the lawsuit until Congress can establish an agency and Director that conform with the Constitution—and who then have the power to act in this Court.

CFPB contends that, pursuant to the Dodd-Frank Act (12 U.S.C. § 5302), severance of the for-cause removal provision is the proper remedy, citing the Fifth Circuit's recent ruling that severance was the appropriate course of action where the Federal Housing Finance Agency's (FHFA) for-cause removal protection also violated the Constitution.  Opp. at 33-34; ECF No. 43. But that decision is of no aid because, unlike FHFA, CFPB suffers from constitutional defects that will not be remedied by turning the Director into an at-will appointee.

Severance also would not resolve an "ongoing injury" to Defendants (ECF No. 43 at 3), because the injury suffered was the filing and prosecution of this lawsuit.  Only the Director had the authority to commence this action (12 U.S.C. § 5564), and the Director concedes that she occupied an unconstitutionally structured position when she authorized its filing.  As the Supreme Court has held, where there is a "timely" challenge to the constitutionality of an officer's appointment, the challenger "is entitled to relief."  *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018) (quoting *Ryder v. United States*, 515 U.S. 177, 182-183 (1995)).  Defendants' challenge here at

15

the motion to dismiss stage was timely.  *See, e.g.*, *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 83 (D.C. Cir. 2015), *aff'd*, 137 S. Ct. 929 (2017).  "In the agency context, … issues of separation of powers are structural errors that do not require a showing of prejudice."  *Id.* at 79 (citation omitted).  Even were that not true, the D.C. Circuit held in *SW General* that where the individual with "final authority" to issue a complaint was invalidly appointed, harmless error cannot save the complaint.  *Id.* at 80.  *Accord Bandimere v. SEC*, 844 F.3d 1168, 1181 n.31 (10th Cir. 2016), *cert. denied*, 138 S. Ct. 2706 (2018).  Dismissal is the only viable remedy.[6]

Dismissal is also the appropriate remedy because mere voiding of the tenure rule is not what Congress would have intended as the result if the Bureau's structure was found infirm.  Severance of an unconstitutional statutory provision is not available when "'it is evident that the Legislature would not have enacted those provisions . . . independently of that which is [invalid].'"  *Free Enter. Fund*, 561 U.S. at 509 (citation omitted); *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1482 (2018).  The Congress that adopted Dodd-Frank envisioned an insular and "completely independent [CFPB]," free from control by either the President or any future Congress."  156 Cong. Rec. H5239 (2010) (Rep. Maloney); 12 U.S.C. § 5491(a); *PHH Corp. v. CFPB*, 881 F.3d 75, 162 (D.C. Cir. 2018) (en banc) (Henderson, J. dissenting) (Congress intended CFPB to be "removed from political winds and presidential will").  Congress would not have entrusted CFPB with its vast powers, abdicated its appropriations authority (its most powerful

---

[6] *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 785 (S.D.N.Y. 2018) (dismissing case because CFPB's "composition violates the Constitution's separation of powers"); *accord FEC v. NRA Political Victory Fund*, 6 F.3d 821, 828 (D.C. Cir. 1993) (dismissing FEC's complaint because there is "no theory that would permit us to declare the Commission's structure unconstitutional without providing relief" by dismissing the FEC's complaint); *see also Collins v. Mnuchin*, No. 17-20364, 2019 WL 4233612, at *54 (5th Cir. Sept. 6, 2019) (en banc) (Willett, J., dissenting in relevant part) (when challenging "the action of an unconstitutionally-insulated officer, that action must be set aside.").

oversight tool), while permitting the President full control over the CFPB.  Members of Cong. Supporting Reh'g En Banc Br. at 2, 5, *PHH Corp. v. CFPB*, No. 15-1177, 2016 WL 6994388 (D.C. Cir. Nov. 29, 2016) (arguing that severance of the CFPA's removal provision would "alter[] the CFPB and hamper[] its ability to function as Congress intended").  Yet, severance "would yield a mutant CFPB responsive to the President . . . *but nowise accountable to the Congress.*"  *PHH*, 881 F.3d at 163 (Henderson, J. dissenting).

Only Congress can undo the constitutional problems it created.  This case should be dismissed until Congress can do so.

## **CONCLUSION**

For the foregoing reasons, this Court should grant the Motion and dismiss the Complaint.

Dated:  September 24, 2019                     Respectfully submitted,

                                                              /s/ *Karra J. Porter*
                                                              Karra J. Porter
                                                              Christensen & Jensen
                                                              257 East 200 South, Suite 1100
                                                              Salt Lake City, UT 84111
                                                              (801) 323-5000
                                                              karra.porter@chrisjen.com

                                                              Thomas M. Hefferon*
                                                              W. Kyle Tayman*
                                                              Goodwin Procter LLP
                                                              901 New York Ave., NW
                                                              Washington, DC 20001
                                                              (202) 346-4000
                                                              thefferon@goodwinlaw.com
                                                              ktayman@goodwinlaw.com

                                                              William J. Harrington*
                                                              Goodwin Procter LLP
                                                              620 Eighth Avenue

New York, NY 10018
(212) 459-7140
wharrington@goodwinlaw.com

*Attorneys for Defendants*
(*admitted *pro hac vice*)

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2019, I caused a true and correct copy of the fore-

going to be served upon counsel of record as of this date by electronic filing.


MAUREEN MCOWEN
JONATHAN REISCHL
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
1700 G Street, NW
Washington, DC 20552
*Attorneys for Plaintiff Bureau of*
*Consumer Financial Protection*


/s/ *Karra J. Porter*
Karra J. Porter