MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
(202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov
1700 G Street, NW
Washington, DC 20552

*Attorneys for Plaintiff Bureau of
Consumer Financial Protection*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>*Plaintiff,*<br><br>v.<br><br>PROGREXION MARKETING, INC., *et al,*<br><br>*Defendants.* | Case No. 2:19-cv-00298-BSJ<br><br>**(REDACTED VERSION)** |

**PLAINTIFF'S MOTION TO COMPEL
DEFENDANTS TO PRODUCE CLAWED-BACK DOCUMENTS AND
UNREDACTED SAMPLE OF CALL RECORDINGS**

Defendants have improperly invoked the attorney-client privilege to claw-back ten documents and withhold call recordings requested by the Bureau. Under Federal Rule 26(b)(5)(B), the Bureau presents the clawed-back documents to the Court under seal for a determination of the claim.[1] The Court should review the claw-backed items, overrule Defendants' privilege objections, and order production of the withheld calls.

## Background

The Progrexion Defendants ("Progrexion") employ sales agents to telemarket credit repair services to consumers on behalf of John C. Heath, Attorney at Law, PC. ("Heath").  Progrexion leases the Lexington Law tradename to Heath.  Progrexion records and retains the initial sales and case setup calls.  Under its agreement with Heath, Progrexion also records and retains calls made by consumers to complain about or cancel their credit repair Lexington Law enrollment.  The Bureau has served Progrexion with discovery requests for these recordings.

On August 14, 2020, Progrexion clawed back one email and nine call

---

[1] Exhibit 1 (submitted *in camera*).

1

recordings, and their duplicates, on grounds of attorney-client privilege.[2] Consistent with Federal Rule of Civil Procedure 26(b)(5)(A), the Bureau promptly sequestered the documents and requested additional information to assess the privilege claim.

Progrexion provided a second privilege log with some additional information, but for eight of nine calls, still failed to identify the call participants or their relationship (if any) to an attorney or law firm.[3]  For the clawed-back email, Progrexion refuses to explain what purported "legal services and investigation of allegations" are involved. The subject line is "Affiliate/Marketing Concern" and the sender and recipient are Progrexion compliance personnel, not legal staff at John C. Heath, Attorney-at-Law (Heath).

Separately, the parties compromised on a sample of call recordings to satisfy the Bureau's various call recording discovery requests. Despite agreeing on the sampling size and methodology, Defendants insist that the

---

[2] Exhibit 3.  Exhibit 1 contains only the non-duplicate call recordings, as shown on Exhibit 4.  The Bureau later identified two additional email chains, PGX0029897 and PGX0029904, as likely duplicates of PGX0029893.  *See* Exhibit 5.  These two documents are included on the disk submitted *in camera* (Exhibit 1), and the Bureau requests that the Court overrule Defendants' privilege objection as to those items as well.
[3] Exhibit 2.

call recordings are privileged and that either Lexington Law consumers must provide a privilege waiver prior to production or that all statements by Lexington Law consumers must be redacted. However, the recordings the Bureau's narrowed requests seek are non-privileged for the same reasons as the clawed-back items.

The clawed-back materials and the call recordings appear fall into two categories – sales calls and consumer complaints – and neither in this case are protected by the attorney-client privilege. The Bureau accordingly requests that the Court overrule Defendants' privilege objections and order production of the agreed-upon recordings within 21 days of the Bureau's identification of the samples.

## Argument

The attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (punctuation omitted). "[A] critical component of the privilege is whether the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the

communication will remain in confidence." *In re Qwest Commcn's Int'l, Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (citation omitted). Further, "[t]he privilege does not apply where the legal advice is merely incidental to business advice." *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 444 (D. Kan. 2009). Lexington Law's sales pitches clearly are not privileged, nor are the statements made by complaining customers or non-attorneys attempting to retain complaining customers. *Ad Astra Recovery Servs. v. John C. Heath*, No. 18-1145-JWB, 2019 WL 1753958 (D. Kan. Apr. 19, 2019); *id.*, 2019 WL 5864785 (D. Kan. Nov. 8, 2019).

## A.    Defendants' Marketing Calls Are Not Privileged

Progrexion's clawed-back and withheld marketing calls are not privileged for three reasons. First, the calls do not involve an attorney or attorney-supervised legal worker. Rather, they involve Progrexion Teleservices sales agents who are neither part of, nor supervised by, the law firm. Indeed, seeking to "minimize legal risk," Progrexion instructed its sales staff, who both enroll customers and perform their "case setup," to cease describing themselves to consumers as "paralegals" and instead use the term "credit consultant."[4]

---

[4] Exhibits 6, 7.

Second, the marketing calls do not substantively relate to legal advice. Notably, the Lexington Law engagement agreement nowhere describes any "legal services" the company provides to consumers; its only reference to legal services is the statement that it "does not include pre-litigation or litigation services."[5] Progrexion utilizes virtually the same engagement agreement, scripts, and sales agent training materials for Lexington Law as it does for its other brand, CreditRepair.com,[6] which it admits does not provide legal services.[7]  Agents assigned to both brands are told "Everything is a sale" and to avoid giving legal advice to consumers.[8]  Indeed, seeking to avoid sanctions for the unauthorized practice of law, Lexington Law conceded to the South Carolina Supreme Court in 2009 that "the providing of credit counseling services does not constitute the practice of law." *Lexington Law Firm v. S.C. Dep't of Consumer Affairs*, 382 S.C. 580, 588, 677 S.E.2d 591, 595 (2009). Since Lexington Law's credit repair services are not legal

---

[5] Exhibit 8, at LEX-StageIII-0001088.

[6] *Compare* Exhibit 9 (CreditRepair.com script) *with, e.g.*, Exhibit 10 (Lexington Law script); *and compare* Exhibit 11 (CreditRepair.com sales agent training material) *with, e.g.*, Exhibit 12 (Lexington Law sales agent training material).

[7] Progrexion Defendants' Answer, ECF 65, at 4.

[8] *Compare* Exhibit 13, at 23, 24 (CreditRepair.com "Game Plan" training) *with* Exhibit 14, at 25, 26 (Lexington Law "Case Setup" training).

services, the sales calls pitching those services certainly are not privileged. Defendants appear to concede this fact by proposing to provide the sales agents' side of the clawed-back calls.[9]

Even if some aspect of the services were legal services, another district court in this Circuit has rejected Defendants' claim that Lexington Law's credit repair-related telephone communications with customers are privileged. Reviewing Lexington Law's privilege claim over its post-enrollment customer communications, the District Court for the District of Kansas concluded that the "essentially automated process by which information the consumer provided in the [Lexington Law] web portal somehow auto-generated a credit dispute letter" did not involve the exercise of legal judgment; consequently, the communications between Lexington Law and consumers were non-privileged and discoverable, unless an actual attorney was involved in providing legal advice. *Ad Astra*, 2019 WL 1753958, *3.

Third, there is no evidence that consumers reasonably expected that the sales calls were confidential communications to obtain legal advice. For instance, when consumers were transferred to Progrexion from a marketing affiliate, they were not told that they would be speaking to attorneys or legal

---

[9] Exhibit 15, at 1.

professionals. Rather, Progrexion instructed its hotswap partners to tell consumers that they were being transferred to a partner for "credit consultations" with a "credit consultant."[10]  Consumers were routinely informed that the calls were recorded for training purposes and recorded calls were routinely shared with—and sometimes joined and recorded by—others, including hotswap partners.[11]

Despite the evidence that Defendants do not treat the marketing calls as privileged in the ordinary course of business, Defendants now propose to redact the consumers' side of the calls, asserting that consumers expected confidentiality for their personal and financial information conveyed to Progrexion's sales agents.[12]  That type of sensitive personal information (*e.g.*, Social Security numbers and credit scores) is not the sort of "client confidence" that is protected by the attorney-client privilege.  Rather, it is factual information that is routinely shared with banks and other non-legal service providers, including CreditRepair.com.  Facts are not privileged, and

---

[10] *See, e.g.,* Exhibit 16, at 6; Exhibit 17.

[11] *E.g.*, Exhibit 18 (Dec. 15, 2017 email from a Progrexion affiliate manager to hotswap partner Ascent Mortgage, attaching call recordings that Defendants have withheld in this litigation as privileged).

[12] Exhibit 15, at 1.

"[w]hen an attorney is merely acting as a conduit for information, the privilege does not apply." *Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 485 (D. Kan. 1997). The unredacted calls should be produced to the Bureau, subject to the Court's Modified Protective Order.[13]

### B.   Clawed Back Emails PGX0029893, PGX0029897, and PGX0029904 Are Not Privileged

PGX0029893, PGX0029897, and PGX0029904 were improperly clawed back. Defendants' privilege logs fail to demonstrate that these emails between non-attorney Progrexion and Heath employees, with the subject line "Affiliate/Marketing Concern," contain any "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proceedings*, 616 F.3d at 1182. "For a communication between non-attorney employees to be held privileged, it must be 'apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice' or the document itself must 'reflect the requests and directions of counsel.'" *Adams v. Gateway, Inc.*, 2:02-CV-106 TS, 2003 WL 23787856, at *11 (D. Utah Dec. 30, 2003). Even where the

---

[13] ECF 72 ¶ 2(f).

communication is between a client and an attorney, privilege applies only if "the document itself (a) shows that the communication was for the purpose of transmitting information to counsel for advice or (b) reveals the requests and directions of counsel." *Id.* Defendants have not made that showing.

The clawed-back emails involve discussions between a Lexington Law call-center employee, referred to as a paralegal, and Progrexion employees

██████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

██████████████████████████████████

██████████  These emails are purely business communications. The Court should review the emails *in camera*, and upon seeing their nature – pure business communications – should order their production.

## C.   The Complaint/Cancellation Calls at Issue Are Not Privileged

Defendants also have not shown that the clawed-back and withheld complaint/cancellation calls meet the elements of attorney-client privilege. The agreed sample consists of fifty complaint/cancellation calls coded by Defendants in the following categories:

9

- Client did not know they were signing-up by provid [sic];
- Concord service was misrepresented;
- Feels we are a scam;
- Lexington service was misrepresented;
- Marketing;
- Promise or guarantee was made or implied;
- Signed up in Error;
- Was Signed Up Fraudulently;
- Fraudulent Signup; and
- Salesman Misrepresented Product.

Unredacted copies of these complaints are vital to this case, as they show Defendants' knowledge of the pattern of telemarketing misconduct. And the categories assigned to the consumers' complaints demonstrate the consumers were not seeking any legal advice from Lexington Law. Customers who called to cancel were not counseled by attorneys; they were subjected to a renewed telemarketing effort by call center agents trained to keep the customer enrolled or sell them a different subscription and instructed never to give legal advice.[14] Indeed, Lexington Law's policy is **not** to record conversations between customers and actual attorneys.[15] Thus, the complaint/ cancellation calls also fail to meet the requirements for attorney-client privilege set out in the governing caselaw. *See Adams*, 2003 WL 23787856,

---

[14] Exhibit 19 (Lexington Law training material excerpts).
[15] Exhibit 20 (Mar. 16, 2015 Lexington Law Response to Civil Investigative Demand Document Request Nos. 14 and 15).

at *11. They should be produced without redactions or further delay.

## Conclusion

This Court should overrule Defendants' unfounded privilege claims and order production of the clawed-back documents and the agreed sample of recorded calls within 21 days of the Bureau's identification of the samples.

Dated: October 21, 2020                     Respectfully submitted,

/s/ Tracy L. Hilmer
MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
Enforcement Attorneys
Bureau of Consumer Financial
Protection
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov

*Attorneys for Plaintiff Bureau of*
*Consumer Financial Protection*

## DUCivR 37-1(a)(4) CERTIFICATION

Plaintiff Bureau of Consumer Financial Protection certifies that it has made reasonable efforts to reach agreement with Defendants on the disputed matters by meeting and conferring via telephone with counsel for Defendants on the following dates, in which the below-named attorneys for each party participated:

| Date | Plaintiff's Counsel | Defendants' Counsel |
|------|--------------------|--------------------|
| 8/21/20 | Maureen McOwen, Tracy Hilmer | Kyle Tayman, William Harrington, Christina Hennecken |
| 9/17/20 | Maureen McOwen, Jonathan Reischl, Tracy Hilmer | Kyle Tayman, William Harrington, Christina Hennecken |
| 10/8/20 | Maureen McOwen, Jonathan Reischl, Tracy Hilmer, Alicia Ferrara | Kyle Tayman, William Harrington, Christina Hennecken |

/s/ Tracy L. Hilmer
Tracy L. Hilmer
Enforcement Attorney
Bureau of Consumer Financial Protection

## CERTIFICATE OF SERVICE OF SEALED MATERIAL

I hereby certify that on October 21, 2020, I caused unredacted copies of Plaintiff's sealed Motion and Exhibits 6-14 and 16-20 to be served by secure electronic mail to counsel of record for all Defendants.

/s/ Tracy L. Hilmer
Tracy L. Hilmer
Enforcement Attorney
Bureau of Consumer Financial Protection