MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
LORRAINE VAN KIRK
(202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov
lorraine.vankirk@cfpb.gov
1700 G Street, NW
Washington, DC 20552

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

BUREAU OF CONSUMER FINANCIAL PROTECTION,

*Plaintiff*,

v.

PROGREXION MARKETING, INC., *et al.*,

*Defendants.*

Case No. 2:19-cv-00298-BSJ

**PLAINTIFF'S EVIDENTIARY OBJECTIONS RELATED TO DEFENDANT JOHN C. HEATH, P.C.'S (D/B/A LEXINGTON LAW) MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I**

Pursuant to DUCivR 7-1(b)(1) and Fed. Civ. P. 56(c)(2), Plaintiff Bureau of Consumer Financial Protection ("Bureau") objects to the admissibility of four exhibits submitted by John C. Heath Attorney at Law P.C. (d/b/a Lexington Law) (hereinafter "Heath") in support of its Motion for Partial Summary Judgment on Count I. First, Exhibit F, the declaration of John C. Heath ("Heath Declaration") should be disregarded because Mr. Heath makes no showing that he has personal knowledge of its contents or that he is competent to testify to the matters to which he avers. The Heath Declaration also attempts to improperly introduce evidence that Mr. Heath cannot possibly personally know (¶¶ 22-24); that Mr. Heath disavowed personally knowing during his deposition (¶¶ 9-10); that contains conclusory and improper opinions (¶¶ 30-31, 34); and that is unsupported by anything in the voluminous record (¶¶ 8, 19-20). Second, Exhibit V, LEX0004303, the unsworn and unsigned pre-suit report of [redacted] ([redacted] Report") should be disregarded because it is irrelevant, contains inadmissible hearsay that cannot be put into an admissible form for trial, and because its probative value is substantially outweighed by the risk of unfair prejudice, confusion, and wasting the Court's time. Finally, Plaintiff objects to Exhibit K-1, the Expert Report of John DelPonti, Jr., (Aug. 20, 2021), and Exhibit G-1, the Expert Report of John Ulzheimer (Aug. 19, 2021), for the reasons stated in Plaintiff's Motion to Exclude

Aug. 20, 2021 Expert Report of John DelPonti, Jr., and Related Testimony ("Pl.'s Mot. to Exclude DelPonti"), ECF 224, and Plaintiff's Motion to Exclude Expert Reports of John Ulzheimer and Related Testimony ("Pl.'s Mot. to Exclude Ulzheimer"), ECF 222.

## I. <u>Heath's Exhibit F – The Heath Declaration</u>

Federal Rule of Civil Procedure 56(c)(4) mandates that an affidavit or declaration used to support a motion must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Federal Rule of Evidence 602 similarly requires that a testifying witness have "personal knowledge of the matter." Fed. R. Evid. 602. In order to have personal knowledge, a witness must have "actually perceived or observed that which he testifies to." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (quoting *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997)). The Heath Declaration fails these foundational requirements.

Mr. Heath does not declare that he has personal knowledge of the contents of the Heath Declaration. Instead, Mr. Heath swears to his declaration *only* "to the best of [his] knowledge and belief," Heath Decl. at 6, and he offers no other statements or assurance about the basis for his statements, which range from highly

specific (¶¶ 9-10, 19-20, 22-24) to vague and conclusory (¶¶ 8, 30-31, 34). Yet declarations based on "knowledge and belief" are not competent evidence for summary judgment. *See Tavery v. United States*, 32 F.3d 1423, 1426 n.4 (10th Cir. 1994) ("a mere statement of belief … is insufficient to support summary judgment"); *see also Harris v. Gonzales*, 488 F.3d 442, 446 (D.C. Cir. 2007) ("'An affidavit based merely on information and belief is unacceptable,'" even if the affidavit says "'[t]o the best of my knowledge and belief'"); *Harrison v. Culliver*, 746 F.3d 1288, 1299 n.16 (11th Cir. 2014) ("'To the best of [his] belief and knowledge' …. evinces that [the declarant] did not rely on his personal knowledge").

The Heath Declaration also does nothing to show that Mr. Heath has personal knowledge of what he declares. Indeed, the declaration provides *no information* about Mr. Heath's professional duties, background, or activities now or previously other than to state that Mr. Heath is "the Principal and Directing Attorney" of Heath P.C. and has "held this position since 2004." Heath Decl. ¶ 1. Mr. Heath's recitation of his title and tenure is insufficient to establish his professional duties or his knowledge. *See, e.g.*, *Pack v. Hickey*, 776 F. App'x 549, 555-56 (10th Cir. 2019) (rejecting argument that plaintiff's position as CEO was sufficient to support an inference of personal knowledge as to the company's acts

because "his affidavit was devoid of any indication that he personally participated" in any activities that would establish personal knowledge). Indeed, the Heath Declaration contains no basis to believe that Mr. Heath observed and perceived what he declares.

The Heath Declaration—which provides no allegation or indication of Mr. Heath's personal knowledge—cannot provide competent evidence for summary judgment. It is also rife with other evidentiary shortcomings, detailed *infra*; it should be disregarded.

**A. Mr. Heath repeatedly denied personal knowledge of the removal statistics (¶¶ 9-10)**

Mr. Heath states in his declaration that Lexington Law "has helped clients identify and remove more than 26 million negative entries from their credit reports," including 16 million removals for collection accounts. Heath Decl. ¶¶ 9-10. Yet at his deposition, he denied any personal knowledge of how Lexington Law identifies tradeline removals across its millions of customers or how these statistics are generated. *See* Ex. 1, Heath Dep. at 239:14-21 ("Q. Are you familiar with the methodology for counting the removals that are advertised? A. I'm not. Q. Have you ever reviewed the methodology for counting removals that are used in Lexington Law's advertising? A. Not that I recall."); *id.* at 262:10-12 (Q. "I'm not familiar with the methodology, as I've answered before."). Mr. Heath did not

personally observe the millions of claimed removals, did not personally carry out or supervise the process of identifying and counting the claimed removals, and does not even have personal knowledge about how the statistics were generated. Paragraphs 9 and 10 of his declaration must be disregarded.[1]

**B. Mr. Heath cannot have personal, observed knowledge of four million customer interactions (¶¶ 22-24)**

Mr. Heath asserts that Lexington Law informs "each" and "every" one of its clients at the intake stage that it does not promise or guarantee results. Heath Decl. ¶¶ 22-24. These claims could not possibly be based on his personal knowledge.

Mr. Heath does not have personal knowledge of every conversation Defendants have had with prospective Lexington Law customers. There is no basis for him to claim that he "actually perceived or observed" approximately four million customer interactions, and his declaration establishes no such foundation and includes no claim of personal knowledge. Mr. Heath "simply was not in a position to acquire such comprehensive knowledge" of four million Lexington

[1] If Mr. Heath were to claim personal knowledge of the removal figures, calculations, and methodology, such a claim would contradict his prior sworn testimony. Ex. 1, Heath Dep. 239-41, 262. Such a contradiction would present an additional basis for excluding paragraphs 9 and 10 of the Heath Declaration. *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).

Law customer interactions. *Argo*, 452 F.3d at 1200 (affirming striking and disregarding claims that a declarant could not personally know).

Indeed, Mr. Heath does not even have personal knowledge of Lexington Law's current *scripts*, much less its individual consumer interactions. He indicated at his deposition that he does not regularly review Lexington Law telemarketing scripts. *See* Ex. 1, Heath Dep. at 53:25-54:6 ("Q. Do you regularly review telemarketing scripts used to sell Lexington Law services? A. There was a time where I did, but that duty has been given to other attorneys. It does happen from time to time."). And he testified that the last time he regularly reviewed such scripts was nearly a decade ago. *Id.* at 54:7-11.

Nor is Mr. Heath's position as the principal of Heath P.C. sufficient to show personal knowledge of the firm's telemarketing practices, because his declaration does not indicate that he personally participates in this work. *See Pack*, 776 F. App'x at 555-56 (holding CEO lacked personal knowledge as to the company's acts because "his affidavit was devoid of any indication that he personally participated" in any activities that would establish personal knowledge). Mr. Heath lacks personal knowledge sufficient to testify as to what "each" and "every" customer is told at intake, and therefore Paragraphs 22-24 of his declaration must also be disregarded.

### C. Mr. Heath offers his opinions about promises and business models without any basis (¶¶ 30-31, 34)

Mr. Heath also offers his opinions for which he has no factual support. First, he opines that Lexington Law makes no promises to prospective customers. Heath Decl. ¶¶ 30-31, which Heath brazenly cites as evidence that it does not promise results. Heath Mot. ¶¶ 31-32 (ECF 168). Mr. Heath similarly asserts his beliefs about business models for *all* credit repair companies. Heath Decl. ¶ 34. But these bare assertions constitute improper opinion testimony from a fact witness not rationally based on the witness's perception. Fed. R. Evid. 701. He has no personal, independent knowledge on which to base them. And a party's self-serving affidavit containing conclusory statements like these is not admissible and should be disregarded at summary judgment. An "affidavit must set forth facts, not conclusory statements." *BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1101 (10th Cir. 1999). And a statement is "merely conclusory" when it "do[es] not provide any factual bases for the inference" being made, as is the case here. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995).

### D. There is zero evidence of "hot document" review or monthly "Value Reconciliation" for every customer being used as Heath states (¶¶ 8, 19-20)

No document or testimony in this multi-year litigation references "hot document" review, "value reconciliation" being performed monthly for every

customer, or Heath recommending that customers cancel—except for the Heath Declaration, for which Mr. Heath does not profess or provide personal knowledge. Given the numerous and foundational evidentiary infirmities in the Heath Declaration, it is especially inappropriate for it to constitute the sole evidence of these purported processes. These paragraphs, too, should be disregarded.

## II. Heath's Exhibit V – The [redacted] Report

The [redacted] Report is an unsigned, unsworn report [redacted] Ex. 1, Heath Dep at 242:1-243:1, 248:9-18. It purports to analyze Lexington Law's efficacy in removing negative items from consumers' credit records, including the rate at which negative items are reinserted into consumers' credit records after a claimed removal, and is offered by Heath in support of its statement that "[h]istorically, only a small fraction of a percentage of all removals obtained by Heath P.C. clients were reinserted into a client's credit report." Heath Mot. ¶ 15 (ECF 168). Mr. [redacted] has not been disclosed as either a fact or an expert witness in this action and the time to do so has passed.

The [redacted] Report should be disregarded because the rate at which negative items are reinserted into the credit records of Lexington Law customers is irrelevant to Heath's liability for violating 16 C.F.R. § 310.4(a)(2) of the

Telemarketing Sales Rule (the "Provision"), because it is inadmissible hearsay that cannot be put into an admissible form for trial, and because Mr. [redacted] calculation of the reinsertion rate is so demonstrably unreliable that its probative value is substantially outweighed by the risk of unfair prejudice that the Bureau would face if it were to be considered, as well as the risk of confusion and of wasting the Court's time.

**A. Lexington Law's reinsertion rate is irrelevant to Heath's liability for violating the Provision.**

Federal Rule of Evidence 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible and must be disregarded at summary judgment. Fed. R. Evid. 402; *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995); *Parsons v. Velasquez*, No. CIV 20-0074, 2021 WL 3269457, at *2 n.2 (D.N.M. July 30, 2021).

The [redacted] Report is irrelevant because Lexington Law's reinsertion rate, or how effective its services are, is of no consequence in determining whether Heath violated the Provision. A fact is considered to be "of consequence" when "its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict."

*United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998). There are three necessary elements to a claim under the Provision:

1. The defendant is a telemarketer or seller, as defined by the Telemarketing Sales Rule (16 C.F.R. § 310.2);
2. The goods or services being offered are represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating (16 C.F.R. § 310.4(a)(2)); and
3. The defendant requested or received payment of any fee or consideration:
    a. Before the time frame in which the seller has represented all of the goods or services will be provided to that person has expired (16 C.F.R. § 310.4(a)(2)(i)); and
    b. Before the seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved (16 C.F.R. § 310.4(a)(2)(ii)).

The reinsertion rate analysis contained in the [redacted] Report has no bearing on any of these elements, nor does it provide the basis for any inference, or chain of

inferences, about whether they have been met. It is therefore immaterial and irrelevant to this case and should be disregarded.

**B. Mr. [redacted] analysis of Lexington Law's reinsertion rate is inadmissible hearsay.**

Hearsay is an out of court statement offered for the truth of the matter asserted and, with limited exceptions that are inapplicable here, is inadmissible. Fed. R. Evid. 801-804. The [redacted] Report is an out of court statement that Heath offers for the truth of the matter asserted—that only a small percentage of its purported removals were reinserted into its customers' credit reports. Accordingly, the [redacted] Report, which is neither signed nor sworn, is inadmissible hearsay and should not be considered on summary judgment. *See Peak ex rel. Peak v. Cent. Tank Coatings*, 606 F. App'x 891, 895 (10th Cir. 2015) ("[U]nsworn expert reports are not competent evidence on summary judgment"); *United States v. Phung*, No. CIV-09-772, 2010 WL 11613914, at *2 (W.D. Okla. July 14, 2010) ("An unsigned, unsworn expert report . . . is hearsay and cannot be used in support of a motion for summary judgment.").

While hearsay in an expert report may be cured for purposes of summary judgment by, for example, submitting a declaration attesting under penalty of

perjury that the expert will testify to the contents of the report at trial,[2] Mr. [redacted] has submitted no such declaration here. Though evidence at summary judgment need not be submitted in a form that would be admissible at trial, the proponent of the evidence bears the burden of explaining the admissible form in which it anticipates presenting the evidence at trial. *Brown v. Perez*, 835 F.3d 1223, 1232-33 (10th Cir. 2016) (declining to consider hearsay letter where the proponent failed to show that it could put the substance of the letter into an admissible form at trial).[3] Heath has not done so here, nor can it. Mr. [redacted] may not testify as an expert witness at trial because Heath's deadline to disclose expert witnesses has passed and Heath did not disclose Mr. [redacted]. *See* Amended Scheduling Order, ECF 138; Defendants' Notice of Disclosed Experts, ECF 196. Nor may he testify as a fact witness because Heath has not timely disclosed him pursuant to Fed. R. Civ. P. 26(a)(1)(A).

The [redacted] Report does not meet any of the exceptions to the hearsay rule listed Federal Rules of Evidence 803 and 804, nor should it be admitted under the

---

[2] *E.g.*, *Rawers v. United States*, 488 F. Supp. 3d 1059, 1104-05 (D.N.M. 2020); *Pruitt v. Alamosa Cnty. Sheriff's Off.*, No. 18-cv-01765, 2020 WL 3971651, at *6-7 (D. Colo. July 14, 2020).

[3] *See also* Advisory Comm. Notes to Rule 56(c)(2) (2010) ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.").

residual exception codified at Federal Rule of Evidence 807. In order to be admissible under the residual exception, the proponent of the evidence must

> demonstrate the materiality of the statement, that it demonstrates circumstantial guarantees of trustworthiness that are equivalent to the exceptions enumerated in Rules 803 and 804, that it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts [], and that its admission will serve the interest of justice.

*Spencer v. Garden*, 322 F. Supp. 3dd 1205, 1213 (D. Utah 2018) (Jenkins, J.) (internal quotation marks omitted) (citing *United States v. Trujillo*, 136 F.3d 1388, 1396 (10th Cir. 1998); Fed. R. Evid. 807). The Tenth Circuit has cautioned that the residual exception should be used only in "extraordinary circumstances where the court is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interest of justice." *United States v. Tome*, 61 F.3d 1446, 1452 (10th Cir. 1995).

For the reasons described above, Mr. [redacted] reinsertion analysis is not material. And there are serious concerns with its trustworthiness and reliability which, in turn, cast doubt on its probativeness. In the portion of his report cited by Heath, Mr. [redacted] claims to have [redacted] and

reached the conclusion that only 0.0059% were reinserted. Exhibit V at LEX0004324. But because Lexington Law stops pulling customers' credit reports shortly after they cancel their service, and because approximately two-thirds of customers cancel within six months of signing up, Mr. [redacted] would not have had the data necessary to determine if a reinsertion occurred for a significant number of claimed removals. *See* Ex. 2, Lam Dep. at 130:1-131:15; Ex. 3, Nigrinis Decl. ¶ 15. Because Mr. [redacted] analysis does not account for reinsertions that occur after a customer cancels, as a significant portion of Lexington Law customers do within a short time after signing up, it is demonstrably unreliable and should not be admitted under the residual exception.

**C. Because of its unreliability, the probative value of Mr. [redacted] reinsertion analysis is substantially outweighed by the danger of unfair prejudice, confusion, and wasting time.**

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As discussed above, Mr. [redacted] calculation of Lexington Law's reinsertion rate is utterly unfounded and unreliable because Lexington Law has no way of determining whether a negative item is reinserted after a customer cancels. Thus, even if the

Court were to find it relevant, its very limited probative value could not be justified as compared to the substantial risk of unfair prejudice, confusion, and wasting the Court's time. *See Union Pac. R.R. Co. v. Utah State Tax Comm'n*, No. 2:18-CV-00630, 2019 WL 5637100, at *3 (D. Utah Oct. 31, 2019) (where evidence may be marginally relevant but would waste the Court's time, exclusion is justified, even where the matter is not before a jury).

**III. Heath's Exhibit G-1 and K-1, the Expert Reports of John Ulzheimer and John DelPonti**

Plaintiff objects that Exhibit K-1, the Expert Report of John DelPonti, Jr., (Aug. 20, 2021), and Exhibit G-1, the Expert Report of John Ulzheimer (Aug. 19, 2021), are inadmissible for the reasons stated in Plaintiff's Motion to Exclude DelPonti, ECF 224, and Plaintiff's Motion to Exclude Ulzheimer, ECF 222.

**IV. Relief Requested**

For the foregoing reasons, the Court should disregard the [redacted] Report and the Heath Declaration. And for the reasons stated in Plaintiff's Motion to Exclude DelPonti, ECF 224, and Plaintiff's Motion to Exclude Ulzheimer, ECF 222, the Court should disregard the Expert Reports of John DelPonti and John Ulzheimer.

Dated: November 15, 2021

Respectfully submitted,

/s/ *Alicia Ferrara*
MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
LORRAINE VAN KIRK
*Enforcement Attorneys*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
(202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov
lorraine.vankirk@cfpb.gov

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*