# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION, <br><br> *Plaintiff*, <br><br> v. <br><br> PROGREXION MARKETING, INC., et al., <br><br> *Defendants*. | Case No. 2:19-cv-00298-BSJ <br><br> **Declaration of Jacob P. Hamilton** |

I, Jacob P. Hamilton, hereby declare and state as follows:

1. I am the General Manager of CreditRepair.com, Inc. ("CreditRepair.com"). I have held the position since January 2019. In this role, I am responsible for general oversight of CreditRepair.com's operations.

2. CreditRepair.com provides a wide range of credit repair services to help its members enforce their legal rights to ensure that items on the clients' credit reports are fair, accurate, and substantiated.

3. On behalf of its members, CreditRepair.com submits communications to the three major consumer reporting agencies, asking them to verify that the information reported by the furnisher is accurate, or explaining that the tradeline (a) is not the client's, (b) was "never late," or (c) was not appropriately reported.

4. CreditRepair.com employs a monthly subscription model, in which it charges in arrears for its services, generally in monthly increments.

1

5. The monthly service fee is not charged until after CreditRepair.com completes work on the member's behalf.

6. In addition to the monthly subscription fee, CreditRepair.com charges its members a "first work" fee, which is a one-time charge.

7. The "first work" fee covers initial services rendered by CreditRepair.com, including: (1) an initial interview to set up the member's case and record; (2) analysis of a credit report and identification of potentially inaccurate tradelines; and (3) preparing the initial round of letters challenging the potentially inaccurate tradelines (if any are found).

8. The "first work" fee is not charged until CreditRepair.com completes its "first work" services.

9. In order to enable CreditRepair.com to begin work on their behalf, most members purchase a TransUnion credit report during their enrollment with CreditRepair.com. However, members are not required to purchase a TransUnion credit report for all products, in all circumstances, or in certain states.

10. CreditRepair.com's billing model allows it to determine (within 30 days of an invoice) whether a member will pay for its services.

11. If the member does not pay the invoice, CreditRepair.com attempts to collect payment for services rendered over a predetermined period of time once services have been performed and payment has not been received.

12. After 30 days of nonpayment, when this time period has expired, CreditRepair.com discontinues providing services.

13. CreditRepair.com policies expressly prohibit making promises or guarantees of specific results.

14. Call center representatives selling CreditRepair.com's services are trained not to make promises or guarantees of specific results.

15. Such training is given to all newly hired call center representatives.

16. CreditRepair.com's policy is to tell each member that it does not guarantee or promise results.

17. At the intake stage, it is CreditRepair.com's policy for each member to be told that CreditRepair.com does not and cannot promise results.

18. Attached hereto as Exhibit 1 is a true and correct copy of an exemplar script used to market CreditRepair.com's services, bearing Bates stamp PGX0028674. As demonstrated therein, it is CreditRepair.com's policy that every member is told that CreditRepair.com does not promise a specific outcome, and that "every case is unique which is why [CreditRepair.com] can't promise or guarantee any specific result from our work." Agents are required to read these disclosures verbatim to every member.

19. Every member signs an engagement agreement with CreditRepair.com. Attached hereto as Exhibit 2 is a true and correct copy of a CreditRepair.com engagement agreement, bearing Bates stamp PGX0047444. The engagement agreement that every member signs explicitly states that CreditRepair.com does not promise results: "CreditRepair.com cannot guarantee and you are not paying for a particular credit report outcome or result."

20. In signing the engagement agreement, each member represents that they "understand and acknowledge that [they] are not paying for, and that CreditRepair.com does not make, any representation, warranty, promise or guarantee as to any particular outcome or result."

21. CreditRepair.com has consistently sought to comply with applicable law and understood that CreditRepair.com's billing practices were in compliance with governing laws.

22. Since 2019, through my role as General Manager of CreditRepair.com, I understand that at all relevant times since at least since 2016, CreditRepair.com was aware that John C. Heath, Attorney at Law, P.C.'s ("Heath") predecessor was sued by the State of Tennessee for alleged violations of the AFP in 1996, and FTC intervened (the "*Tennessee* Action").

23. I also understand that since at least 2016, CreditRepair.com understood that the Tennessee Action was resolved with a consent order (the "*Tennessee* Consent Order" or "Consent Order"). The Consent Order allowed Heath's predecessor to "invoice and receive payments for specific work already performed, provided that [it] disclosed to the client the work that [it] will perform and the fee to be charged for such work in advance of performing such work, *without providing any kind of promised results*."

24. Through my role as General Manager, I understand and know from those under my supervision that based on the *Tennessee* Order and its understanding of the law, CreditRepair.com has understood since at least 2016 that it is permissible to invoice customers in arrears on a monthly basis for work that the provider has completed, provided that, when offering credit repair services to potential customers over the phone, CreditRepair.com does not make specific promises or guarantees that the customer's credit will get better, or that negative information will be removed from the customer's credit report.

4

25. In other words, CreditRepair.com understood that it was in compliance with the Credit Repair Organizations Act (CROA), 15 U.S.C. § 1679b(b), and not subject to the Advance Fee Provision of the Telemarketing Sales Rule (TSR), 16 C.F.R. § 310.4(a)(i)-(ii), if it did not make promises or guarantees of specific results and did not collect payment before services were rendered.

26. Based on this understanding, CreditRepair.com trained call center representatives marketing or selling CreditRepair.com's services on compliance with the TSR, CROA, and other applicable laws.

27. As a registered credit repair provider, some states require CreditRepair.com to submit contracts and scripts to state regulators (for example, California). No such state has ever taken the position that CreditRepair.com's billing model violated applicable law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and based on my personal knowledge.

Dated:  December 30, 2021

/s/ *Jacob Hamilton*
Jacob P. Hamilton