MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
J. TAYLOR MCCONKIE
(202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov
taylor.mcconkie@cfpb.gov
1700 G Street, NW
Washington, DC 20552
*Attorneys for Plaintiff Bureau of
Consumer Financial Protection*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>*Plaintiff*,<br><br>v.<br><br>PROGREXION MARKETING, INC., *et al.*,<br><br>*Defendants.* | Case No. 2:19-cv-00298-BSJ |

**PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF STEPHEN CRAIG MOTT**

## Table of Contents

INTRODUCTION ...................................................................................................................3

BACKGROUND .....................................................................................................................5

ARGUMENT ...........................................................................................................................7

I.    Standard for Admitting Expert Testimony. ....................................................................7

II.   Mott's Testimony Regarding Friendly Fraud ▮ ▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Is Inadmissible. .................8

    A.   Mott ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ . .............................9

    B.   Mott's Friendly Fraud conclusions conflict with his own prior opinions and with the readily available data and information pertinent to this case. .......................................................................................................................11

    C.   Mott's conclusions regarding Friendly Fraud are incompatible with the nature of Defendants' subscription credit repair services. ........................14

CONCLUSION ......................................................................................................................17

Under Federal Rules of Evidence 104(a), 403, 702, and 703, plaintiff Bureau of Consumer Financial Protection (Bureau) respectfully moves to exclude testimony by Stephen Craig Mott (Mott). In Mott's October 25, 2021 report (Mott Rebuttal Report), he proffered opinions that are unsubstantiated and speculative. If offered at trial, his testimony regarding these opinions will confuse, not assist, the jury, and their admission would be unduly prejudicial.

### INTRODUCTION

This motion presents a single issue: Whether Craig Mott, a payment systems consultant that Defendants retained to rebut the expert testimony of Allen Weinberg, should be permitted to testify that so-called "Friendly Fraud"—defined by Mott as ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████████ (Ex. 1, Mott Rebuttal Report ¶ 29)—is a likely explanation for ███████████████████████ ███.[1] The Court should not permit such testimony.

---

[1] The term "Defendants" refers to Progrexion Marketing, Inc., PGX Holdings, Inc., Progrexion Teleservices, Inc., eFolks, LLC, and CreditRepair.com, Inc. (collectively, Progrexion) and John C. Heath, PC, d/b/a Lexington Law (Heath).

The Bureau's expert is prepared to testify that [REDACTED]. Attempting to rebut that testimony, [REDACTED]. But Mott's opinion is riddled with holes:

- Mott admittedly did not base his opinion on any documents, data, or materials produced in this case;

- His proffered testimony is wholly speculative and conflicts with his own prior statements;

- Even though this case involves a vast amount of consumer data—including chargeback data—[REDACTED];

- The evidence in this case contradicts Mott's theory, [REDACTED]; and

- Even a cursory understanding of credit repair services reveals the implausibility of Friendly Fraud [REDACTED].

For these and the other reasons discussed below, Mott's proffered testimony about Friendly Fraud should be excluded as unreliable, prejudicial, and likely to confuse the jury.

# BACKGROUND

On September 27, 2021, the Bureau disclosed Allen Weinberg as an expert witness and produced his expert report (Weinberg Report) to Defendants. Weinberg is an expert in credit card, debit card, and Automated Clearing House (ACH)/bank transfer payment systems. Ex. 2, Weinberg Report, p. 1. His proffered testimony relates to consumer payment disputes (chargebacks and ACH returns) and, as relevant to this motion, he is prepared to opine ███████████ ████████████████████████████████████████████████████ ██████████████████████████████████████. *Id.* p. 9.

On October 25, 2021, Defendants disclosed Mott as a rebuttal expert witness and served the Mott Rebuttal Report on the Bureau. The Bureau, in turn, served the Rebuttal Report of Allen Weinberg (Weinberg Rebuttal) on November 22, 2021. Weinberg and Mott were deposed on December 2, 2021 and December 17, 2021, respectively.

According to the Mott Rebuttal Report, █████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████. Mott asserts ███████████████████████ ████████████████████████████████████████████████████

5

██████████████████████████████████████████████████████████

██████████. Mott Rebuttal Report ¶ 26; *see also id*. at ¶ 19 (noting that ██████

██████████████████████████████████████████████████████████

████████████████████████████████████). Mott then ██████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████ [2] *Id*. at ¶ 29.

   Again, ████████████████████████████████████████████

██████████████████████████████████████████████

██████████. *Id*. ¶ 29. ██████████████████████████████████

██████ *Id*. at ¶¶ 29, 32. ██████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████ *Id*. at ¶ 29. ██████████████████████████████████

██████████████████████████████ *Id*. at ¶¶ 29, 50.

---

[2] Mott's assertion ████████████████████████████████████ is not true. As noted in the Weinberg Rebuttal, ██████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████ Ex. 3 Weinberg Rebuttal ¶¶13-14.

# ARGUMENT

## I. Standard for Admitting Expert Testimony.

The party proffering expert testimony bears the burden of establishing its admissibility under FRE 702. *U.S. v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). The Court, as "gatekeeper," must determine that a proposed expert is qualified and that his testimony is "both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *Id*. at 1241. "Any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). "This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Id*.

Rebuttal testimony is equally subject to scrutiny under Rule 702 and the Supreme Court's guidance in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 (1993). *See Funderburk v. S. Carolina Elec. & Gas Co.*, 395 F. Supp. 3d 695, 716 (D.S.C. 2019) (collecting cases); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (*Daubert* "applies to all expert testimony").

The 2000 Advisory Committee Notes identify certain factors for assessing whether proffered expert testimony satisfies Rule 702, including whether the expert:

7

- is "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying";

- has "unjustifiably extrapolated from an accepted premise to an unfounded conclusion" such that there is "too great an analytical gap between the data and the opinion proffered";

- and "is being as careful as he would be in his regular professional work outside his paid litigation consulting."

FRE 702 Advisory Comm. Notes (2000) (citations omitted).

Expert testimony may additionally be excluded under Rule 403 if its probative value is substantially outweighed by a danger of unfairly prejudicing a party, confusing the issues, misleading the jury, causing undue delay, wasting time, or needlessly presenting cumulative evidence. *See Marquez v. City of Albuquerque*, 399 F.3d 1216, 1221-22 (10th Cir. 2005).

II. **Mott's Testimony Regarding Friendly Fraud** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Is Inadmissible.**

Any testimony by Mott that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ should be excluded at

trial. Mott's proffered testimony is unsupported and untested, contradicted by the actual data and information regarding Defendants' payment disputes, and illogical as applied to the subscription credit-repair industry. Because there is "simply too great an analytical gap" between Mott's conclusions and the actual underlying facts in this case, Mott should be precluded from testifying about them at trial. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### A. Mott ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In order to be reliable, Rule 702(d) requires that "the testimony is based on sufficient facts or data," and that "the expert has reliably applied the principles and methods to *the facts of this case*." *United States v. Chapman*, 839 F.3d 1232, 1238 (10th Cir. 2016) (emphasis added). To that end, an initial "key question" is whether an expert's theory "can be (and has been) tested." *Daubert*, 509 U.S. at 593.

Mott has failed entirely in this regard, conceding that his claims regarding Friendly Fraud are not based on this case's documents, data, or materials. Ex. 4 (Mott Dep.) 61:20-65:5.[3] Without a connection to the particular payment history

---

[3] To the extent that Mott gathered materials to support his Friendly Fraud conclusions, they were limited to "extrinsic evidence" that led him to the conclusion that "the way [he] was looking at the *industry* and the *marketplace* was correct." *Id.* 43:10-20 (emphasis added).

9

and activities of Defendants and their clients, his proffered testimony is nothing more than unreliable speculation. *Heer v. Costco Wholesale Corp.*, 589 F. App'x 854, 862 (10th Cir. 2014) ("[A] district court may properly exclude such testimony when the opinion evidence 'is connected to existing data only by the *ipse dixit* of the expert'") (quoting *Joiner*, 522 U.S. at 146).

Indeed, Mott concedes that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Mott Dep. 242:12-16. But a valid Friendly Fraud assertion requires actual evidence; it cannot be advanced on inference alone. *FTC v. Credit Bureau Ctr.*, 325 F.Supp. 3d 852, 862 (N.D. Ill. 2018), *vacated in part on other grounds* 937 F.3d 764 (7th Cir. 2019); *FTC v. Grant Connect, LLC*, 827 F.Supp.2d 1199, 1223 (D. Nev. 2011) *vacated in part on other grounds* 763 F.3d 1094 (9th Cir. 2014) (assertion of Friendly Fraud, absent evidence that any particular chargebacks were the result of Friendly Fraud, is not a valid explanation for high chargeback rates).

Moreover, despite the availability of adequate data and information, which is discussed below, Mott made no attempt to test his conclusions. ███████████████████████████████████████████████████████████████████████████ Mott Dep. 191:12-192:5. Where an expert fails to test their theory against available

10

facts and data, the untested theory should be excluded. *See, e.g.*, *Taber v. Allied Waste Sys., Inc.*, 642 F. App'x 801, 809-12 (10th Cir. 2016) (faulting and excluding expert who "fail[ed] to test his theory"); *Heer*, 589 F. App'x at 861-63 (affirming exclusion of expert who "made no attempt to test his theory"); *Rodgers v. Beechcraft Corp.*, 759 F. App'x 646, 664 (10th Cir. 2018) (same); *see also Smith v. Terumo Cardiovascular Sys. Corp.*, No. 2:12-CV-00998-DN, 2017 WL 3394594, at *5 (D. Utah Aug. 7, 2017) ("Without testing, [the proffered expert's] conclusion is only a theory with inadequate support."). Mott's failure to test his theory renders it inadmissible in this case.

Mott's unsupported and wholly imprecise speculation regarding Friendly Fraud, which he admits ▬▬▬▬▬▬▬,[4] lacks any substance that "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Permitting such testimony would be prejudicial, *see* Fed. R. Evid. 403, and would only serve to confuse the jury.

> **B.  Mott's Friendly Fraud conclusions conflict with his own prior opinions and with the readily available data and information pertinent to this case.**

Mott's conclusions regarding Defendants' chargebacks and ACH returns are at odds with his stated understanding of Friendly Fraud, and with the data and

---

[4] Mott Dep. 242:11-16.

11

information in the record regarding Defendants' payment disputes. Mott has previously written that the vast proportion of "friendly fraud is done by a relative handful of recidivists." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[5] When asked whether he still agreed with this assessment of Friendly Fraud, Mott stated, "Oh, most certainly." Mott Dep. 259:14-25, 260:16-261:19. This understanding is incompatible with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[6] and is at odds with the data and other evidence in this case. Defendants logged and maintained a vast array of consumer payment data, including chargeback data, *see, e.g.*, PGX0050432,[7] going back numerous years. If Friendly Fraud was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, then, accordingly to Mott, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But that pattern is not, in fact, visible in the data.



---

[5] Mott's assessment of the role of recidivists in Friendly Fraud was based on an analysis of chargeback reason codes and transaction data from MasterCard cardholders. Mott Dep. 260:16-261:8.
[6] Mott Rebuttal Report ¶¶ 29, 50.
[7] This document contains ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Due to its size the Bureau has not included this document as an exhibit but stands ready to produce it at the Court's request.

Defendants' data contradict Mott's theory in other ways, as well. For example, ███████████████████████████████████████████████ ███████████████████████████. One Loan Place, one of Progrexion's hotswap partners, ███████████████████████████████████████████████ ███████████████████████████████████. *See, e.g.,* Ex. 5 (PGX0023316 at pp. 372-79); Ex. 6 (PGX0025493 at pp. 549-556); Mott Dep. Ex. 509 (LEX0029015); Ex. 7 (PGX0038072). But ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Mott Dep. 241:23-244:8.

Finally, Defendants' internal documents ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See, e.g.,* Ex. 8 (PGX0050300); Ex. 9 (PGX0050321); Ex. 10 (PGX0050336). Defendants ███████████████████████████████████████████████████████████████████████████████████████████████████████████. *See, e.g.,* Ex. 11 (PGX0050412); Ex. 12 (PGX0050429). Mott's post-hoc explanation is merely a convenient one for litigation purposes; it is utterly absent from the actual factual record of Defendants' business.

### C. Mott's conclusions regarding Friendly Fraud are incompatible with the nature of Defendants' subscription credit repair services.

In addition to being unsupported and untested, and being contradicted by the data and information available in Defendants' records, Mott's conclusions about Friendly Fraud are incompatible with the nature of the services offered by Defendants and the proffered testimony of Defendants' other expert witness. The idea that Friendly Fraud would be a significant problem in the subscription credit repair industry is counterfactual for two reasons: first, because consumers must provide detailed personally identifiable information in order to obtain the service; and second, because the service is intangible and provides no immediate or transferrable benefit.

Friendly Fraud is not uniform across merchants in every industry, and is particularly acute in industries that involve anonymous internet transactions, such as online purveyors of adult entertainment, *PSW, Inc. v. VISA U.S.A., Inc.*, No. C.A. 04-347T, 2006 WL 519670, at *2 (D.R.I. Feb. 28, 2006), and industries in which the consumer receives an immediate, high-value benefit that they can retain even after initiating the chargeback or return, or resell. Weinberg Report, p. 43; Weinberg Rebuttal ¶¶ 27, 33. Likewise, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ state that Friendly Fraud is associated with trends that may be identifiable in a merchant's data, such as orders in excess of the typical purchase for a given merchant, high

14

frequency purchases from a single consumer, and orders for goods that are commonly stolen. Ex. 13 ("What is Friendly Fraud? Key Signs and Mitigating the Effects of Consumer Abuse") (███████████████████████).

Those factors are not present for subscription credit repair services. As Mott acknowledged, ███████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████ Mott Dep. 190:14-19. The same would be true for the perpetrator of Friendly Fraud. To sign up for Defendants' credit repair services, the perpetrator would have to provide detailed personally identifiable information that would increase the risk that they would be caught. *See* Ex. 14 (PGX0028674 at pp. 676-77). And the benefit of the services—if there is one—is not immediate or transferrable, but rather comes in the form of changes in the consumer's credit report over a period of months.

Indeed, the proffered testimony of John DelPonti, another defense expert, includes data that purports to show ███████████████████████████████

█████████████████████████████████████. Ex. 15 DelPonti Expert Report ¶ 68. If the purported benefits of Defendants' services ██████████

████████████████████████, this is simply not a scenario where consumers can acquire real material value through Friendly Fraud.

15

None of Mott's explanations come close to resolving this fundamental disconnect. Mott asserts ████████████████████████████████████ ██████████████████████████████████. Mott Rebuttal Report ¶ 50. But his own discussion makes clear that Defendants' services do not fall into such a category. Mott is focused on ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████ Mott Rebuttal Report ¶50, n.76. But, as noted above, Defendants' customers are not anonymous. In order to sign up for credit repair services, consumers must provide, among other things, their name, birthday, social security number, and access to their credit report. Ex. 14 at pp. 676-77. They do so in most cases over the phone, while being recorded.[8] *Id*. at 674. This is the antithesis of ████████████████████████ ████████████████████████████████████████.

In short, Mott does not show that his opinion is "applicable to [this] particular set of facts," as *Daubert* requires. *Dodge*, 328 F.3d at 1221. ██████████ ████████████████████████████████████████████████████████.

---

[8] Mott likewise ████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████. Mott Dep. 97:20-98:21.

███████████████. He has no basis for extrapolating those observations to subscription credit repair services, in general, or to Defendants, in particular, and his opinion is therefore unreliable. FRE 702 Advisory Comm. Notes (2000).

## CONCLUSION

For these reasons, Mott's proffered testimony about Friendly Fraud should be excluded from trial.

Dated: April 26, 2022

Respectfully submitted,

/s/ Jonathan Reischl
MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
J. TAYLOR MCCONKIE
*Enforcement Attorneys*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-9202
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov
taylor.mcconkie@cfpb.gov

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

17

## CERTIFICATE OF COMPLIANCE WITH THE WORD-COUNT LIMIT

I certify that the above memorandum complies with the word-count limit of 3,100 words set by DUCivR 7-1(a)(4)(D)(i). According to the word count function of Microsoft Word, the memorandum contains 3098 words, excluding the face sheet, table of contents, table of authorities, signature block, and exhibits.

Dated: April 26, 2022

/s/ Jonathan Reischl
JONATHAN REISCHL
*Enforcement Attorney*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-9202
jonathan.reischl@cfpb.gov