MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
J. TAYLOR MCCONKIE
(202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov
taylor.mcconkie@cfpb.gov
1700 G Street, NW
Washington, DC 20552
*Attorneys for Plaintiff Bureau of
Consumer Financial Protection*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>    *Plaintiff*,<br><br>        v.<br><br>PROGREXION MARKETING, INC., *et al.*, | Case No.  2:19-cv-00298-BSJ<br><br>(REDACTED VERSION) |

**PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF
DEFENDANTS' PROFFERED EXPERT VICTOR STANGO**

## Table of Contents

INTRODUCTION ...........................................................................................1

ARGUMENT ................................................................................................2

   I.     Stango's testimony is completely irrelevant. ................................3

   II.    Stango is unqualified to provide any relevant testimony here.....................7

   III.   Stango's opinions are unsupported and unreliable. ...................................11

     A.    Stango's "benefits" theories are unsupported and unreliable. .................11

     B.    Stango failed to consider or quantify potential harms suffered by Defendants' customers. ..........................................................14

   IV.   Stango's "rebuttal" of the Bureau's experts is irrelevant and speculative. 15

   CONCLUSION .......................................................................................16

Under Federal Rules of Evidence, 702, 401, and 403, plaintiff Bureau of Consumer Financial Protection (Bureau) respectfully moves the Court to exclude testimony from Victor Stango. The opinions proffered in Dr. Stango's Report (Report) and deposition testimony[1] are irrelevant, inadequately substantiated, speculative, and unqualified. The proffered testimony will confuse, not assist, the jury, and its admission would be unduly prejudicial.

## INTRODUCTION

Defendants proffer Stango as a damages expert, ECF 196, but he is not. None of Stango's proffered opinion testimony meets the threshold requirements for admissibility under FRE 702.

First, his proffered opinions pertain to "economic damages." But the Bureau does not seek such relief here; rather, the Bureau seeks legal or equitable restitution and refund of moneys for consumers and statutory penalties. Stango offers no opinions about those relief categories, and so his proffered testimony is entirely irrelevant.

Second, Defendants proffer Stango as an "expert in damages and consumer economic harm and benefits," ECF 196, but Stango ▮▮▮▮▮▮ is not a damages

---

[1] Dr. Stango's Report (Report) is Exhibit 1; his deposition (Dep.) is Exhibit 2.

expert; he is a behavioral economist.[2] He performed no study applying his

expertise, and actually ███████████████████████████████████████

███████████████████[3]

Third, his opinions lack any validation or support. He did not ██████████

██████████████████████ (a task for which he is not qualified). He criticizes the

Bureau's relief demand – on legally irrelevant grounds – as █████████████

████████████████████████████████████████████████████████████████

████████ but failed to quantify or even study the speculative benefits, while

ignoring severe potential harms to consumers here.

Finally, in "rebutting" Bureau experts Dr. Shane Frederick and Allen

Weinberg, Stango attacks opinions they did not give and offers only speculative

conclusions unsupported by any study or the available facts.

All of these factors warrant Stango's exclusion.

## ARGUMENT

The party proffering expert testimony bears the burden of establishing its

admissibility under FRE 702. *U.S. v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir.

2009). The Court, as "gatekeeper," must first determine that the proposed expert is

---

[2] Ex. 1 (Report), p. 1; Ex. 2 (Dep.) 29:13-30:12, 137:8-9 ████████████████

████████████████████.
[3] Ex. 2 (Dep.) 190:7-193:21.
[4] Ex. 1 (Report), p. 5.

2

qualified and the testimony is "both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *U.S. v. Rodriguez–Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006).

FRE 702 sets the standard for the admission of expert testimony, and the 2000 Advisory Committee Notes (2000 Notes) identify factors the Court should consider in determining admissibility. Additionally, under FRE 403, the Court should exclude testimony probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1221-22 (10th Cir. 2005).

## I.   Stango's testimony is completely irrelevant.

Stango proposes to testify about "economic damages." It is unclear what he means by that term, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬ [5] But it doesn't matter because the Bureau does not seek such relief here: the Bureau seeks legal or equitable restitution and refund of moneys for consumers, as authorized by the Consumer Financial Protection Act (CFPA), 12 U.S.C. §§ 5565(a)(2)(B), (C).[6]

Restitution is not the same as damages. "Damages are measured by plaintiff's losses," while restitution "focus[es] on defendant's gain as a measure of

---

[5] Ex. 2 (Dep.) 138:18-24.
[6] Stango does not address the Bureau's civil money penalties demand.

recovery." *U.S. ex rel. Taylor v. Gabelli*, No. 03-CIV-8762(PAC), 2005 WL 2978921, *4 (S.D.N.Y. Nov. 4, 2005) (collecting cases and citing Dan B. Dobbs, Law of Remedies: Damages, Equity, Restitution §§ 3.1, 4.1 (2d ed. 1993)). Refund of moneys means just what it says, and also differs in character from damages because it is not focused on compensation for losses, but rather on restoring a consumer victimized by unlawful conduct to the *status quo*. *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 606-07 (9th Cir.1993).

Here, the Bureau's demand for restitution on behalf of consumers overlaps with its demand for refunds. This relief is determined by totaling the gross payments that Defendants unlawfully received from consumers and then subtracting the amounts they previously refunded. *F.T.C. v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1205-07 (10th Cir. 2005); *F.T.C. v. Kuykendall*, 371 F.3d 745, 765 (10th Cir. 2004) (*en banc*); *see also CFPB v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016); *C.F.P.B. v. Morgan Drexen, Inc.*, No. SACV13-1267-JLS(JEMx), 2016 WL 6601650, *2 (C.D. Cal. Mar. 16, 2016). This well-established method of calculating consumer redress reflects the fact that "[t]he fraud [is] in the selling, not the value of the thing sold," and, consequently, the defendant bears the risk of any uncertainty in the calculation. *Figgie Int'l*, 994 F.2d at 606; *accord Freecom*, 401 F.3d at 1206-07.

Count I alleges that Defendants systematically violated the Telemarketing Sales Rule (TSR) by charging consumers for credit repair services without complying with 16 C.F.R. § 310.4(a)(2). Thus, for Count I, the restitution/refund owed equals the total credit repair customer payments from March 8, 2016 through the date of judgment, minus refunds, including net payments for initiating services and purchasing a credit report during enrollment. Exhibits 3 and 4 contain summary calculations of these amounts for Lexington Law and CreditRepair.com, respectively.[7]

Counts II-V allege that Defendants are liable for engaging in and substantially assisting deceptive acts and practices. Because the affected customers' purchasing decisions were tainted by misrepresentations, *Figgie Int'l*, 994 F.2d at 606, the restitution/refund due under these counts equals the total payments hotswapped customers made to Defendants from July 21, 2011 through the date of judgment, minus refunds, including net payments for initiating services and purchasing a credit report during enrollment. Exhibits 5 and 6 contain summary calculations of these amounts for Lexington Law and CreditRepair.com, respectively.

---

[7] The cutoff date for the customer data provided by Defendants is July 31, 2020. The Bureau's relief calculations reflect that limitation.

Stango admits ███████████████████████████████████████

██████████████████████████████████████████████████████.[8]

Stango's unproven hypotheses ██████████████████████████

████████████████████ are irrelevant.[9] *Figgie Int'l*, 994 F.2d at 606 ("Courts

have previously rejected the contention that 'restitution is available only when the

goods purchased are essentially worthless.'") (citation omitted). Likewise, the

existence of some supposedly "satisfied" customers does not affect the restitution

calculus. *Gordon*, 819 F.3d at 1195-96.

And Stango's hypotheses presume that restitution requires an individualized

inquiry. Not so. Payments collected from consumers by Defendants without

satisfying the requirements of § 310.4(a)(2) must be refunded in full. *Morgan

Drexen*, 2016 WL 6601650, *2; *F.T.C. v. E.M.A. Nationwide, Inc.*, No. 1:12-CV-

2394, 2013 WL 4545143, *8 (N.D. Ohio Aug. 27, 2013), *aff'd*, 767 F.3d 611 (6th

Cir. 2014). Likewise, in consumer deception cases, the government is "not

required…to show any particular purchaser actually relied on or was injured by the

unlawful misrepresentations" since requiring such individualized proof "would

thwart effective prosecutions of large consumer redress actions and frustrate the

statutory goals…." *Freecom*, 401 F.3d at 1205-06. Rather, "[a] presumption of

---

[8] Ex. 2 (Dep.) 139:5-141:11.
[9] Ex. 1 (Report), pp. 28-29.

actual reliance arises once the [government] has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product." *Figgie Int'l*, 994 F.2d at 605-06; *accord Freecom*, 401 F.3d at 1206.

Expert testimony is not needed to quantify consumer redress in this case; since Defendants have customer payment records, summary testimony suffices. And Defendants have supplied some of the Count I calculations in their interrogatory responses.[10] Certainly, though, opinions about a form of relief that is not at issue would be a complete waste of time and would only create confusion. Stango's irrelevant "economic damages" testimony should therefore be excluded.

## II.     Stango is unqualified to provide any relevant testimony here.

Stango ███████████ is not an expert in damages.[11] ███████████
████████████████████████████████████████████████████████
███████████████. Having a Ph.D. in economics does not qualify him to render opinions about any topic in that large field. For example, no evidence exists that Stango is qualified to testify about factors affecting soybean prices or the auto-parts supply chain. Similarly, he has no expertise in assessing the relief due to

---

[10] Ex. 7 (Heath PC's Supplemental Response to Interrogatory No. 1 (Apr. 30, 2021)); Ex. 8 (CreditRepair.com's Supplemental Response to Interrogatory No. 1 (May 1, 2021)).
[11] Ex. 2 (Dep.) 137:6-12.

consumers on account of deceptive advertising and sales practices or TSR §

310.4(a)(2) violations.[12]

 Stango also is not (and does not claim to be) an expert on commercial credit

repair. ████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████[14] And he has neither been

involved in developing any credit scoring model, nor studying how the variety of

scoring models may yield different outcomes for the same consumer.[15]

 Because he lacks appropriate expertise, Stango bases many of his

speculative "benefits" assertions on ███████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

---

[12] *Id.* 138:18-141:11.

[13] *Id.* 93:2-94:21.

[14] *Compare* Ex. 1 (Report) ¶¶ 58-59, Table 2, *with* Beal Ex. 349 (Lexington Law Product Matrix), 351 (CreditRepair.com Product Matrix); Ex. 2 (Dep.) 73:4-82:13.

[15] Ex. 2 (Dep.) 63:14-64:13, 66:12-67:11.

[16] Ex. 1 (Report) pp. 13-14, 24 & notes 56, 61, 105.



Stango also accepts at face value ████████████████████████████

████████████████████████████████████████████

████████████ on Money.com.[21] That website includes this disclaimer: "Many

companies featured on Money advertise with us. Opinions are our own, but

compensation and in-depth research determine where and how companies may

appear. Learn more about how we make money." But Stango made no effort to

learn more; he did not investigate ████████████████████████████

---

[17] Ex. 2 (Dep.) 93:2-94:21.
[18] *Id.* 102:12-104:17, 113:5-116:15, 194:7-199:9.
[19] *Id.* 96:16-102:3.
[20] Ex. 1 (Report) pp. 15-17; Ex. 2 (Dep.) 121:18-128:8.
[21] Ex. 1 (Report) p. 16 & note 75 (citing https://money.com/best-credit-repair-companies).

9

███████████████████████████████████████████████████

████████████████████████████[22]

Stango is a behavioral economist who focuses on consumer financial decision-making.[23] He studies behavioral biases, and his work has shown, among other things, that consumers frequently underestimate the future value associated with savings compounded over time and the true interest rate associated with short-term loans.[24] Yet he failed to consider ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

████████████████ Thus, he disregards his own scholarship in order to serve Defendants' litigative interests.

FRE 702 requires the Court to consider, in its gatekeeper function, whether the expert is "proposing to testify about matters growing naturally and directly out of research [the expert has] conducted independent of the litigation," or whether the opinions were developed "expressly for purposes of testifying." FRE 702, 2000

---

[22] Ex. 2 (Dep.) 124:14-128:8. As this Court is aware, to avoid sanctions for the unauthorized practice of law, Lexington Law conceded to the South Carolina Supreme Court that "the providing of credit counseling services does not constitute the practice of law." *Lexington Law Firm v. S.C. Dep't of Consumer Affairs*, 382 S.C. 580, 588, 677 S.E.2d 591, 595 (2009).

[23] Ex. 2 (Dep.) 29:13-31:25.

[24] *Id.* 32:1-36:19, 49:11-50:10.

[25] *Id.* 192:16-193:21, 225:3-226:4.

Notes (citation omitted). Stango's irrelevant, unqualified, litigation-result-driven opinions fail this test and should be excluded.

## III. Stango's opinions are unsupported and unreliable.

The Court need not address the substance of Stango's wholly irrelevant opinions. In any event, those opinions are unsubstantiated and speculative. Stango did not ███████████████████████████████████████████ ███████,[26] so his hypotheses cannot be validated. And, although he purports to have considered ███████████████████████████████████ ████████████,[27] he gives scant attention to and grossly understates obvious harms, while offering only untested theories and rank speculation about the supposed benefits.

### A. Stango's "benefits" theories are unsupported and unreliable.

Stango neither documents nor quantifies any of the "benefits" he posits in his report and admits ████████████████████████[28]

No support exists for Stango's speculation that ████████████████ ████████████████████████ He appears unaware that Defendants' services

---

[26] Ex. 2 (Dep.) 138:18-139:4.
[27] Ex. 1 (Report) ¶ 4, p. 2.
[28] Ex. 2 (Dep.) 212:23-213:25, 221:23-222:9.

are largely automated, and assumes, ███████████████████████

██████████████████████████████████.[29]

    Stango also claims, without proof, that ████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

██████████████████████ – a crucial oversight given

the ready availability of free monitoring and consumer education services.[30]

    Additionally, like Defendants' proffered expert John DelPonti, Jr., Stango

asserts – without proof – that ████████████████████████

████████████████████████████████

████████ Stango nevertheless commits exactly the same errors █

████████████████████████████████████████████

████████ without any proof of such causation. Although he has obtained

---

[29] Ex. 1 (Report), pp. 13-15; Ex. 2 (Dep.) 100:8-104:8.
[30] Ex. 2 (Dep.) 160:16-165:4, 119:1-121:17; Dep. Ex. 482 Devaney, T., "Can I raise my credit score fast?" https://www.creditkarma.com/advice/i/quick-tips-build-credit (accessed Dec. 13, 2021).
[31] Ex. 1 (Report) pp. 28-29; *see* Plt's. Mot. to Exclude Aug. 20, 2021 Expert Report of John DelPonti, Jr. and Related Testimony (ECF 224) and Reply (ECF 272); Plt's. Mot. to Exclude Testimony of John DelPonti, Jr., Related to His Oct. 25, 2021 Supplemental and Rebuttal Expert Reports (ECF 361).

consumer credit report information for his own studies, 

.[35] Thus, "[t]here is simply too great an analytical gap between the data

and the opinion proffered" by Stango. *General Elec. Co. v. Joiner*, 522 U.S. 136,

146 (1997) (cited in FRE 702, 2000 Notes).

Stango acknowledges that

But he assumes that

This analysis is not only irrelevant, but also unsupported and

misleading. Stango conducted no

---

[32] Ex. 2 (Dep.) 65:13-66:10; 86:18-88:7.
[33] *Id.* 210:8-212:2.
[34] *Id.* 174:22-175:6, 209:1-212:2, 257:16-260:6.
[35] *Id.* 134:3-14.
[36] *Id.* 131:3-9.



**B.**   **Stango failed to consider or quantify potential harms suffered by Defendants' customers.**

Because he speculates that Defendants provided ▮▮▮▮ to unlawfully charged and deceived consumers ▮▮▮▮▮▮▮, the only harm Stango identifies is ▮▮▮▮▮▮▮▮▮

---

[37] Ex. 2 (Dep.) 83:17-19, 88:9-92:16.
[38] *Id.* 177:12-186:23.

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████

Stango's opinions fail FRE 702's requirements. This shoddy effort deviates

from the standards to which Stango must adhere in his scholarly, non-litigative

work, and thus fails the requirement he be "as careful as he would be in his regular

professional work outside his paid litigation consulting," FRE 702, 2000 Notes

(citation omitted), and "employ[] in the courtroom the same level of intellectual

rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire

Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

## IV.   Stango's "rebuttal" of the Bureau's experts is irrelevant and speculative.

Rebuttal testimony is equally subject to scrutiny under Rule 702 and

*Daubert*. *Funderburk v. S. Carolina Elec. & Gas Co.*, 395 F. Supp. 3d 695, 716

(D.S.C. 2019) (collecting cases); *see also Kumho Tire*, 526 U.S. at 147 (*Daubert*

"applies to all expert testimony"). It's not clear that Stango rebuts any actual

opinions. He asserts that neither of the Bureau's experts performed ████████

---

[39] Ex. 2 (Dep.) 215:5-224:9.
[40] *Id.* 216:16-218:6.

 analysis, but neither purported to do so. Stango focuses on Frederick's

work, but does not challenge his data analyses; ████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████.[41] As such, Stango proffers no relevant or helpful

testimony, even in rebuttal.

## CONCLUSION

For these reasons, Stango's proffered testimony is inadmissible and should

be excluded.

Dated: April 26, 2022

Respectfully submitted,

/s/ Tracy L. Hilmer

MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
J. TAYLOR MCCONKIE
*Enforcement Attorneys*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov

---

[41] Ex. 2 (Dep.) 242:9-255:8.

tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov
taylor.mcconkie@cfpb.gov

*Attorneys for Plaintiff Bureau of*
*Consumer Financial Protection*

## CERTIFICATE OF COMPLIANCE WITH THE WORD-COUNT LIMIT

I certify that the above motion consists of 3,095 words (excluding the face sheet, signature block, table of contents, index, and exhibits), according to the word count function of Microsoft Word, in compliance with the word-count limit of 3,100 words set by DUCivR 7-1(a)(4)(D).

Dated: April 26, 2022                    /s/ Tracy L. Hilmer

                                         Tracy L. Hilmer
                                         *Enforcement Attorney*
                                         Bureau of Consumer Financial Protection
                                         1700 G Street, NW
                                         Washington, DC 20552
                                         Telephone: (202) 435-7459
                                         tracy.hilmer@cfpb.gov

**Index of Exhibits to the Bureau's Motion to Exclude Testimony
of Victor Stango, Ph.D**

Ex. 1:          Expert Report of Victor Stango (Oct. 25, 2021) and
                corrections (Dec. 9, 2021) (filed under seal)

Ex. 2:          Transcript of Dec. 14, 2021 Deposition of Victor Stango
                DelPonti, Jr. (redacted in part; filed under seal)

Ex. 3:          Lexington Law Customer Totals (Count I) (filed under seal)

Ex. 4:          CreditRepair.com Customer Totals (Count I) (filed under
                seal)

Ex. 5:          Lexington Law Payments from Hotswapped Customers
                (Counts II-V) (filed under seal)

Ex. 6:          CreditRepair.com Payments from Hotswapped Customers
                (Counts II-V) (filed under seal)

Ex. 7:          Heath PC's Supplemental Response to Interrogatory No. 1
                (Apr. 30, 2021) (filed under seal)

Ex. 8:          CreditRepair.com's Supplemental Response to Interrogatory
                No. 1 (May 1, 2021) (filed under seal)

Beal Dep.
Ex. 349:        Lexington Law Service Feature Matrix (filed under seal)

Beal Dep.
Ex. 351:        CreditRepair.com Service Feature Matrix (filed under seal)

Dep. Ex. 482    Devaney, T., "Can I raise my credit score fast?"
                https://www.creditkarma.com/advice/i/quick-tips-build-
                credit (accessed Dec. 13, 2021) (screenshot)