Karra J. Porter
Christensen & Jensen, P.C.
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
(801) 323-5000
karra.porter@chrisjen.com

Thomas M. Hefferon
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000
thefferon@goodwinlaw.com
(additional counsel listed on signature page)

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>Plaintiff,<br><br>v.<br><br>PROGREXION MARKETING, INC.; PGX HOLDINGS, INC.; PROGREXION TELESERVICES, INC.; EFOLKS, LLC; CREDITREPAIR.COM, INC.; and JOHN C. HEATH, ATTORNEY AT LAW, PLLC, D/B/A/ LEXINGTON LAW,<br><br>Defendants. | Case No. 2:19-CV-00298-BSJ<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF DR. ARNOLD BARNETT**<br><br>**REDACTED VERSION** |

Karra J. Porter
Christensen & Jensen, P.C.
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
(801) 323-5000
karra.porter@chrisjen.com

Thomas M. Hefferon
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000
thefferon@goodwinlaw.com
(additional counsel listed on signature page)

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>Plaintiff,<br><br>v.<br><br>PROGREXION MARKETING, INC.; PGX HOLDINGS, INC.; PROGREXION TELESERVICES, INC.; EFOLKS, LLC; CREDITREPAIR.COM, INC.; and JOHN C. HEATH, ATTORNEY AT LAW, PLLC, D/B/A/ LEXINGTON LAW,<br><br>Defendants. | Case No. 2:19-CV-00298-BSJ<br><br><br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF DR. ARNOLD BARNETT** |

John C. Heath, P.C., PGX Holdings, Inc., Progrexion Marketing, Inc., Progrexion Teleservices, Inc., CreditRepair.com, Inc., and eFolks, LLC ("Defendants") submit this opposition to Plaintiff's Motion to Exclude the Testimony of Dr. Arnold Barnett (ECF 371, the "Motion"). In his Corrected Expert Report (the "Report"), Dr. Barnett responds to the statistical aspects of the survey design and implementation used by Dr. Shane Frederick, a purported expert for the Consumer Financial Protection Bureau (the "Bureau"). In an attempt to distract from the clear shortcomings of Dr. Frederick's analysis and opinions, the Motion elides a basic fact: as the survey designer, it was *Dr. Frederick's* obligation to construct and demonstrate that his survey could reliably be extrapolated to a broader population. Dr. Barnett's rebuttal testimony identifies that core flaw. As a rebuttal expert, it is simply not Dr. Barnett's responsibility to do the work that Dr. Frederick should have done to construct a valid sample and survey.

Dr. Barnett is a renowned statistician and leader in the field; Dr. Frederick, by his own admission, is not. *See* Ex. 1, Frederick Tr., 53:2-8. The Bureau nonetheless asserts that the testimony offered by Dr. Barnett critiquing Dr. Frederick's statistical analysis and calling out the methodological flaws and faulty conclusions Dr. Frederick draws from his survey is an "elaborate display of smoke and mirrors." Mot. 1. But the Bureau's inapt attempt to exclude Dr. Barnett's sound testimony cannot mask that it is Dr. Frederick who offers testimony untethered to fundamental and basic tenets of survey design and implementation.

The Bureau seeks to exclude two of Dr. Barnett's rebuttal opinions. First, the Bureau argues that Dr. Barnett lacks support for his testimony that Dr. Frederick's survey design is fatally flawed. But the Bureau chooses not to engage wholesale with this aspect of Dr. Barnett's opinion (leaving much of it unchallenged), and instead picks at three discrete aspects of his opinion. The Bureau's

1

attacks suffer from the same foundational problem—each concerns obligations that Dr. Frederick did not undertake to demonstrate that the respondents in his survey ("Respondents") are representative of the population of all hotswapped Lexington Law clients (the "Population"). Most damning to its argument, the Bureau's own cited authorities on sampling demonstrate that Dr. Frederick committed serious errors, which comports with Dr. Barnett's opinions. The Bureau's attacks on Dr. Barnett's opinions are flawed for additional reasons, including because they misrepresent Dr. Frederick's survey and Dr. Barnett's testimony. Second, the Bureau attacks Dr. Barnett's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, contending instead that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Bureau is simply wrong: as demonstrated by numerous scientific textbooks, Dr. Barnett's approach is consistent with sound statistical principles, and is not a basis for exclusion.

I. **Dr. Barnett's Opinion Regarding the Survey's Fatal Flaws Is Admissible.**

As a rebuttal expert, Dr. Barnett need not "do more than point out flaws in another expert's work." *U.S. Magnesium, LLC v. ATI Titanium, LLC*, 2021 WL 615412, at *8 n.39 (D. Utah Feb. 17, 2021). The Report did just that in identifying fatal flaws in Dr. Frederick's survey. Ignoring this, the Bureau demands exclusion of Dr. Barnett's opinion on the basis that he did not perform Dr. Frederick's work for him. This Court should not entertain these legally vacuous arguments.

A. **Dr. Barnett Need Not Prove that a Properly Conducted Survey Would Reach Different Results.**

Dr. Barnett opines that Dr. Frederick failed to construct a scientifically reliable survey using established methodologies. CFPB-Ex. 1 § VI. He also shows that as a result, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Importantly, the

2

Bureau does not dispute this conclusion at all; nor does it take issue with *any* aspect of Dr. Barnett's █████████████████████████. Instead, the Bureau argues that Dr. Barnett has not established that ███████████████████████████████████████████████

██████████ Mot. 5-6. This argument has no merit for multiple reasons.

The Bureau concedes that "[e]xpert testimony about a survey is inadmissible unless the expert shows that the survey was conducted according to generally accepted survey principles." Mot. 8 (citing *Harolds Stores v. Dillard Dep't Stores*, 82 F.3d 1533, 1544 (10th Cir. 1996)). For Dr. Frederick to properly draw any conclusions about the results of his survey, Dr. Frederick first needed to demonstrate that he constructed the survey according to those accepted principles and methods. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 2010 WL 5186393, at *5 (D. Utah Dec. 15, 2010); CFPB-Ex. 2, 137:4-6. Dr. Frederick did not do so. Dr. Frederick designed his survey with no plan to ensure ███████████████████████████████████████████████ Accordingly, Dr. Barnett opines that Dr. Frederick's survey ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████ CFPB-Ex. 1 § VI. Thus, the Bureau's criticism that Dr. Barnett has not shown the bias mattered in "relevant" ways (Mot. 4-6) misunderstands Dr. Frederick's failure, which leaves ███████████████████████████████████████ It is undoubtedly "relevant" whether Dr. Frederick's survey meets this basic threshold of survey reliability.

The Bureau's ***own cited authority*** supports Dr. Barnett in his observation that it was Dr. Frederick's duty to show ████████████████████████: "It is incumbent on the expert presenting the survey results to analyze the level and sources of nonresponse, and to assess how that

3

nonresponse is likely to have affected the results." Shari Diamond, "Reference Guide on Survey Research," in *Reference Manual on Scientific Evidence 383*, Fed. Judicial Ctr. (3rd ed., 2011). Dr. Frederick could have eliminated non-response bias altogether by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ CFPB-Ex. 2, 37:14-22; 40:9-41:12; 150:22-153:12. But Dr. Frederick did no such thing, nor did he confirm that the ▮▮▮▮▮▮▮▮▮▮ *See* CFPB-Ex. 1 ¶¶ 23-30. In this regard, Dr. Barnett's testimony is highly relevant. *See generally* Defendants' Motion to Exclude Testimony of Dr. Frederick at 4-6 (ECF 366) (citing cases excluding surveys for the very same methodological errors in Dr. Frederick's survey).

Presumably because Dr. Barnett's assessment of Dr. Frederick's errors is unassailable, the Bureau resorts to attempting to rewrite Dr. Frederick's report as pertaining only to "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Mot. 6. Such trickery gets the Bureau nowhere—Dr. Frederick states that the purpose of his survey was ▮▮▮▮▮▮▮▮▮▮ broadly, and he drew many far-reaching conclusions from his survey unrelated to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and others. Barnett Dep. Ex. 445 at 2. If Dr. Frederick's report intended to answer the singular issue of ▮▮▮▮▮▮▮▮▮▮▮▮ (as the Bureau now attempts to rewrite it) (Mot. 1), then Dr. Frederick's survey design was inconsistent with its stated purpose to ▮▮▮▮▮▮ and renders the survey unreliable for this additional reason.

Next, Dr. Barnett identifies that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

███████████████████████████████████████████████████████

███████████████████.¹ CFPB-Ex. 1 ¶ 12. The Bureau criticizes Dr. Barnett for purportedly failing to investigate the ██████████████████████ ████████████████████████████ and also falsely claims Dr. Barnett testified that █████ ████████████████████████████████████████████ Mot. 6-7. As he testified, Dr. Barnett did offer ██████████████████████████ ███████████████████████████████████ and that it was Dr. Frederick's responsibility to have conducted such an analysis in the first instance to establish definitively whether ██████████████████████. CFPB-Ex. 2, 61:7-63:14; 64:15-65:9; 65:18-67:17; 68:20-69:9; *see also 1-800 Contacts*, 2010 WL 5186393, at *5. For example, Dr. Barnett testified that █████████████████████████████████████ ██████████████████████████████████████. CFPB-Ex. 2, 47:25-48:9; 48:22:49:12. As Dr. Barnett pointed out, the ████████████████████████ ███████████████████████████ CFPB-Ex. 1 ¶¶ 16-22; CFPB-Ex. 2, 143:8-144:7. Dr. Barnett also identified that █████████████████ ███████████████████████████████████████████████ ████████████.² Rep., 10-11. The Bureau's critique that Barnett did not prove that the survey

---

¹ In a footnote (Mot. 4, n.2), the Bureau weakly attempts to discount Dr. Barnett's showing that the ████████████████████████████████████████████ ███████████████████████████████ could have been done, as Dr. Frederick attempted to do only in his rebuttal. But the Bureau stops short of saying Dr. Barnett's analysis is wrong or flawed (because it is not), and as Dr. Barnett explained, there are good reasons to question Dr. Frederick's post hoc exercise. CFPB-Ex. 2, 95:10-104:5.
² The Bureau also protests that Dr. Barnett is "unqualified to opine" about the fact that █████ ████████████████████████████████████████████████ ████████████████████████████

5

▇▇▇▇ is not grounds to exclude the testimony, particularly when there is no evidence from Dr. Frederick to the contrary. *See* CFPB-Ex. 2, 61:21-62:8; *U.S. Magnesium*, 2021 WL 615412, at *8 n.39 (rebuttal experts need not "do more than point out flaws in another expert's work"); *In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007) (rebuttal experts have "no burden to produce models or methods of their own"). This critique highlights the fundamental weaknesses of Dr. Frederick's opinions.

### B. Dr. Barnett's Conclusions Are Reliable and Should Not Be Excluded.

The Bureau next attacks Dr. Barnett's conclusions as unreliable because he did not conduct a customer satisfaction survey himself and instead relied upon data points of such surveys conducted by Lexington Law. Mot. 7-8. But this is just another demand that Dr. Barnett conduct a competing analysis, which the Bureau itself acknowledges is unnecessary. *Id.* at 5. Although Dr. Frederick postulates that survey respondents had "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇," Barnett Dep. Ex. 445 at 18, the available data supports the contrary conclusion. *Id.* at 14. Dr. Barnett notes that, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" *Id.* For example, Dr. Barnett notes that survey respondents "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" *Id.*

The Bureau counters that, in support of this part of his opinion, Dr. Barnett cannot rely on

---

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Mot. 6. It is nonsense to suggest that Dr. Barnett cannot speak to whether ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. CFPB-Ex. 1 ¶ 27. By the Bureau's faulty logic, Dr. Frederick should be barred from testifying about any credit repair or hotswaps because he testified he was unfamiliar with each. Ex. 1, 53:2-10, 81:18-82:8, 86:14-90:12.

one particular piece of data, ███████████████████████████, because Dr. Barnett himself did not actually conduct the survey. Again, the Bureau misses the mark. Dr. Barnett's opinion in the first instance is that ████████████████████████████████████████████████████████████████████████, but they did not and Dr. Frederick did not conduct the necessary analysis to show the difference is irrelevant in order to permit him to extrapolate. As the Bureau's own cited case points out, a survey is subject to exclusion if "members of the relevant universe are unrepresented." *Hodgdon Powder Co. v. Alliant Techsystems, Inc.*, 512 F. Supp. 2d 1178, 1182 (D. Kan. 2007); *see also* Fed. R. Evid. 702, Advisory Comm. Notes (2000) (reliability may be determined by examining "whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion"). Additionally, nothing in the evidentiary record supports that the ███████████████ ███████ are unreliable and so should be ignored. The ███████████████ are simply customer satisfaction surveys widely accepted within the business community as reliable and meaningful data points.[3]

Last, the Bureau's assertion that Dr. Barnett "misleadingly fail[ed]" to explain ███████ ████████████████████████████ is absurd. Mot. 8, n.4. ███████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ CFPB-Ex. 1 ¶¶ 13-14. Dr. Frederick offers no explanation that this difference does not matter. Dr. Barnett stated in his report that this indicates that Dr. Frederick's respondents ███████

---

[3] Frederick F. Reichheld, *The One Number You Need to Grow*, HARV. BUS. REV. (Dec. 2003), available at https://hbr.org/2003/12/the-one-number-you-need-to-grow.

7

███████████████████████████████████████████████" *Id.* ¶ 14, further evidence that the survey respondents were not representative.

### C. Dr. Barnett's Opinions Regarding Survey Coverage Are Reliable.

The Bureau's final attack on the reliability of Dr. Barnett's testimony is that he "speculates" that Dr. Frederick's survey design was flawed because ████████████████████████ ████████████████████████████████████. Mot. 9. This attack is specious.

Dr. Barnett explains in his Report that Dr. Frederick "████████████████████ ██████████████████████████████████████████████████████," which happened because "██████████████████████████████████████████████ ████████" CFPB-Ex. 1 ¶ 14. Dr. Barnett further opined that a "critical issue" when designing a survey is the ███████████████████████████████████████████████████ ██████████████████████████████████████. *Id.* ¶ 13. ████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████ *Id.* Dr. Barnett's critique on this subject is that Dr. Frederick needed to account for ████████████████████████ █████████████████ Dr. Frederick failed to do so, and his failure invites the possibility of significant and relevant statistical differences. *Id.* ¶ 15. That is an observation (not speculation) by Dr. Barnett of a flaw in Dr. Frederick's methodology; a flaw recognized by the Bureau's own cited authorities. *Reference Guide on Surv. Rsch.* at 378 (identifying as a survey error when "[t]he sampling frame excludes part of the target population, that is, it is underinclusive….").

Furthermore, the Bureau's argument mischaracterizes Dr. Barnett's opinion—he does *not* assume or conclude that "████████████████████████████████████████████████

8

███████████████████████████████████████████████████.” Mot. 11. Instead, Dr. Barnett's opinion is that, ███████████████████████████████████████

███████████████████████████████████████████████████. *See* CFPB-Ex. 1 ¶¶ 14-15; CFPB-Ex. 2, 121:25-122:7 █████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████). Dr. Barnett's testimony on ████████

████████████ should not be excluded.

## II. Dr. Barnett's Opinions Regarding the Survey's Margin of Error Are Admissible.

The Bureau claims that Dr. Barnett "misleadingly" attacks Dr. Frederick for drawing conclusions from ██████████████████████████████████████

███████ and for claiming that Dr. Frederick's survey results are subject to ████████████ Mot. 12 (citing CFPB-Ex. 1 ¶¶ 10, 31-35). This attack, like the others, falls flat.

*First*, Dr. Frederick concludes in his Report (and the Bureau reasserts in its Motion) that

███████████████████████████████████████████████████

████████████ Barnett Dep. Ex. 445 at 19; Mot. 12. This assertion is unsubstantiated. The flaws in the survey do not permit reliable conclusions based on extrapolation (CFPB-Ex. 1 ¶ 35), and Dr. Frederick offers no baseline against which to judge the success of ████████

████████████████████████—Dr. Frederick's conclusion is his own supposition not based on any empirical evidence on the rent-to-own industry or otherwise.

*Second*, Dr. Barnett clearly explains the issue here ████████████████████

█████████████████████████████████████████████████████

9

████████████████████████████████████████████

████████████████████████████████████. Barnett Dep. Ex. 445 at 3 (cited by CFPB-Ex. 1 ¶ 34). Dr. Barnett determined that this outcome ████████████

████████████████████████████████████████████

████████████████ CFPB-Ex. 1 ¶ 15; CFPB-Ex. 2, 136:4-5, 137:13-17. Dr. Barnett then concluded that the opinion presented by Dr. Frederick on this topic ██████████████

██████████████████████████ CFPB-Ex. 1 ¶¶ 33, 35. The Bureau does not contest this conclusion, but proclaims ████████████████████████

████████████████████████████████████████████

████████████████████████████████ Mot. 12. But the Bureau offers no support for its position that ██████████████████████████████

██████████████████████ Its citation to the *Reference Guide on Statistics* is of no help in that regard. Rather, as Dr. Barnett opines, ████████████████████

████████████████████████████ CFPB-Ex. 1 ¶ 32; *see* Stephen K. Thompson, *Sampling*, 62-64 (Wiley 2012), (when an analysis focuses on a subset of the sample, "[t]he proportion to be estimated is a proportion not of the whole population but of a subpopulation"). Dr. Barnett's methodology is sound, and the Bureau's criticism is not.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion to Exclude the Testimony of Dr. Arnold Barnett.

10

Dated: May 10, 2022					Respectfully submitted,


/s/ *William J. Harrington*
Thomas M. Hefferon*
W. Kyle Tayman*
Christina L. Hennecken*
Virginia Selden*
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000
thefferon@goodwinlaw.com
ktayman@goodwinlaw.com
chennecken@goodwinlaw.com
vmccorkle@goodwinlaw.com

William J. Harrington*
Goodwin Procter LLP
620 Eighth Avenue
New York, NY 10018
(212) 459-7140
wharrington@goodwinlaw.com

Courtney L. Hayden*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
chayden@goodwinlaw.com

Edward J. Bennett*
Edward C. Barnidge*
Suzanne Salgado*
Shauna M. Kramer*
Emma J. Nino*
Daniel Whiteley*
Paul Hoversten*
Atticus DeProspo*
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000
ebennett@wc.com

11

ebarnidge@wc.com
ssalgado@wc.com
skramer@wc.com
enino@wc.com
dwhiteley@wc.com
phoversten@wc.com
adeprospo@wc.com

Karra J. Porter
Christensen & Jensen
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
(801) 323-5000
karra.porter@chrisjen.com

*Attorneys for Defendants*
(\*admitted *pro hac vice*)

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2022, I caused a true and correct copy of the foregoing to be served upon counsel of record as of this date by electronic filing.

/s/ *William J. Harrington*
William J. Harrington