MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
J. TAYLOR MCCONKIE
(202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov
taylor.mcconkie@cfpb.gov
1700 G Street, NW
Washington, DC 20552
*Attorneys for Plaintiff Bureau of*
*Consumer Financial Protection*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>*Plaintiff*,<br><br>v.<br><br>PROGREXION MARKETING, INC., *et al.*, | Case No. 2:19-cv-00298-BSJ |

**PLAINTIFF'S MOTION TO AMEND THE COMPLAINT TO CLARIFY THE SCOPE OF THE DECEPTION COUNTS**

## Table of Contents

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................3

    A.    The Bureau's Complaint ..............................................................................3

    B.    The Parties' Conduct Relating to Relevant Hotswap Partners ....................5

ARGUMENT .........................................................................................................................8

    A.    Fed. R. Civ. P. 15(a) Liberally Permits Amendments to the Complaint ......8

    B.    The Court Should Allow Amendment of the Bureau's Complaint to Clarify that the Deception Counts Encompass Conduct By All Five Relevant Hotswap Partners ........................................................................9

        1.    The Progrexion Defendants are not prejudiced in the slightest .................10

        2.    The proposed amendment is not the result of undue delay ........................12

        3.    The remaining factors identified in Foman weigh in favor of allowing the proposed amendment .................................................................................14

CONCLUSION ....................................................................................................................15

i

Plaintiff Bureau of Consumer Financial Protection ("Bureau") moves to amend the Complaint (ECF No. 2) to clarify that Counts II through V (the "Deception Counts") include conduct by the five Relevant Hotswap Partners, not just HSP1.[1] In accordance with DUCivR 15-1, the proposed amended complaint is attached as Exhibit 1 and a redlined version is attached as Exhibit 2.

## INTRODUCTION

The question presented by this motion is straightforward: Should the Court grant leave for the Bureau to amend its Complaint for the purposes of clarifying the scope of the Deception Counts and conforming the Complaint to the case the parties have litigated for approximately three years?

The answer is equally straightforward: Because the proposed amendment does not inject new theories, new claims, or new parties, nor does it prejudice the Progrexion Defendants[2] in any way, and because Rule 15 liberally permits amendments of this kind, the Court should grant leave to amend.

The Bureau files this motion to address the Court's comments during the pretrial hearing on June 30, 2022. In discussing the contested issues of law relating

---

[1] HSP1 is The H.O.P.E. Program (HOPE), one of the five Relevant Hotswap Partners.
[2] The Progrexion Defendants are PGX Holdings, Inc., Progrexion Marketing, Inc., Progrexion Teleservices, Inc., CreditRepair.com, Inc., and eFolks, LLC.

1

to Count IV of the Bureau's Complaint, the Court quoted paragraph 155 of the Complaint, which states that "[a]t least one of the Progrexion Defendants' affiliates, HSP1, was . . . a 'covered person'" under the CFPA. *See* 6/30/22 Tr. at 109:10-23 (attached as Exh. 3). The Court observed that paragraph 155 refers by name to only one Hotswap, HSP1. *Id*. at 109:24-25. When counsel for the Defendants pointed out that HSP1 is "one specific Hotswap affiliate of the five Hotswap affiliates that are in the case live for consideration," the Court responded: "let's confine it to what the complaint is." *Id*. at 110:7-111:1.

Later, the Bureau's counsel attempted to clarify the record by pointing out that paragraph 155 is not limited to HSP1. "The meaning of this allegation," counsel said, "is to say that *at least one* . . . of the Hotswap partners had been substantially assisted, but our allegation at this time, Your Honor, is that all five of the Relevant Hotswap Partners were substantially assisted[.]" *Id*. at 130:13-18 (emphasis added). The Court replied, "Nobody has filed a motion to change the pleading." *Id*. at 130:23-24. The Bureau's counsel made an oral motion, but the Court declined to entertain it. *Id*. at 131:2-4.

The Bureau thus files this motion to address the Court's comments and to clarify the Bureau's longstanding intent and the parties' longstanding understanding that the Deception Counts involve conduct by each of the five

2

Relevant Hotswap Partners, not just HSP1.[3] Not only is this plain from Complaint, but the parties' conduct through fact discovery, expert disclosures and discovery, and dispositive motions demonstrate that both sides have understood it to be the case.

Moreover, although the Court's comments during the pretrial hearing focused on Count IV, out of an abundance of caution, the Bureau's proposed amendment makes similar clarifications to the other Deception Counts, Counts II, III, and V.

## BACKGROUND

**A. The Bureau's Complaint**

The Bureau's Complaint alleges that the Progrexion Defendants, through a network of marketing affiliates known as Hotswap Partners, used deceptive, bait advertising to generate referrals for credit-repair services. *See, e.g.*, Compl. ¶ 3. In describing the deception, the Complaint highlighted conduct by one Hotswap Partner, HSP1, to illustrate the ways in which Defendants' Hotswap Partners misrepresented their services. *See, e.g.*, *id*. ¶¶ 74-85. But the Complaint's allegations are not limited to HSP1, and in numerous places, the Complaint

---

[3] The five Relevant Hotswap Partners are HOPE (identified as HSP1 in the Complaint), OLP.com, Ascent Mortgage Resource Group, Easyhomeownership.net, and Rent2Own.House. *See* ECF No. 435 at 3 n.1 (6/22/22 joint proposed pretrial order).

includes allegations about other Hotswap Partners. *See, e.g., id.* ¶¶ 32-70, 72, 90-93, 96, 98, 105-08.

Counts II through V comprise the Deception Counts, none of which are limited to HSP1. For example:

- Counts II and III allege that the Progrexion Defendants, "directly or through at least one affiliate," engaged in deceptive conduct under the Consumer Financial Protection Act (CFPA) and made false or misleading statements under the Telemarketing Sales Rule (TSR). *See* Compl. ¶¶ 138, 147. Counts II and III do not refer to HSP1 or any other Hotswap Partner by name, but, rather, allege deception "by at least one affiliate." *Id.* ¶¶ 141, 150.

- Count IV alleges that the Progrexion Defendants "provided substantial assistance to a covered person or service provider" in violation of the CFPA. *Id.* ¶¶ 153-160. The Bureau alleges that "[a]t least one of the Progrexion Defendants' affiliates, HSP1, was . . . a 'covered person'" as defined by the CFPA, and that "[a]t least one of the Progrexion Defendants' affiliates, HSP1, was also . . . a 'service provider'" as defined by the CFPA. *Id.* ¶¶ 155-56. The Bureau alleges further that "at least one affiliate, HSP1, engaged in deceptive acts or practices" in

4

violation of the CFPA and that the Progrexion Defendants substantially assisted the alleged deception. *Id*. ¶¶ 157-58.

- Count V alleges that the Progrexion Defendants substantially assisted violations of the TSR. *Id*. ¶¶ 161-67. It alleges that "[a]t least one of the Progrexion Defendants' affiliates, HSP1, was . . . a 'telemarketer,'" that "at least one affiliate, HSP1, made false or misleading statements," and that the "Progrexion Defendants provided substantial assistance or support to at least one affiliate, HSP1" in violation of the TSR. *Id*. ¶¶ 163-66.

**B. The Parties' Conduct Relating to Relevant Hotswap Partners**

In the Bureau's first set of document requests, the Bureau sought a range of documents relating to "any" or "all" or Hotswap Partners. *See* ECF No. 50-2, at Requests 1-24. When the Progrexion Defendants challenged the scope of the requests, the Bureau moved to compel. *See* ECF No. 50. Magistrate Judge Pead heard the dispute and ruled that the Bureau "is not foreclosed from propounding requests related to hotswap partners other than HSP1 in the future, but first must provide some basis to believe the requests are likely to yield discoverable information." ECF 70, p. 6. When the parties again could not agree over the scope

of discovery, the Court ordered the Progrexion Defendants to produce documents related to seven Hotswap Partners.[4] ECF No. 92.

Since the Court's discovery order, the parties' fact discovery, expert disclosures and discovery, and motion practice has focused on all the Relevant Hotswap Partners, not just HSP1. For example:

- The Progrexion Defendants produced thousands of documents relating to the Relevant Hotswap Partners, many of which were used as exhibits in depositions and will be used at trial.

- The parties' experts focused on the Relevant Hotswap Partners. For example, Plaintiff's expert Dr. Shane Frederick conducted a survey of consumers hotswapped from the Relevant Hotswap Partners to Progrexion. ECF No. 362-2. And Dr. Stephen Mott, a Progrexion rebuttal expert, examined data from the Relevant Hotswap Partners. ECF No. 368-1 at ¶ 64.

- Regarding motions, the Progrexion Defendants' motion for summary judgment on Counts II through V defined the "Relevant Hotswaps" to

---

[4] Discovery revealed that two of the entities, Ascent and Lead Virtue, were actually the same Hotswap Partner, so they are counted here as one Relevant Hotswap Partner. The Bureau decided not to pursue relief related to the final entity, Ownerwiz. *See* ECF No. 438 p. 3 n.1.

include all the Relevant Hotswap Partners (plus one that was subsequently dropped). ECF No. 288 at 3. The Progrexion Defendants argued they were entitled to summary judgment for a variety of reasons, but they did not dispute that the Bureau's deception claims reached beyond HSP1. For example, the Progrexion Defendants acknowledged that "[t]he Bureau contends that the Relevant Hotswaps engaged in providing a 'consumer financial product or service'" and thus are "covered persons" under the CFPA. *Id*. at 33 (citing Complaint ¶ 155). Although the Progrexion Defendants argued that Ascent, Easyhomeownership, and Rent2Own.house did not fit the legal definition of a "covered person," they did not dispute that the remaining two Relevant Hotswaps—HOPE and OLP—were "covered persons." *Id*. Following a hearing, the Court denied the Progrexion Defendants' motion for summary judgment. *See* ECF No. 403.

## ARGUMENT

### A. Fed. R. Civ. P. 15(a) Liberally Permits Amendments to the Complaint

Federal Rule of Civil Procedure 15 addresses amendments to pleadings.[5] After the 21-day period following service of a pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule further instructs that "[t]he court should freely give leave when justice so requires." *Id*.

Rule 15 embodies a policy that disputes should be decided on the merits, not technicalities. *See, e.g., Foman v. Davis*, 371 U.S. 178, 181-82 (1962) (noting it is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities"). Thus, "[d]enial of leave to amend is disfavored; and a district judge should grant leave absent a substantial reason to deny," because "[a] liberal, pro-amendment ethos

---

[5] The Tenth Circuit has held that "[a] party seeking leave to amend after a scheduling order deadline must satisfy both the Rule 16(b) and Rule 15(a) standards." *Hamric v. Wilderness Expeditions, Inc*., 6 F.4th 1108, 1118 (10th Cir. 2021). Here, however, the Bureau's proposed amendment would not alter a prior scheduling order. The scheduling order's deadline to amend the pleadings was left blank, noting only that "Counsel must still comply with the requirements of Fed. R. Civ. P. 15(a)." ECF No. 73 at 2 & n.1. None of the amended scheduling orders included a deadline to amend the pleadings. *See* ECF Nos. 115, 138, 339. Moreover, even if the proposed amendment was judged against the "good cause" standard in Rule 16(b), the reasons outlined in this motion establish good cause.

dominates the intent and judicial construction of Rule 15(a)(2)." 3 Moore's Federal Practice - Civil § 15.14 (2022).

## B. The Court Should Allow Amendment of the Bureau's Complaint to Clarify that the Deception Counts Encompass Conduct By All Five Relevant Hotswap Partners

Rule 15 allows pleadings to be amended at any stage of the litigation. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) ("Rule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the action."). In ruling on motions to amend, courts are guided by the considerations articulated in *Foman*, where the Supreme Court stated as follows:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182; *see also Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) ("Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.").

As applied here, the relevant factors strongly weigh in favor of permitting the Bureau to amend its complaint.

9

### 1. *The Progrexion Defendants are not prejudiced in the slightest*

In considering whether to grant leave to amend under Rule 15(a)(2), prejudice to the non-moving party is the "most important" factor. *Minter*, 451 F.3d at 1207. "Rule 15 . . . was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." *United States v. Hougham*, 364 U.S. 310, 316 (1960); *see also Sinclair Wyoming Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 777 (10th Cir. 2021) ("When a district court decides whether to grant leave to amend under Rule 15(a)(2), it focuses principally on prejudice.").

Courts typically find prejudice only when the amendment unfairly affects the defendants "in terms of preparing their defense to the amendment." *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Minter*, 451 F.3d at 1208 (citations omitted); *see also Wade v. Gaither*, 623 F. Supp. 2d 1277, 1285 (D. Utah 2009) (prejudice rarely occurs "where the defendant already generally has notice of the claims and amendment merely corrects deficiencies rather than adds wholly new claims or factual circumstances").

Here, the Progrexion Defendants are not prejudiced through the proposed amendments. The Bureau is not seeking to add new parties, inject new factual or

10

legal theories, or add amendments that would require additional discovery. To the contrary, the proposed amendments merely clarify that the Bureau's deception claims extend beyond HSP1 to include all the Relevant Hotswap Partners, which is precisely the way this case has been litigated from the beginning.

The Complaint repeatedly refers to multiple Hotswap Partners, and the allegations in the Deception Counts are not limited to HSP1. *See, e.g.*, Compl. ¶ 155 ("*[a]t least one of the Progrexion Defendants' affiliates*, HSP1, was . . . a 'covered person'" as defined by the CFPA). During discovery, the parties sought and produced documents relating to all the Relevant Hotswap Partners. Numerous experts analyzed and drafted reports incorporating data about all the Relevant Hotswap Partners. And when it came time for dispositive motions, Progrexion's summary judgment motion encompassed all the Relevant Hotswap Partners. In short, the proposed amendments merely conform the Complaint to the parties' understanding of the claims. It adds nothing new.

Numerous cases hold that an amendment to the pleadings should be permitted when the non-moving party suffers no prejudice. *See, e.g.*, *Sinclair,* 989 F.3d at 778-79 (10th Cir. 2021) (permitting party to amend answer to include indemnity counterclaim because "circumstantial evidence" showed that the party had always pursued the counterclaim); *Bylin v. Billings*, 568 F.3d 1224, 1229-31

11

(10th Cir. 2009) (where the defendant sought leave to amend its answer at the final pretrial conference to add a statute of limitations defense, the court concluded that "the defendants' late amendment did not unduly prejudice the [plaintiff], and therefore the district court did not abuse its discretion in allowing the amendment"); *Wade*, 623 F. Supp. 2d at 1285 (allowing amendment to complaint where the amendment would "serve only to clarify the circumstances surrounding the alleged fraud"). The same result should occur here.

### 2. *The proposed amendment is not the result of undue delay*

In *Foman*, the Supreme Court listed "undue delay" as a possible justification for denying a motion to amend. 371 U.S. at 182. Although "undue delay" may foreclose an amendment, "[e]mphasis is on the adjective: Lateness does not of itself justify the denial of the amendment." *Minter*, 451 F.3d at 1205 (quotation omitted). Rather, the Tenth Circuit "focuses primarily on the *reasons* for the delay." *Id*. at 1206 (emphasis added). Undue delay occurs where the delayed amendment flows from a party's gamesmanship or dilatory conduct. As the Tenth Circuit noted in its discussion of the "undue delay" standard:

> Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint "a moving target," *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998), to "salvage a lost case by untimely suggestion of new theories of recovery," *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th

12

> Cir. 2001), to present "theories seriatim" in an effort to avoid dismissal, *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994), or to "knowingly delay[ ] raising [an] issue until the 'eve of trial,'" *Walters v. Monarch Life Ins. Co.*, 57 F.3d 899, 903 (10th Cir. 1995).

*Minter*, 451 F.3d at 1205.

In this case, notwithstanding the late stage of the litigation, nothing in the Bureau's conduct suggests undue delay. In *Minter*, the plaintiff sought leave to amend its complaint to add a product liability claim just three weeks before trial. 451 F.3d at 1206. The district court struck the amended claim from the pretrial order, but the Tenth Circuit reversed. The plaintiff delayed his filing, the court noted, "because he believed it was already fairly encompassed by his pleadings," and the plaintiff's "assumption regarding the scope of his original pleading constitutes an excusable cause for the delay." *Id*. at 1207. Thus, notwithstanding the late stage of the proceeding, the plaintiff's amended claim "cannot be considered 'untimely' or 'unduly delayed.'" *Id*.

The same is true here. Just as in *Minter*, the Bureau's proposed amendment is already fairly encompassed by the pleadings. Counts II and III allege deception "directly or through *at least one affiliate*," see Compl. ¶¶ 138, 147, and Counts IV and V allege that "*[a]t least one of the Progrexion Defendants' affiliates*, HSP1," met the definition of "covered persons," "service providers," and engaged in

13

deceptive acts. *Id*. ¶¶ 155-66. In light of the Complaint's allegations and the litigation history of this case, the Bureau had no reason to believe an amended complaint was necessary. The proposed amendments merely clarify and make explicit what the parties already understood. Not until the Court's comments at the June 30, 2022, pretrial hearing did the Bureau realize that a clarifying amendment may be helpful.

### 3. The remaining factors identified in Foman weigh in favor of allowing the proposed amendment

The other factors in *Foman*—bad faith, repeated failure to cure, or futility—all support the proposed amendment.

As to bad faith, there is no hint of bad faith or dilatory motive on the Bureau's part; rather, the Bureau has moved expeditiously to propose clarifying amendments, without delay, after receiving the Court's comments at the June 30 pretrial hearing.

As to repeated failure to cure deficiencies by amendments previously allowed, this factor has no bearing here because this motion is the Bureau's first attempt to amend the Complaint.

And, finally, as to futility, the proposed amendments would not be futile. The proposed amendments do not add new claims or theories, but merely conform the Complaint to the case the parties have litigated over the course of several years.

## CONCLUSION

For these reasons, the Court should grant this motion and permit the Bureau to file the Amended Complaint attached as Exhibit 1.

Dated: July 14, 2022

Respectfully submitted,

/s/ J. Taylor McConkie

———————————

MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
J. TAYLOR MCCONKIE
*Enforcement Attorneys*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov
taylor.mcconkie@cfpb.gov

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

## CERTIFICATE OF COMPLIANCE WITH THE WORD-COUNT LIMIT

I certify that the above motion consists of less than 3,100 words (excluding the face sheet, signature block, table of contents, index, and exhibits), according to the word count function of Microsoft Word, in compliance with the word-count limit set by DUCivR 7-1(a)(4)(D).

Dated: July 14, 2022               /s/ J. Taylor McConkie

J. Taylor McConkie
*Enforcement Attorney*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-7459
taylor.mcconkie@cfpb.gov