IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION, | Case No.  2:19-cv-00298-BSJ |
| *Plaintiff*, | [PROPOSED] PRETRIAL ORDER |
| v. | |
| PROGREXION MARKETING, INC., *et al*., | |
| *Defendants*. | |

Table of Contents

1.   JURISDICTION AND VENUE ........................................................................1

2.   GENERAL NATURE OF THE CLAIMS OF THE PARTIES ....................1

3.   UNCONTROVERTED FACTS ....................................................................12

4.   CONTESTED ISSUES OF FACT ...............................................................14

5.   CONTESTED ISSUES OF LAW .................................................................17

6.   EXHIBITS .....................................................................................................18

7.   WITNESSES ..................................................................................................19

8.   REQUESTS FOR INSTRUCTIONS ...........................................................23

9.   AMENDMENTS TO PLEADINGS .............................................................23

10.  DISCOVERY .................................................................................................23

11.  PENDING AND ANTICIPATED MOTIONS .............................................24

12.  TRIAL SETTING ..........................................................................................25

13.  POSSIBILITY OF SETTLEMENT .............................................................26

This matter having come before the court on June 29, June 30, September 20, and September 21, 2022, at pretrial conferences held before the Honorable Bruce S. Jenkins, pursuant to Fed. R. Civ. P. 16; and Maureen McOwen, Jonathan Reischl, Tracy Hilmer, Alicia Ferrara, and J. Taylor McConkie having appeared as counsel for Plaintiff, and Williams & Connolly LLP and Karra J. Porter having appeared as counsel for Defendants, the following action was taken:

1.      JURISDICTION AND VENUE

This is an action for injunctive relief, monetary relief for affected consumers, and civil money penalties. Jurisdiction of the court is invoked under 28 U.S.C. §§ 1331 & 1345. The jurisdiction of the court is not disputed and is hereby determined to be present. Venue was determined by the court to be proper pursuant to 12 U.S.C. § 5564(f). Venue is laid in the Central Division of the District of Utah. *See* 28 U.S.C. § 125.

2.      GENERAL NATURE OF THE CLAIMS OF THE PARTIES

(a)     Plaintiff's claims:

*Count I – TSR Billing Claims Against Heath PC and Progrexion*

Plaintiff Bureau of Consumer Financial Protection ("Bureau") alleges that Defendants John C. Heath, Attorney-at-Law, P.C., d/b/a Lexington Law ("Heath PC" or "Lexington Law"), PGX Holdings, Inc. ("PGX Holdings"), Progrexion

Marketing, Inc. ("Progrexion Marketing"), Progrexion Teleservices, Inc. ("Progrexion Teleservices"), eFolks, LLC ("eFolks"), and CreditRepair.com, Inc. ("CreditRepair.com") violated the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(a)(2), by requesting or receiving payment for services represented to remove derogatory items from, or improve, consumers' credit history, record, or rating without (i) providing consumers a time frame in which all of the services will be provided and waiting for the expiration of that time frame, and (ii) waiting more than six months after achieving the promised results of their services, as demonstrated by a credit report provided to the consumer issued more than six months after the results were achieved. Plaintiff alleges that Defendants are sellers or telemarketers and that their practice of charging consumers fees for credit repair services at the time of signup, 5 to 15 days after signup, and on a monthly basis thereafter, violated 16 C.F.R. § 310.4(a)(2).

There are no material disputes of fact relevant to the Bureau's TSR billing claim. There are two disputed legal questions — Contested Issues of Law (1) and (2), *infra*. As to the first, the Bureau's position is that Defendants are subject to the TSR regardless of whether they make deceptive guarantees or promises, because deceptive guarantees or promises are not an element of a § 310.4(a)(2) claim. Had the Bureau wanted to sue Defendants for making deceptive guarantees or promises

about its credit repair results, it would have done so under a different legal provision, 16 C.F.R. § 310.3. As to the second contested legal issue, the Bureau's position is that all of Defendants' credit repair services are covered by the regulation.

For Defendants' TSR billing violations, Plaintiff seeks monetary relief, in the form of legal or equitable restitution and refund of moneys, for consumers who paid for Defendants' credit repair services on or after March 8, 2016; civil monetary penalties for each violation of § 310.4(a)(2) that occurred on or after March 8, 2016; and injunctive relief going forward, including a requirement that Defendants fundamentally change their billing practices to comply with the law.

If it is determined that Defendants' credit repair billing practices have violated 16 C.F.R. § 310.4(a)(2), Heath PC and Progrexion will be liable, jointly and severally, without further showing, to refund all moneys paid by any consumer for Lexington Law credit repair services during the actionable period (March 8, 2016 to the present), and Progrexion will likewise be liable to refund all moneys paid by any consumer for CreditRepair.com credit repair services during the actionable period. Defendants are liable to make full refunds to their credit repair customers because Defendants never conformed their billing practices to § 310.4(a)(2)'s requirements during the actionable period, and thus each billing for

their credit repair services was unlawful.[1] No deduction for any alleged "benefits" or "value" provided by Defendants is appropriate.[2]

Regarding civil penalties, the Bureau's burden is to show the number of violations and the violator's scienter. 12 U.S.C. § 5565(c). The number of violations equals the number of consumers affected by Defendants' legal violations or, alternatively, the number of days the violations occurred.[3] The Court determines the penalty amount based on the number of violations, the defendant's scienter, and any applicable statutory mitigating factors.

<u>Counts II-V – Deception and Substantial Assistance Claims Against Progrexion</u>

In Counts II and III, Plaintiff alleges that Defendants PGX Holdings,

---

[1] *See* Appendix at pp. 5-6 (authorities supporting Plaintiff's position that amount of relief due to consumers is Defendants' net revenues from unlawful conduct).

[2] *FTC v. Kuykendall¸* 371 F.3d 745, 766-67 (10th Cir. 2004) (*en banc*); *CFPB v. CashCall, Inc.*, 35 F.4th 734, 751 (9th Cir. May 23, 2022) ("[W]hether consumers received the benefit of their bargain is not relevant" where they were deceived about "a major premise underlying their bargain."); *see also CFPB v. Morgan Drexen, Inc.*, No. SACV13-1267-JLS(JEMx), 2016 WL 6601650, *2 (C.D. Cal. Mar. 16, 2016) (for violations of debt relief provision of Telemarketing Sales Rule, awarding full refund of unlawfully collected fees); *FTC v. E.M.A. Nationwide, Inc.*, No. 1:12-CV-2394, 2013 WL 4545143, *8 (N.D. Ohio Aug. 27, 2013), *aff'd*, 767 F.3d 611 (6th Cir. 2014) (same).

[3] *See e.g., Morgan Drexen, Inc.*, 2016 WL 6601650, at *2-3 (C.D. Cal. Mar. 16, 2016); *CFPB v. Future Income Payments, Inc.*, 2020 WL 6162947, at *8-9 (D.S.C. May 21, 2020).

Progrexion Marketing, Progrexion Teleservices, eFolks, and CreditRepair.com (collectively, "Progrexion" or the "Progrexion Defendants"), engaged in deceptive acts or practices in violation of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531, 5536(a)(1), and the TSR, 16 C.F.R. § 310.3(a)(4). Plaintiff alleges that Progrexion relies on marketing affiliates (also known as "Hotswap Partners") to advertise their services, and that certain Hotswap Partners, referred to here as the Relevant Hotswap Companies,[4] used deceptive, bait advertising to generate referrals to Defendants' credit repair services. Plaintiff further alleges that the Relevant Hotswap Companies were acting as Progrexion's agents and Progrexion is liable for the acts of its agents. Plaintiff further alleges that Progrexion had knowledge—that is, actual knowledge, reckless indifference, or intentional avoidance of the truth—of the deceptive advertising schemes and either participated in those schemes or had the authority to control the deceptive acts or practices, but allowed them to proceed.

---

[4] The Relevant Hotswap Companies are: OLP.com ("One Loan Place"), The H.O.P.E. Program, LLC ("HOPE"), Ascent Mortgage Resource Group ("Ascent"), Easyhomeownership.net ("Easy Home Ownership"), and YHTBA Corp. ("Rent2Own.House"). In this action, Plaintiff will not pursue claims or monetary remedies pertaining to Ownerwiz Realty, Inc. or Hotswap Partners other than the five Relevant Hotswap Companies under Counts II-V of the Complaint.

In Counts IV and V, Plaintiff alleges that Progrexion substantially assisted deceptive acts or practices in violation of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(3), and the TSR, 16 C.F.R. § 310.3(b). Plaintiff alleges that Progrexion provided many forms of assistance and support to its Hotswap Companies that were engaged in deceptive advertising, and that Progrexion either knew, consciously avoided knowing, or recklessly disregarded, the Hotswap Companies' deceptive acts or practices.

For Defendants' deception and substantial assistance violations, Plaintiff seeks monetary relief, in the form of legal or equitable restitution and refund of moneys, for hotswap-affected consumers who paid Defendants on or after July 21, 2011; civil monetary penalties for each violation that occurred on or after July 21, 2011; and injunctive relief going forward, including a requirement that Defendants eliminate their use of deceptive advertising in their hotswap telemarketing channel.

There are four disputed legal questions relevant to Counts II-V (*see infra* Contested Issues of Law (3) through (6)). The Bureau's positions regarding the Bureau's burden to show the right to and scope of consumer relief and Progrexion's statute of limitations defense are set out in the Appendix. The remaining legal question is whether the Relevant Hotswap Partners were covered persons or service providers when they advertised for the Defendants. Progrexion

has conceded that it is a covered person[5] and the Bureau's position is that the five Relevant Hotswap Partners were indisputably service providers to Progrexion, as well as engaged in offering or providing consumer financial products or services in their own right.

(b)    Defendants' claims:

Defendants deny any liability for the claims alleged in Counts I through V and deny that any of the Bureau's prayed-for relief should be granted.

As to Count I, Defendants fully complied with the TSR Advance Fee Provision ("AFP"), 16 C.F.R. § 310.4(a)(2).  The AFP restricts billing consumers for credit repair services until a time certain after any "promised results" have been achieved.  Contrary to the Bureau's assertion, disputed issues of fact, including Contested Issues of Facts Nos. 1 and 2 *infra*, bear directly on the merit of its Count I allegations.  The Bureau is incorrect about the nature of Defendants' representations to their customers; because Defendants do not promise any results, let alone guarantee results on a particular timeline—and in fact repeatedly inform consumers that they are not promised results—the TSR's payment restrictions do not apply.  Instead, Defendants promise to and in fact provide certain services, but

---

[5] Tr. Hr'g June 30, 2022, 120:22-121:6 (The Court: "Is [Progrexion] acknowledged to be a covered person?" Counsel for Defendants: "Yes, Your Honor.").

the TSR does not restrict the collection of payments to six months after promised *services* are performed—it only pertains to promised results. Defendants similarly comply with the TSR's requirement that they bill only for credit repair services that have been fully provided: Defendants' contracts with clients are month-to-month (referred to as a "Service Interval"), and Defendants describe for clients the work they will perform in a given service interval. Clients are only billed when a Service Interval's promised work has been completed. The only federal court to consider the question held in 2010 that Defendants' billing practices comply with the federal statutes governing credit repair.

The Bureau is also incorrect on the law: The Bureau's interpretation of the TSR AFP is atextual. The Defendants' billing practices were undertaken in good faith, with a reasonable basis in applicable law.

As to Counts II–III, Progrexion denies engaging in deceptive acts or practices in violation of the CFPA or the TSR. The Bureau alleges that Progrexion contracted with Relevant Hotswap Companies who used deceptive advertising to generate referrals, specifically by falsely representing that certain products or services would be available to consumers who signed up for credit repair services. Progrexion maintains that such products or services either were in fact available, or Progrexion did not know that they were not available. Moreover, Progrexion had

robust compliance programs designed to protect consumers, including a policy and practice of ensuring that its employees did not tie signing up for credit repair services with eligibility for a third party's product or service—either explicitly or implicitly—and the evidence in the case will reflect this practice. As a result, Progrexion neither participated in any allegedly deceptive scheme nor stood by and knowingly allowed such a scheme to proceed; rather, it actively worked to avoid consumer confusion.

Nor can Progrexion be liable under the Bureau's agency theory. Neither the CFPA nor the TSR provides for this type of secondary liability. Even if there were some statutory basis for the Bureau to hold Progrexion liable for a third-party agent's actions, there would be no basis for concluding that the Relevant Hotswap Companies acted under Progrexion's control. And any misrepresentations any Relevant Hotswap Company may have made about *its own business* was outside the scope of any agency relationship that might have existed with a Defendant.

Finally, Progrexion denies liability under Counts IV and V for substantially assisting deceptive acts or practices in violation of the CFPA or the TSR. Progrexion maintains that it did not knowingly, recklessly, or with conscious avoidance provide substantial assistance to entities in violation of these provisions because those entities were not in fact engaged in deceptive acts and because

Progrexion had no knowledge of any alleged deception.  In addition, these provisions only prohibit the knowing or reckless provision of substantial assistance to a "covered person" or "service provider," 12 U.S.C. § 5536(a)(3), or in relation "to the offering or provision of a consumer financial product or service subject to [the CFPA]," 15 U.S.C. § 6105(d).  The Relevant Hotswap Companies in the rent-to-own business do not fit either category.

As set forth in more detail in the Appendix, the Bureau also should be barred from recovery due to its failure to act diligently in investigating the conduct underlying this suit or to take any action based on evidence it gathered years before filing its complaint that it now claims as the basis for its allegations,[6] and because the government—after decades of silence during which Defendants relied on and conformed their conduct to the prevailing view of the law—is seeking to enforce a wholly novel and unsupported interpretation of the applicable laws.  This delay, along with the Bureau's failure to request a preliminary injunction when it ultimately did bring suit years later, also should preclude the Bureau from securing the injunctive relief it seeks.[7]

_____

[6] *See* Appendix at pp. 12-17.

[7] At the June 30, 2022 Pretrial Conference, the Court dismissed Defendants' constitutional defenses and directed other changes to the parties' joint proposed

As to all counts, Defendants submit that the Bureau cannot recover for any alleged violations that occurred before March 8, 2016 due to the three-year statute of limitations applicable to claims under the TSR and CFPA.  The Bureau discovered, or had a basis for investigating the claims brought here more than five years prior to March 8, 2019, when the parties entered into a tolling agreement, but nonetheless failed to timely investigate or file claims.

Defendants also deny that the Bureau is entitled to any monetary relief, civil monetary penalties, or injunctive relief.

As to monetary relief for Count I and Counts II–V, the Bureau bears the burden to prove that restitution or refunds are appropriate remedies in part because there was actual consumer reliance on any purported misrepresentations made *by the Defendants*—a contention the Bureau's evidence does not support.[8]

The Bureau also bears the burden to prove that the amount of restitution or refunds it seeks reflects Defendants' allegedly unjust gains.  Even if there were a finding of some liability and a determination that restitution is an appropriate

---

pretrial order.  This proposed order is intended to reflect the Court's rulings, as to which Defendants preserved their objections.

[8] *See* Appendix at pp. 10-11 (no authority supports the Bureau's attempt to apply the *Freecom* principle—that widespread dissemination of material misrepresentations can create a rebuttable presumption of consumer reliance—to purported misrepresentations made by a third party).

remedy, it would remain the Bureau's burden to define the *scope* of liability and Defendants' supposed "unjust gains," accounting for all elements of liability (described above) at all relevant times, Defendants' own expenses,[9] consumers who were satisfied or not deceived, and the bona fide value of Defendants' products and services.

As to civil monetary penalties for Count I and Counts II–V, in the event of a liability finding, there is no basis in fact or law for the award of Tier II or Tier III penalties under 15 U.S.C. 5565(c)(3). Nor can the Bureau seek damages based on Defendants' entire customer base. There is no valid basis by which the Bureau can extrapolate from the limited, non-representative sample of consumers referenced in the factual record to prove that all customers were exposed to any purported misrepresentations, let alone that there was universal, detrimental reliance.

Defendants reserve all rights as to defenses asserted in this litigation.

3.   UNCONTROVERTED FACTS

The following facts are established by admissions in the pleadings, by order pursuant to Fed. R. Civ. P. 56(d), or by stipulation of counsel:

---

[9] *See* Appendix at p. 11 n.24 (amount of restitution, an equitable remedy, may not exceed Defendants' "net profits."); *see Liu v. SEC*, 140 S. Ct. 1936, 1942–43 (2020).

1.    The Progrexion Defendants, including PGX Holdings, Progrexion Marketing, Progrexion Teleservices, eFolks, and CreditRepair.com, shall be treated as a single company for the purposes of establishing liability in this litigation.

2.    Defendant PGX Holdings, Inc. agrees to be liable for any judgment against the Progrexion Defendants in this litigation.

3.    For purposes of this litigation, evidence of any action, omission, or knowledge of any Progrexion Defendant is attributable to all Progrexion Defendants, and all Progrexion Defendants shall be jointly and severally liable for any monetary relief or civil money penalty and subject to all injunctive provisions, if any are ordered. Proof of a defense as to any Progrexion Defendant is attributable to all Progrexion Defendants.

Bureau's position on additional facts:  The parties previously agreed to 24 additional uncontroverted facts established by admissions in the pleadings, other record admissions, or by stipulation of counsel. *See* ECF No. 438, § 3(a), (b), (c), (d) (signed by counsel for all parties). Defendants refuse to include those agreed facts in this version of the proposed pretrial order. Plaintiff's position is that the

parties remain bound by their prior agreement and their joint representation to the Court that those facts are uncontroverted.

Defendants' position on additional facts:  This section previously included unnecessary and incomplete statements from the Complaint based on the Bureau's interpretation of the model pretrial order from the District of Utah.  Pursuant to the Court's guidance during the Pretrial Conference in June, Defendants removed those statements.  *See* 6/29/22 Tr. at 121:16-123:9.  It is neither appropriate nor accurate to include as uncontroverted facts in the Pretrial Order certain statements from the Complaint that do not accurately reflect all relevant facts.

4.    CONTESTED ISSUES OF FACT

The contested issues of fact are:

1.    Did Defendants represent that all credit repair services would be provided to a consumer in a given time frame, and if so, what was that time frame?

2.    Did Defendants promise results to clients or customers, and if so, what results did they promise?[10]

---

[10] Plaintiff's position is that this factual question is material only if the Court rejects the Bureau's interpretation of 16 C.F.R. § 310.4(a)(2) and holds that it must show that the Defendants promised specific results in order for liability to attach.

14

3.      In connection with generating leads for Defendants or advertising Defendants' services, did any of the Relevant Hotswap Companies make material representations that were likely to mislead ordinary consumers?

4.      In connection with handling telephone calls transferred from the Relevant Hotswap Companies, did Progrexion employees make material representations that were likely to mislead ordinary consumers?

5.      In connection with advertising credit repair, identifying potential credit repair customers, and transferring potential customers to Progrexion, were the Relevant Hotswap Companies acting as agents of Progrexion?[11]

6.      Did Progrexion possess the requisite mental state regarding whether the Relevant Hotswap Companies made material representations that were likely to mislead ordinary consumers in connection with generating leads for Progrexion Marketing

---

[11] The issues stated in paragraphs 5–9 are only pertinent if the Bureau is able to prove that the Relevant Hotswap Companies used false or misleading advertising or made false or misleading statements.

and/or advertising CreditRepair.com or Lexington Law services?

7.   Did Progrexion directly participate in or have the authority to control any deceptive practices in which the Relevant Hotswap Companies allegedly engaged?

8.   As to each of the Relevant Hotswap Companies: during what time period(s) did the Relevant Hotswap Company make any material representations that were likely to mislead ordinary consumers; during what time periods did Progrexion possess the requisite mental state to be held liable for such actions; and which consumers were affected?

9.   What assistance or support, if any, did Progrexion provide to the Relevant Hotswap Companies, and was it substantial assistance or support?

10.  Did the Plaintiff discover[12] the facts constituting its claims regarding the Relevant Hotswap Companies (Counts II-V) prior to March 8, 2016?

---

[12] The parties disagree about the meaning of the word "discovery" in the governing statute of limitations, 12 U.S.C. § 5564(g)(1).  *See* Appendix at pp. 12–22.

5.    CONTESTED ISSUES OF LAW

The contested issues of law, in addition to those implicit in the foregoing

issues of fact, are:

1.    Are Defendants subject to the TSR, 16 C.F.R. § 310.4(a)(2),

and do their credit repair billing practices violate that rule?

2.    Which products and services offered by Defendants to

consumers, if any, are covered by 16 C.F.R. § 310.4(a)(2)?

3.    Can Progrexion be held liable under 12 U.S.C. § 5536(a)(1)(B)

or 16 C.F.R. § 310.3(a)(4) for deceptive acts or practices by the

Relevant Hotswap Companies in connection with marketing

Lexington Law and CreditRepair.com's credit repair services?

4.    What is Plaintiff's burden in order to obtain consumer redress

for the deception claims (Counts II-V)?[13]

5.    Are Counts II, III, IV, and/or V of the Complaint barred or

limited by the applicable statute of limitations?[14]

---

[13] See Appendix for the parties' position statements on this Contested Issue of Law.

[14] See Appendix for the parties' position statements on this Contested Issue of Law.

> 6.      Were the Relevant Hotswap Companies covered persons or
>
> service providers as those terms are defined in the CFPA during
>
> the period each advertised for Defendants?

6.    EXHIBITS

The following were received in evidence or were identified and offered:

(a)    Joint exhibits identified: see Attachment A.[15]

(b)    Plaintiff's exhibits identified: see Attachment B.

(b)    Defendants' exhibits identified: see Attachment C.

(c)    Exhibits received in evidence and placed in the custody of the clerk may be withdrawn from the clerk's office upon signing of receipts therefor by the respective parties offering them.  The exhibits shall be returned to the clerk's office within a reasonable time and in the meantime shall be available for inspection at the request of other parties.

(d)    Exhibits identified and offered that remain in the custody of the party offering them shall be made available for review by the offering party to any other party to the action that requests access to them in writing.

(e)    Except as otherwise indicated in the Objections listed in Attachments A, B, and C, the authenticity of the exhibits listed in Attachments A, B, and C has been stipulated, but they are subject to other objections, if any, by an opposing party at the trial as to their relevancy, admissibility, and materiality.

---

[15] Certain Joint Exhibits are subject to objections regarding limited purpose, as indicated in Attachment A.

(f)    All affirmative FRE 1006 summary exhibits and any other affirmative exhibits to be offered, the necessity for which reasonably cannot now be anticipated, will be submitted to opposing counsel at least 21 days prior to trial. Rebuttal exhibits (including FRE 1006 summary rebuttal exhibits) will be exchanged at times to be agreed upon by the parties.

7.    WITNESSES

(a)    In the absence of reasonable notice to opposing counsel to the contrary:

(i)    Plaintiff <u>will</u> call as witnesses:[16]

- Christopher Albanese
- Shane Frederick
- Timothy Hanson
- Jacob Lichtblau
- Andrew Nigrinis
- Allen Weinberg
- Jesse Beal
- Jeremy Crane
- J.R. Curtis
- Joseph Delfgauw
- Blakely Hankins
- John C. Heath

---

[16] Not all of these individuals are within the Court's subpoena power and they may not agree to attend. The Bureau reserves the right to designate deposition testimony in the event a witness refuses to appear.

- Reagan Nickl
- Robert Olson
- Gavin Van Wagoner
- The following individual consumers affected by Defendants' alleged misconduct:
    - Bryant Coleman
    - Chris Hilderbrand
    - Arkh Isra Ali-Dey
    - Jahzara Isra Ali-Dey
    - David Jacobs
    - Jacqueline Jacobs
    - Nolan Miller
    - Robert Nelson
    - Esther Nunn
    - Susie Renee Parker
    - Lacy Pickens, Jr.
    - Susan Robinson
    - Pamela Shaw
    - Buck Slover
    - Christopher Wilburn
    - Timothy Williams
    - Maryellen Woods

(ii)   Plaintiff <u>may</u> call as witnesses:

- Jeffrey Johnson
- Lorenzo McQuiller

- Progrexion or Heath custodian of records with knowledge of the company's record-keeping practices if necessary to authenticate documents or establish a business records foundation

(iii)   Plaintiff will likely use the following depositions:

- Jesse Beal (May 5, 2021)
- Kelly Etherington (Apr. 28, 2021)
- Jacob Hamilton (May 6, 2021)
- Jeffrey Johnson (May 10, 2021)
- Terry Kealamakia (May 11, 2021)
- Brenda Kemp (Dec. 15, 2020)
- Trung Khanh Lam (Apr. 28, 2021)
- Billy Ness (Feb. 12, 2021)
- Khang Nguyen (May 10, 2021)
- Christopher Robinson (Jan. 28, 2021 & Feb. 9, 2021)
- Christina Rook & Vincent Russo (Feb. 24, 2021)
- Chad Wallace (May 5, 2021)

(b)   In the absence of reasonable notice to opposing counsel to the contrary:

(i)   Defendants <u>will</u> call as witnesses (not including any witnesses solely for impeachment or rebuttal):

- Christopher Albanese
- Brad Blanchard
- J.R. Curtis

- Kelly Etherington
- Jacob Hamilton
- Blakely Hankins
- John C. Heath
- Cody Johnson
- Terry Kealamakia
- Trung Khanh (Tony) Lam
- Khang Nguyen
- Kirk Nielson
- Randy Padawer
- Cynthia Thaxton
- Chad Wallace

(ii)   Defendants <u>may</u> call as witnesses:

- Kurt Artecona
- Arnold Barnett
- John Delponti
- Thomas Maronick
- Stephen Mott
- Victor Stango
- John Ulzheimer
- Yoram Wind ("Jerry")

(iii)   Defendants will likely use the following depositions:

- Joe Delfgauw (Jan. 08, 2021 & Jan. 14, 2021)
- Brenda Kemp (Feb. 15, 2021)

- Christopher Robinson (Jan. 28, 2021 & Feb. 9, 2021)
- Christina Rook & Vincent Russo (Feb. 24, 2021)

8.     REQUESTS FOR INSTRUCTIONS

If the case is to be tried before a jury, requests for instructions to the jury and special requests for voir dire examination of the jury shall be submitted to the court pursuant to DUCivR 51-1.  The parties' submissions shall not be limited by the contested issues of fact and law outlined above, and all parties reserve their rights to request any and all relevant instructions.  Counsel may supplement requested instructions during trial on matters that could not reasonably be anticipated prior to trial.

9.     AMENDMENTS TO PLEADINGS

On July 14, 2022, Plaintiff moved to amend its Complaint.  ECF No. 441. Defendants filed their opposition on July 27.  ECF No. 443.  Plaintiff intends to file a Reply brief.

10.   DISCOVERY

Discovery has been completed.

11.   PENDING AND ANTICIPATED MOTIONS

   a.  Plaintiff's Motion to Exclude Expert Report and Testimony of
       John Ulzheimer (ECF 222)

   b.  Plaintiff's Motion to Exclude the August 20, 2021 Expert Report
       of John DelPonti, Jr. and Related Testimony (ECF 224)

   c.  Plaintiff's Motion for Partial Summary Judgment on Count I
       Against All Defendants (ECF 257)

   d.  Plaintiff's Motion to Exclude the Rebuttal Expert Report and
       Testimony of Thomas J. Maronick (ECF 295)

   e.  Defendants' Motion to Exclude the Expert Testimony of Allen
       Weinberg (ECF 360)

   f.  Plaintiff's Motion to Exclude Testimony of John DelPonti, Jr.,
       Related to His Oct. 25, 2021 Supplemental and Rebuttal Expert
       Reports (ECF 361)

   g.  Defendants' Motion to Exclude the Expert Reports and Testimony
       of Dr. Shane Frederick (ECF 362)

   h.  Plaintiff's Motion to Exclude the Testimony of Dr. Yoram Wind
       and his Expert Report (ECF 367)

24

i.   Plaintiff's Motion to Exclude Expert Testimony of Stephen Mott (ECF 368)

j.   Plaintiff's Motion to Exclude the Testimony of Dr. Arnold Barnett (ECF 371)

k.   Plaintiff's Motion to Exclude Testimony of Defendants' Proffered Expert Victor Stango (ECF 373)

l.   Plaintiff's Motion for Leave to Amend the Complaint (ECF 441)

m.   Defendants' Brief in Support of Jury Demand (ECF 442)

n.   The parties anticipate filing motions *in limine* after the conclusion of the final pretrial conference.

12.   TRIAL SETTING

At this time, Plaintiff estimates that its trial presentation will take approximately 11 days (including rebuttal); Defendants estimate that their trial presentation will take approximately 4–8 days, the precise length of which will be heavily dependent on the substance of Plaintiff's case. All parties reserve their rights to revise these estimates.

*Complete either a. or b.*

   a.  The case was set for trial _____ with/ _____ without a jury on

_____, 20____ at _____ o'clock ___.m. at Salt

Lake City.  *See* 28 U.S.C. § 1404(b).

   b.  No definite setting was made, but it was estimated that the case

will be set for trial no later than _____, 20___.

Estimated length of trial is ___ - ___ days.


13.  POSSIBILITY OF SETTLEMENT

   The possibility of settlement is considered poor if Count I is not resolved in

either Plaintiff's or Defendants' favor on summary judgment.  If Count I is

resolved before trial, negotiations on Counts II-V would be possible.


The foregoing proposed pretrial order (prior to execution by the court) is hereby

adopted this _____ day of _____, 20_____.


           _____
           Hon. Bruce S. Jenkins
           United States District Judge


Counsel:

 /s/ Maureen McOwen    /s/ Suzanne Salgado (signed by permission)
 Maureen McOwen     Edward J. Bennett*
 Jonathan Reischl      Edward C. Barnidge*
 Tracy L. Hilmer      Suzanne Salgado*
 Alicia Ferrara       Shauna M. Kramer*
 J. Taylor McConkie    Paul A. Hoversten*
 (202) 435-9553      Emma J. Nino*

maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov
taylor.mcconkie@cfpb.gov
1700 G Street, NW
Washington, DC 20552

*Attorneys for Plaintiff Bureau of
Consumer Financial Protection*

Daniel Whiteley*
Loryn Helfmann*
Atticus DeProspo*
Williams & Connolly LLP
680 Maine Avenue S.W.
Washington, DC 20024

Thomas M. Hefferon*
W. Kyle Tayman*
Goodwin Procter, LLP
1900 N Street, NW
Washington, DC  20036
(202) 346-4000
thefferon@goodwinlaw.com
ktayman@goodwinlaw.com

William J. Harrington*
Goodwin Procter LLP
620 Eighth Avenue
New York, NY 10018
(212) 459-7140
wharrington@goodwinlaw.com

Karra J. Porter
Christensen & Jensen
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
(801) 323-5000
Karra.porter@chrisjen.com

*Attorneys for Defendants*
(*admitted *pro hac vice*)