IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>Plaintiff,<br><br>v.<br><br>PROGREXION MARKETING, INC., et al.,<br><br>Defendants. | Case No. 2:19-CV-00298-BSJ |

**DEFENDANTS' MEMORANDUM IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 257)**

Defendants John C. Heath, P.C., PGX Holdings, Inc., Progrexion Marketing, Inc., Progrexion Teleservices, Inc., CreditRepair.com, Inc., and eFolks, LLC ("Defendants") respectfully submit this memorandum in response to three points raised during the September 19-21, 2022 hearing on the government's motion for partial summary judgment regarding the Telemarketing Sales Rule's ("TSR") Advance Fee Provision ("AFP").[1]

**I.   The Government's Attempt to Explain How Defendants Could Comply with the AFP Showcases the Flaws in Its Interpretation.**

During the hearing on September 21, 2022, the government finally articulated in public its position regarding how Defendants, who disavow any promised results in written contracts with their clients, might somehow comply with the AFP's requirement of demonstrating, via a "consumer report from a consumer reporting agency," that "the promised results" have been achieved. 16 C.F.R. § 310.4(a)(2)(ii). The government's position takes a wrecking ball to the

---

[1] Defendants understand a transcript of the September 19-21 hearing is forthcoming.

1

AFP and CROA.

The government argued it would be acceptable for Defendants to bill for its services after making and delivering on one of three promises. First, according to the government, Defendants can promise and then show that the items on a credit report were verified. But an updated credit report—the litmus test under the TSR for showing the promised results have been achieved—does not reflect whether a tradeline has or has not been verified by the creditor. So the government's first scenario supposes a ***factual*** impossibility and cannot possibly be correct. *See Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 320 (2014) (rejecting an interpretation that would render the enforcement scheme "unworkable").

Second, the government says Defendants can promise and then show that items have been removed. But that entails a ***legal*** catch-22. CROA prohibits a credit repair organization from promising a result it does not have the power to deliver—such as a tradeline removal that would depend on the reporting agency, a third party, doing the removal.² Taking the government at its word that "CROA and the TSR do not conflict," ECF No. 257 at 25, it cannot be that the TSR requires the making of promises that CROA prohibits. *See Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (two laws cannot coexist "where compliance with both . . . is impossible").

Third, the government argued Defendants can promise and then show that the consumer's credit was improved. That suffers from the same problem as the second scenario. Indeed, the government concedes that "guarantees" about the "results of [ ] credit repair services" are themselves "deceptive statements prohibited by a different TSR provision" because "improvements to a consumer's credit record are not within the capability of" a credit repair

---

² *See* 15 U.S.C. § 1679b(a)(3) (prohibiting "any untrue or misleading representation" of a credit repair organization's services).

organization.  ECF No. 232 at 51-52; *see* ECF No. 257 at 7 (stating it is "unlawful" for a credit repair organization to make "misrepresentations that a person's credit rating . . . will improve").[3]

The three "safe harbors" proffered by the government thus would only place Defendants *into* legal jeopardy, as the first entails promises that never could be proven by a credit report and the second and third presume promises that could never be lawfully made in the first place.  As the Court noted months ago, the government is seeking here what amounts to a corporate death penalty: "If you have to wait for six months to send somebody a bill, you are not in business very long."  Dec. 13, 2019 Hearing Tr. at 37.  Such a devastating result cannot stand on such a novel and demonstrably flawed interpretation of this decades-old regulation.

II. **The Government's Alternative Attempt to Convert the AFP Into a Contingency Fee Arrangement Fails.**

Recognizing the problems inherent in forcing Defendants to promise results they cannot guarantee, the government argued alternatively that the AFP effectively imposes a contingency fee arrangement on credit repair organizations.  The government argued that Defendants can comply with the AFP if they specify that payment will be due if, and only if, certain results are achieved, and then bill six months after that.  But by definition a company that only charges *if* certain results are achieved does not *promise* those results, as the AFP contemplates.  The government's contingency fee solution conflicts with the plain text of the AFP.

The notion that the government intended to require a contingency fee arrangement for credit repair services also would conflict with the TSR at large and its rulemaking record.  *Cf. DuCharme v. Heath*, 2010 WL 5211502, at *5 n.3 (N.D. Cal. Dec. 16, 2010) ("If this was indeed

---

[3] To be sure, the AFP applies *if* a credit repair organization expressly promises to remove negative items or improve credit.  The credit repair organizations promising such "bogus" services is exactly who the rule was trying to ensnare.  60 Fed. Reg. 43,842, 43,854 (Aug. 23, 1995).  Affirmatively *requiring* credit repair organizations to make and then deliver on such promises before billing would flip the rule on its head.

3

Congress's intent in drafting CROA, nothing prevented Congress from declaring that credit repair organizations could only be paid on a contingent basis."). When the FTC expanded the TSR's coverage to *debt relief* providers in 2010, it imposed a different billing requirement that forbids payment unless and until a specified successful result—the alteration of the debt due—is obtained. 16 C.F.R. § 310.4(a)(5). The payment condition applies irrespective of any promise by the *debt relief* service provider,[4] and it expressly permits contingency fee arrangements. 16 C.F.R. § 310.4(a)(5)(i)(C)(2) (permitting the fee to be a "percentage of the amount saved" from the *debt relief* service, so long as it is the same percentage across debts). Meanwhile, the FTC has never amended the AFP to require a contingency fee arrangement regarding *credit repair*. The contingency fee arrangement in the debt relief provision—and its continued absence from the AFP—confirm that the FTC never intended for the AFP to impose a contingency fee requirement regarding *credit repair*.

### III. The AFP Governs "Promised Results" and Is Not Triggered by Defendants' "Hope" for a Response.

The Court asked whether the AFP applies to Defendants because they *hope* that, when they send letters to furnishers on clients' behalf, they will receive responses. It does not. That reading is not only atextual—"hope" is not a promise—it is also flatly contradicted by statements from the promulgating agency, the FTC.

During the rulemaking process, in response to a commenter's concern about the scope of the AFP, the FTC confirmed that the "prohibition on advance payments [would] extend to services that *promise* to remove derogatory information from a consumer's credit record, in

---

[4] Unlike the AFP, which only applies to credit repair organizations that "promise[ ] results," the TSR's debt relief billing provision applies broadly to "*any* debt relief service," 16 C.F.R. § 310.4(a)(5)(i) (emphasis added), which is specifically defined elsewhere in the regulation. 16 C.F.R. § 310.2(o).

addition to those services that simply *promise* to improve a person's credit history, record or rating." 60 Fed. Reg. 30406, 30415 (June 8, 1995) (emphases added). That explanation tracks the language of the final rule's coverage clause almost word for word, and the terms "represented to" (in the coverage clause of the final rule) and "promise to" (in the FTC's explanation) are used interchangeably. *Compare* 16 C.F.R. § 310.4(a)(2), *with* 60 Fed. Reg. at 30415.

Had the FTC understood its rule to regulate credit repair services that merely hoped for or intended some result (for example, a response from a furnisher), its response to the commenter would have been dramatically different; it would have assured the commenter that all credit repair organizations were covered regardless of their representations to consumers, and "promises" were not needed to trigger the AFP at all. Instead, the FTC confirmed that two different kinds of promises—both to "remove" derogatory information and to "improve" a consumer's credit record—would trigger the AFP's billing restrictions. The suggestion that "hope" satisfies the AFP's condition of "promised results" cannot be squared with the text of the rule or the explanations supporting it. Defendants certainly hope the services will yield favorable results, but they make no promises in that respect, agreeing in writing with each customer that "[Defendants] cannot guarantee and [the consumer is] not paying for a particular credit report outcome or result." *See, e.g.*, JX-13 at 11.

## CONCLUSION

For the foregoing reasons, as well as those stated in prior briefing and during arguments, the Court should reject Plaintiff's motion for partial summary judgment and, instead, enter partial summary judgment for Defendants on Count I.[5]

---

[5] Defendants' motion for partial summary judgment on Count I (ECF No. 171) was denied without prejudice. ECF No. 287.

Dated:  October 7, 2022 	Respectfully submitted,

	/s/ Edward J. Bennett
	Edward J. Bennett*
	Edward C. Barnidge*
	Suzanne Salgado*
	Shauna M. Kramer*
	Paul A. Hoversten*
	Williams & Connolly LLP
	680 Maine Avenue SW
	Washington, DC 20024
	(202) 434-5000
	ebennett@wc.com
	ebarnidge@wc.com
	ssalgado@wc.com
	skramer@wc.com
	phoversten@wc.com


	Karra J. Porter
	Christensen & Jensen
	257 East 200 South, Suite 1100
	Salt Lake City, UT 84111
	(801) 323-5000
	karra.porter@chrisjen.com

6

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2022, I caused a true and correct copy of the foregoing to be filed on the CM/ECF system, which will send notification of such filing to all parties and counsel in this case.

*/s/ Paul A. Hoversten*
Paul A. Hoversten
