MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
(202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov
1700 G Street, NW
Washington, DC 20552
*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

BUREAU OF CONSUMER FINANCIAL PROTECTION,

*Plaintiff*,

v.

PROGREXION MARKETING, INC., *et al.*,

*Defendants.*

Case No. 2:19-cv-00298-BSJ

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

## Introduction

On March 10, 2023, this Court granted summary judgment to Plaintiff Bureau of Consumer Financial Protection ("Bureau") on Count I, holding that "Defendants have violated 16 C.F.R. § 310.4(a)(2) from March 8, 2016, through the present." ECF 508, p. 13 ("March 10 Order"). The parties have not yet briefed the issue of remedies, and the March 10 Order did not grant relief, either monetary or injunctive.

On March 13, 2023, Defendants filed a notice of appeal, claiming that the March 10 Order had the "effect" of an injunction and therefore 28 U.S.C. § 1292(a)(1) entitled them to an immediate appeal. On the same day, Defendants asked this Court to stay the "effect" of the March 10 Order—apparently asking this Court to grant them immunity to continue their practices that federal law makes unlawful.[1] ECF 510 ("Defs.' Mot.").

The Court cannot do that. The Court's partial summary judgment decision is not an injunction, either in form or in "effect." The Court has only ruled, based on the undisputed record evidence, that Defendants violated § 310.4(a)(2) of the

[1] Hours later, Defendants filed the same request with the Court of Appeals. That court entered a temporary administrative stay to enable it to consider Defendants' motion and set a briefing schedule that concluded on March 23, 2023. *See* ECF No. 515. On March 13, Defendants also filed a motion in this Court for interlocutory appeal certification pursuant to 28 U.S.C. § 1292(b). The Bureau's response to that motion is also being filed today.

Telemarketing Sales Rule ("TSR"). There is nothing to stay. Defendants' obligation to comply with the TSR now is the same as it was before the March 10 Order; that obligation flows from the TSR itself, not from the Court's ruling. The Court should therefore deny Defendants' motion.[2]

And even if the Court's partial summary judgment decision were somehow a decision that could be "stayed," no such stay would be warranted.

## Argument

### I. The Court's partial summary judgment decision is not subject to a "stay" pending appeal.

Defendants cannot obtain a "stay" of this Court's partial summary judgment decision because that decision does not compel Defendants to take or refrain from taking any action. There is therefore nothing to stay.

To be sure, the Court's partial summary judgment order concludes that Defendants' conduct—charging fees before improving a consumer's credit—violates the TSR. But it is *that rule*, not the court's order, that bars Defendants' conduct. And if Defendants continue their same practices going forward, they will be violating that rule (not the partial summary judgment order)—just as they have

[2] Once the Court enters an injunction and/or a final judgment as to Count I, Defendants may notice an appeal, and if they wish, they may then seek a stay pending appeal, subject to the requirements of Fed. R. Civ. P. 62. The Bureau anticipates filing a motion for relief and entry of judgment on Count I by April 7, 2023.

been violating that rule for years. "Staying" the Court's decision will not change the law or Defendants' obligation to comply with it. The Court's decision merely resolves issues of liability; it does not impose an injunction that could be subject to a stay.

That distinction is no mere technicality. An injunction "must be obeyed …, however erroneous the action of the court may be," and violations of such an order "are punishable as criminal contempt even [if] the order is set aside on appeal." *United States v. United Mine Workers of America*, 330 U.S. 258, 293-94 (1947); *see also GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980) (describing "established doctrine" that persons subject to an injunction "must obey that decree until it is modified or reversed, even if they have proper grounds to object to the order"). If this Court had *enjoined* Defendants from continuing their fee practices, they would face liability for criminal contempt even if the Court of Appeals ultimately concluded that those practices are lawful under the TSR.

By contrast, a non-injunctive order like that here does not carry that consequence. *Cf. Steffel v. Thompson*, 415 U.S. 452, 471 (1974) (explaining that "noncompliance" with a declaratory judgment "is not contempt"). Here, Defendants will face no liability if, after entry of final judgment or another

appealable order, the Court of Appeals ultimately agrees with Defendants' interpretation of the TSR. Defendants' unexplained contrary assertion (Defs.' Mot. p. 2) that the order exposes them to "contempt sanctions" has no basis.

Defendants also suggest (*id.* pp. 1-2) that the decision effectively forces them to choose between complying with the TSR (as this Court has correctly interpreted it) or ignoring it and potentially facing steep penalties. But the Court's order is not to blame for that choice; that's the same choice Defendants have faced all along. They've known since at least May 2, 2019, when the Bureau filed this suit that a federal law enforcement agency believes their practices violate the law, and they've always faced the choice of conforming their practices to that view of the law or ignoring it and facing the potential consequences. This Court's decision that Defendants have violated the law may give them second thoughts about their choice, but that doesn't mean the partial summary judgment decision forces them to do anything.

Because the order here does not enjoin Defendants to do anything, it cannot be "stayed."

## II. Defendants fail to meet the standards for a stay.

Because the March 10 Order does not order any relief, it is unclear what it would even mean to "stay" it. Even so, no stay is warranted. Defendants bear the burden to show that a stay is justified in light of four factors: "(1) whether the stay

applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426, 433-34 (2009); *see also* 10th Cir. R. 8.1. Those factors do not support a stay.

**A. Defendants are not likely to succeed on the merits.**

Defendants have not and could not show that their appeal is likely to succeed, first, because the Court of Appeals lacks jurisdiction. And even if the Court of Appeals had jurisdiction, Defendants have not and could not make a "strong showing" that their appeal will likely succeed. *Nken*, 556 U.S. at 434.

Defendants claim that the Court of Appeals has jurisdiction to review this Court's partial summary judgment decision under 28 U.S.C. § 1292(a)(1)—which grants courts of appeals jurisdiction to review interlocutory orders "granting … injunctions"—because the decision is "injunctive in practical effect." But that is mistaken.

While a Court of Appeals can in limited circumstances review an order that has "the practical effect of … granting an injunction," *Hutchinson v. Pfeil*, 105

F.3d 566, 569 (10th Cir. 1997),[3] the decision here has no such effect. To determine whether an order has the practical effect of granting an injunction, this Court looks to the order's "substance" to assess whether it is "an equitable decree compelling obedience under the threat of contempt." *Ditucci v. Bowser*, 985 F.3d 804, 808 (10th Cir. 2021). The decision here is not. It does not "compel" anything, let alone "under the threat of contempt." Rather, it merely "grants Plaintiff's Partial Motion for Summary Judgment" and holds, based on the undisputed facts, that "Defendants have violated [a provision of the TSR]" since March 2016. March 10 Order, p. 13. Indeed, Defendants point to nothing in the decision (as opposed to the TSR) that compels them to take, or refrain from taking, any action. Because this Court's summary judgment decision does not impose an injunction, in practical

---

[3] More specifically, where, as here, an order does not "expressly" grant an injunction, a court of appeals has jurisdiction to review it only if it meets three criteria: it "ha[s] (1) the practical effect of refusing or granting an injunction, (2) threaten[s] a serious, perhaps irreparable, consequence, and [can] be (3) effectually challenged only by immediate appeal." *Hutchinson*, 105 F.3d at 569 (cleaned up); *accord Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981). Because section 1292(a)(1)'s grant of appellate jurisdiction to review orders granting or denying injunctions was intended to "carve out only a limited exception" to the final-judgment rule, the Supreme Court has cautioned that the statute should be construed "narrowly" to protect "the general congressional policy against piecemeal review." *Carson*, 450 U.S. at 84. The decision here does not have the "practical effect" of granting an injunction, so the Court of Appeals lacks jurisdiction for that reason alone. But it is also doubtful that an interlocutory determination that compels no action could threaten serious consequences or be effectually challenged only by immediate appeal.

"effect" or otherwise, the Court of Appeals lacks jurisdiction to review it, and Defendants are not likely to succeed on their appeal for that reason alone.

Even if the Tenth Circuit had jurisdiction, Defendants have not shown a strong likelihood of success. Defendants violated the TSR in charging fees before (and even regardless of whether) they actually improved a consumer's credit, and Defendants' arguments to the contrary would not likely prevail on appeal. Defendants' arguments in their motion for a stay simply repeat the same arguments this Court has already heard, at length, and rejected as unpersuasive. Defendants offer no justification for the Court to reconsider its careful assessment of the undisputed record evidence and its correct interpretation of § 310.4(a)(2)'s plain language and purpose. Defendants' rehashing of their old arguments does not demonstrate a "strong showing" of likelihood of success on the merits. *See Hetronic Int'l, Inc. v. Hetronic Germany GMBH*, Case No. CIV-14-650-F, 2020 WL 2119831, *1 (W.D. Okla. May 4, 2020).[4]

[4] Defendants also seek once again to interject arguments about the Bureau's funding that this Court has rejected—arguments that the Second Circuit has now also rejected along with every other court, apart from the Fifth Circuit, that has addressed the issue. *CFPB v. Law Offices of Crystal Moroney, P.C.*, --- F.4th ----, 2023 WL 2604254, at *4–6 (2d Cir. Mar. 23, 2023). These arguments do not show that Defendants' erroneous interpretation of the TSR is likely to prevail on appeal. They are not relevant to the other stay factors either. The fact that certain courts have stayed proceedings (not any decision) is likewise beside the point. Defendants bear the burden to show that the circumstances of *this* case warrant a stay of the

**B. Defendants will not suffer irreparable harm absent a stay.**

The second *Nken* factor likewise does not support a stay because Defendants will not suffer irreparable harm without one. As explained in Section I, the March 10 Order merely concludes that Defendants violated the TSR; it does not compel Defendants to take, or refrain from taking, any action. Thus, it is unclear what a "stay" of that order would even do. Defendants complain they face irreparable harm because they must change how they charge fees, but the harms they allege are the result not of the Court's decision but of Defendants' apparent reliance on fees that have long been illegal due to the harm they themselves can cause consumers. It is *the TSR* that forbids Defendants' fee practices, not the Court's decision—and no "stay" of that decision will change what the law requires.

That alone is fatal to Defendants' efforts to show irreparable harm. Moreover, even if the Court's May 10 Order—rather than federal law itself—required Defendants to stop charging illegal fees, Defendants have failed to provide adequate evidence that that Order would cause the cascade of claimed harms they predict. The declarations of John Heath and Progrexion Chief Financial Officer Chad Wallace ("Declarants") are unsupported by documents or information

---

Court's decision pending appeal. They cannot meet that burden by pointing to other cases, in other circuits, in different postures, that ordered the different relief of a stay of proceedings.

that would allow this Court to evaluate the companies' true financial condition and resources. Indeed, the record and limited publicly available information about the companies[5] cast doubt on some of Declarants' claims. For example, Mr. Wallace asserts that the companies' combined cash on hand totals $16 million and neither company currently has access to operating credit; he also predicts that the March 10 Order will "deter creditors from lending additional capital" to the companies. ECF 510-2, ¶¶17-20. But Moody's Investor Service reported that in May 2020, Defendant PGX Holdings received a forbearance agreement from its creditors, and its then-majority owner, H.I.G. Progrexion, LLC, a subsidiary of private equity firm H.I.G. Capital Partners IV, L.P., lent it $15.9 million.[6] ECF 22. Recently, Progrexion's principal creditor, Prospect Capital Corporation, acquired a majority ownership interest in Progrexion (an interest it values at more than $58 million) and, on December 28, 2022, provided Progrexion an additional $15 million of credit and a commitment to lend another $30 million.[7] ECF 505. Mr. Wallace's declaration fails to mention this $45 million credit extension that Progrexion obtained just three months ago. There is no reason to believe that Progrexion's

[5] Neither Progrexion nor its prior majority owner, private equity fund H.I.G. Progrexion, LLC, is publicly traded, and public information about the companies' financial condition is limited.
[6] *See* Mar. 24, 2023 Decl. of Timothy Hanson (Exhibit 1), ¶8.
[7] *See id.*, ¶7.

owners will discontinue their financial support while the Court considers its judgment and during any subsequent appeal. And if Defendants' owners and creditors lack confidence in their legal position, that is no reason to shift the financial burden of Defendants' ongoing operations onto consumer victims, as Defendants beg this Court to allow it to do.

The information Defendants produced in discovery about their financial condition was limited. A description of the minimum documentation and information that would be necessary for the Bureau to respond to Mr. Heath's and Mr. Wallace's claims is contained in the attached declaration of Bureau forensic accountant, Timothy Hanson. Exhibit 1, ¶¶11-12. If the harms that Defendants claim were ever to become relevant, the Court should not credit Declarants' assertions without permitting the Bureau to take discovery about the companies' financial condition and resources.

### C. The balance of equities weighs against a stay.

"Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. Because Defendants have not satisfied the first two factors, the Court need

not reach this factor. If it does, the Court should conclude that the balance of equities also does not favor a stay.

For the same reason that the district court's decision does not cause Defendants harm, an order "staying" that decision would have no direct effect on the public or the Bureau. A "stay" would not change the law or Defendants' obligation to comply with it, so it would not directly undercut the Bureau's and the public's interest in ensuring Defendants' compliance with the TSR. A "stay" could, however, indirectly harm those interests—for instance, if Defendants believed (wrongly) that the stay gives them immunity for continuing to charge fees without following the TSR.[8]

Defendants claim a stay is in the public interest because there is consumer demand for credit repair.[9] Defs.' Mot. pp. 7-8. But the TSR does not prohibit credit

---

[8] The public interest calculus will firmly weigh against any post-judgment stay application, absent adequate security for the affected consumers' and the Bureau's interests. Fed. R. Civ. P. 62(b), (d).

[9] As the Court is well aware, the record contains ample evidence that Defendants' claimed credit repair "solutions" are illusory: only a small fraction of Lexington Law customers experienced the advertised "average" score increase over any timeframe, while many saw their score actually deteriorate. March 10 Order, p. 2 & n.8 (citing Lexington Law website claim that "89% of Past Lexington Law clients who saw a credit score increase had an average of 40 points in six months."); *see* Mot. Hr'g Tr. 174:25-179:7 (Sept. 20, 2022) (testimony of John DelPonti, Jr.); Pl.'s Resp. to Heath PC's Mot. for Partial Summary Judgment, ECF 230, Ex. 13 (Nov. 15, 2021 Report of Dr. Shane Frederick Rebutting Expert Reports of John DelPonti), pp. 10-18; Pl.'s Mot. to Exclude Testimony of John

repair—it just requires companies to defer taking fees until they actually help consumers. More to the point, this Court's decision is not the source of Defendants' obligation to comply with the TSR. That obligation comes from the rule itself.

## Conclusion

For all the foregoing reasons, the Court should deny Defendants' motion.

Dated: March 27, 2023

Respectfully submitted,

/s/ Tracy L. Hilmer
MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
*Enforcement Attorneys*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

DelPonti Related to His Oct. 25, 2021 Supp. and Rebuttal Reports, ECF 361, pp. 5-12 (filed under seal).

**CERTIFICATE OF COMPLIANCE WITH THE WORD-COUNT LIMIT**

I certify that the above motion contains 2,814 words (excluding the face sheet, signature block, and exhibits), according to the word count function of Microsoft Word, and complies with the word limit set by DUCivR 7-1(a)(4).

Dated: March 27, 2023

/s/ Tracy L. Hilmer
Tracy L. Hilmer
*Enforcement Attorney*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-7459
tracy.hilmer@cfpb.gov