MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
(202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov
1700 G Street, NW
Washington, DC 20552

*Attorneys for Plaintiff Bureau of
Consumer Financial Protection*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>*Plaintiff*,<br><br>v.<br><br>PROGREXION MARKETING, INC., *et al.*,<br><br>*Defendants*. | Case No. 2:19-cv-00298-BSJ |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY
THE COURT'S ORDER FOR INTERLOCUTORY APPEAL**

Plaintiff Bureau of Consumer Financial Protection ("Bureau") respectfully opposes Defendants' Motion to Certify the Court's Order for Interlocutory Appeal. Interlocutory appeal is available only in "extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action." *Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994) (citation omitted). This is not such a case. Certification of an interlocutory appeal at this stage would only increase the number, expense, and duration of the proceedings. Defendants may pursue an appeal upon final judgment, but there is no basis to permit an appeal now.

## BACKGROUND

On March 10, 2023, this Court issued an Order (ECF No. 508) granting the Bureau's Motion for Partial Summary Judgment on Count I Against All Defendants (ECF No. 257) ("March 10 Order"). Based on the undisputed facts, the Court held that Defendants offer services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating, and thus they are subject to the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(a)(2). March 10 Order at 6-8. The Court also held that Defendants have violated § 310.4(a)(2) since March 8, 2016 because they make no attempt to

comply with its express payment preconditions. *Id.* at 10-11. In doing so, the Court rejected Defendants' argument that they are exempt from compliance with § 310.4(a)(2) because they claim not to "promise results" to consumers (a claim that the Court aptly noted is contradicted by their advertising); rather, the Court correctly held that § 310.4(a)(2) does not offer any exception for telemarketers of credit repair who do not offer "promised results," as "romanette (ii) of the advance-fee provision assumes that a telemarketer promises a result of some sort," and "[i]t is reasonable to presume a practice is abusive if that practice consists of charging a customer money and then offering them no result of any kind in return." *Id.* at 11-12. Per the Bureau's request, and because the parties have not yet briefed the issue, the Court deferred a ruling on relief. *Id.* at 13.

On March 13, 2023, Defendants filed a motion asking the Court to certify two questions for interlocutory appeal. For the reasons discussed below, the Court should deny certification of both questions.

## ARGUMENT

Interlocutory appeals are the exception, not the rule. *Modern Font Applications LLC v. PetSmart, Inc.*, No. 2:19-cv-00613-BSJ, 2020 WL 9255402, at *2 (D. Utah June 25, 2020) (Jenkins, J.). Accordingly, "it is to be expected that permission will be denied frequently." *Id.* (citation omitted). An appeal should be

3

certified only where the district court determines that "(1) the order involves a controlling question of law; (2) there is a substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* (citing 28 U.S.C. § 1292(b)).

The party seeking certification bears the burden of demonstrating that interlocutory appeal is appropriate. *In re Americana Expressways*, No. 91-C-25142, 1995 WL 500526, at *1 (D. Utah Aug. 2, 1995). Defendants have not done so here.

**1. Certification of an interlocutory appeal prior to entry of judgment on Count I would not materially advance the litigation.**

"A primary purpose of § 1292(b) is to provide an opportunity to review an order when an immediate appeal would materially advance the ultimate termination of the litigation." *Kennecott*, 14 F.3d at 1495 (internal quotation marks and citation omitted). An appeal of the March 10 Order prior to entry of judgment on Count I would not do so. To the contrary, it would result in a piecemeal appellate process and impede the orderly resolution of this case.

Defendants' appeal is unlikely to succeed on the merits. As this Court correctly held, Defendants make no attempt to comply with § 310.4(a)(2) which, by its plain text, applies to them. Their arguments to the contrary are nothing more than a creative attempt to avoid responsibility for their years-long violation of the

4

law. It is likely, then, that following an appeal of the March 10 Order, if one were allowed, the parties would return to this Court in the same posture they are in now for a determination of relief on Count I.

A subsequent appeal of the Court's eventual relief order would then likely ensue, given the parties' significant disagreement about the scope of relief. For example, the Bureau submits that the Court should calculate restitution as net revenues from the sale of credit repair services, consistent with the Tenth Circuit's decisions in *FTC v. Kuykendall*, 371 F.3d 745, 764-66 (10th Cir. 2004) and *FTC v. Freecom Communications, Inc.*, 401 F.3d 1192, 1206-07 (10th Cir. 2005), as well as the Ninth Circuit's recent decision in *CFPB v. CashCall, Inc.*, 35 F.4th 734, 751 (9th Cir. 2022),[1] but Defendants will argue that the Court should apply a different methodology. *Compare* Aug. 9, 2022 Hr'g Tr., ECF No. 464, at 134:17-138:23, *with id.* at 181:13-184:5; *see also* 2d Am. Joint Proposed Pretrial Order, ECF No. 462, at 12. The Bureau anticipates that Defendants will also oppose the Bureau's proposed calculation of civil money penalties and its request for injunctive relief.

Given the potential for the Court's relief determinations to generate additional appellate questions, the most orderly and expeditious course of action

---

[1] The Bureau anticipates filing a motion for relief and entry of judgment on Count I by April 7, 2023.

would be to deny Defendants' motion and proceed with the determination of relief and entry of judgment on Count I. *See Modern Font Applications,* 2020 WL 9255402, at *2 (finding request for certification to be premature); *In re Black Iron, LLC,* No. 2:18-cv-00963-JNP, 2019 WL 13260423, at *1 (D. Utah Jan. 9, 2019) (denying motion for leave to appeal in order to "avoid an interlocutory appeal to … the Tenth Circuit, followed by a second appeal from a final judgment that would have to be heard by … the Tenth Circuit again").

2. **Defendants have not identified a controlling question of law for which there is a substantial ground for difference of opinion.**

To demonstrate that interlocutory appeal is appropriate, Defendants must identify a controlling question of law for which there is a substantial ground for difference of opinion. *Modern Font Applications*, 2020 WL 9255402, at *2. They have not done so.

"[A] controlling issue of law is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *Pack v. Investools, Inc.*, No. 2:09-cv-1042-TS, 2011 WL 2161098, at *2 (D. Utah June 1, 2011). A substantial ground for difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of

first impression are presented." *Roberts v. C.R. England, Inc.*, No. 2:12-cv-00302-RJS-BCW, 2018 WL 2386056, at *2 (D. Utah Apr. 24, 2018). "The mere fact that a specific issue has not been previously ruled on, or that the question presented is one of first impression, is not in itself sufficient to establish a substantial ground for difference of opinion." *Adams v. Burlington N. R.R. Co.*, 843 F. Supp. 686, 688 (D. Kan. 1994).

### a. Defendants' proposed certified question about § 310.4(a)(2)'s coverage improperly contradicts their prior admissions, mischaracterizes the disputed legal issue in this case, and does not present a substantial ground for difference of opinion.

The first question that Defendants propose for certification (at p. 1) is whether § 310.4(a)(2) "appl[ies] to a credit repair organization that does not represent its services remove derogatory information from, or improve, a person's credit history, credit record, or credit rating, or promise results to its clients." This question facially contradicts Defendants' prior admissions and does not accurately describe a disputed legal issue in this case. The Court should reject this attempt at revisionist history in the guise of framing a controlling question of law.

Defendants have asserted throughout this litigation, and the Bureau has

disputed, that they do not "promise results."[2] But Defendants have admitted, on multiple occasions, that "Progrexion markets Lexington Law and CreditRepair.com as providing services that will assist consumers in removing derogatory information from, or improving, the consumers' credit history, credit record, or credit rating." Compl., ECF No. 2, ¶ 111; Progrexion Answer, ECF No. 65, ¶ 111; Heath Answer, ECF No. 66, ¶ 111; Pl.'s Mot. for Partial Summ. J., SUMF ¶¶ 16, 27; Defs.' Opp'n to Pl.'s Mot. for Partial Summ. J., ECF No. 277, Resp. to SUMF ¶¶ 16, 27; Joint Proposed Pretrial Order, ECF No. 438, at 13, ¶ 14; *see also* Am. Compl., ECF No. 457, ¶ 112; Progrexion Am. Answer, ECF No. 458, ¶ 112 ("Defendants admit that Progrexion markets Lexington Law and CreditRepair.com as providing … credit repair services that may result in the removal of inaccurate, unfair, and/or unverifiable derogatory information from consumers' credit record and/or the improvement of consumers' credit rating."); Heath Am. Answer, ECF No. 459, ¶ 112 (same).

As the Court correctly noted in the March 10 Order, Defendants also do not dispute that Heath PC and CreditRepair.com "offer[] credit repair services for a

---

[2] Defendants' assertion in their motion (at p. 3) that "[t]he Bureau has not and cannot dispute that Defendants do not promise results" to consumers blatantly contradicts the record. *See* Pl.'s Opp'n to Heath's Mot. for Partial Summ. J. on Count I, ECF No. 230, at 15-20, 24-34, 63-65; Pl.'s Opp'n to Progrexion Mot. for Summ J., ECF No. 315, at 29-32.

8

fee."[3] Pl.'s Mot. for Partial Summ. J., SUMF ¶¶ 15, 26; Defs.' Opp'n to Pl.'s Mot. for Partial Summ. J. (failing to dispute SUMF ¶¶ 15, 26). To the extent Defendants are now trying to argue that they do not provide credit repair services—i.e. "services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating," 16 C.F.R. § 310.4(a)(2)—that argument represents an about-face from their previous admissions in this litigation. Defendants are bound by those admissions, and the Court should reject Defendants' attempt to walk them back. *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 677 (2010) ("Factual stipulations are binding and conclusive … the parties will not be permitted…to suggest, on appeal, that the facts were other than as stipulated[.]" (cleaned up)).

Additionally, the Bureau does not dispute that § 310.4(a)(2) only applies to Sellers and Telemarketers of goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating. Nor is this Court's Order to the contrary. March 10 Order at 6-8. Thus, this issue is not actually disputed and therefore is inappropriate for interlocutory certification.

---

[3] "[A]ccording to Lexington Law's website: 'Credit repair is the process of improving a poor score by addressing or removing negative items that could be listed on your reports inaccurately.'" March 10 Order at 7.

Finally, there is no ground for substantial difference of opinion with respect to whether § 310.4(a)(2) applies to a credit repair company that purports not to offer "promised results" as Defendants characterize that phrase—*i.e.*, the guarantee of a particular outcome. This Court's plain language interpretation of § 310.4(a)(2) is correct, and no court has ever adopted a contrary interpretation. Defendants misrepresent the rulemaking and enforcement history of § 310.4(a)(2) in order to manufacture disagreement with the March 10 Order. But the Court's ruling is consistent with how the Bureau and the Federal Trade Commission ("FTC") have consistently interpreted § 310.4(a)(2).

As detailed in the Bureau's summary judgment briefing, the FTC's statements about § 310.4(a)(2), both during and after its promulgation, reflect the FTC's intention to impose a payment restriction on all telemarketed credit repair services, not just those guaranteeing specific results. Pl.'s Mot. for Partial Summ. J. at 4-8; Pl.'s Opp'n to Heath's Mot. for Partial Summ. J. at 41-45. For example, in proposing § 310.4(a)(2), the FTC stated that the provision, if enacted, would "restrict[] the telemarketing of credit repair services" and that

> two events must occur before payment can be requested or received for these services: first, either the term of the contract or the time frame in which the seller has represented the goods or services will be provided has expired; and second, the seller has provided the purchaser with documentation showing that the promised results have been achieved.

60 Fed. Reg. 8313, 8318 (Feb. 14, 1995). The FTC reiterated its view on many occasions that § 310.4(a)(2) applies to all telemarketed credit repair services, including in its brief as intervenor in *Tennessee v. Lexington Law*, where it explained that § 310.4(a)(2) "prohibits a telemarketer from requesting or receiving payment for a credit repair service until six months after the promised 'credit repair' has been achieved." Ex. 19 to Pl.'s Opp'n to Heath's Mot. for Partial Summ. J., ECF No. 230-8, at 6.

Rather than limiting § 310.4(a)(2)'s coverage, the Revised Notice of Proposed Rulemaking that Defendants cite reflects the FTC's intention to *expand* its coverage to include services represented to remove derogatory information from a person's credit record *in addition* to services represented to improve a person's credit history, credit record, or credit rating. 60 Fed. Reg. 30,406, 3,415 (June 8, 1995). This change is reflected in the final rule, which applies to "services represented to remove derogatory information from, *or* improve, a person's credit history, credit record, or credit rating." 16 C.F.R. § 310.4(a)(2) (emphasis added).

Nor did the FTC, or the Middle District of Tennessee, give its "imprimatur" to Defendants' fee practices in the settlement agreement in *Tennessee v. Lexington Law*. As described above, the FTC, which intervened in that case for the limited purpose of addressing certain of Lexington Law's defenses, took the same position

11

on the provision's coverage as the Bureau and this Court. And in denying Lexington Law's motion to dismiss, the Tennessee court agreed that "the FTC properly interpreted the [Telemarketing] Act to apply to Defendant's conduct." *Tennessee v. Lexington Law Firms*, No. 3:96-0344, 1997 WL 367409, *6 (M.D. Tenn. May 14, 1997).

The Bureau, meanwhile, has interpreted § 310.4(a)(2) consistently with the FTC and this Court's March 10 Order. *See* Pl.'s Opp'n to Heath's Mot. for Partial Summ. J. at 51 (citing civil complaints filed in Bureau enforcement actions). The Bureau's position in *Prime Marketing Holdings* was the same as it has been here and in every other case the Bureau has brought under § 310.4(a)(2). In *Prime Marketing Holdings*, the Bureau alleged that:

> [b]ecause PMH is a telemarketer, seller, or both, PMH's request for and collection of fees for credit repair services before providing consumers with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved, violates the TSR.[4]

Ex. 1, Complaint, *CFPB v. Prime Mktg. Holdings*, No. 2:16-cv-07111-BRO (C.D. Cal. Sept. 22, 2016), ¶ 62. The court held that these allegations stated a claim under § 310.4(a)(2). *CFPB v. Prime Mktg. Holdings*, No. 2:16-cv-

---

[4] The Bureau amended its complaint in *Prime Marketing Holdings*, but its articulation of the elements of § 310.4(a)(2) did not change.

12

07111-BRO, 2016 WL 10516097, at *6-7 (C.D. Cal. Nov. 15, 2016).

In the portion of the Bureau's brief from *Prime Marketing Holdings* that Defendants selectively quote, the Bureau rebutted the defendant's assertion that it did not promise results by citing to contrary facts in the complaint. Ex. 2, Pl.'s Opp'n to Mot. to Dismiss, *CFPB v. Prime Mktg. Holdings*, at 23. Though the Bureau had pleaded facts relating to guarantees in support of separate claims under 16 C.F.R. § 310.3, the Bureau was clear about what is required under § 310.4(a)(2): "[§ 310.4(a)(2)] prohibits companies from charging fees to consumers for credit repair before the consumer is provided a consumer report showing the promised results, and that report must be issued more than six months after the results were achieved." *Id.* at 3; *see also* Ex. 3, Pl.'s Opp'n to Mot. for Recons., *CFPB v. Prime Mktg. Holdings*, at 5 ("The advance fee ban applies to all telemarketers who offer credit repair services.").

### b. Defendants' proposed certified question about § 310.4(a)(2)(i) is not controlling and does not present a substantial ground for difference of opinion.

The second question that Defendants propose for certification has to do with whether their billing model complies with § 310.4(a)(2)(i). This question is not controlling because the Court held that Defendants do not comply with §

310.4(a)(2)(ii), nor is there a substantial ground for difference of opinion on romanette (i)'s meaning or application.

Though the resolution of an issue need not *necessarily* terminate an action to be controlling, "the likelihood that resolution of an issue would terminate an action is, at least, one important factor in assessing whether a legal question may be controlling." *Haymount Urgent Care PC v. GoFund Advance, LLC*, No. 22-cv-1245 (JSR), 2022 WL 3677931, at *2 (S.D.N.Y. Aug. 25, 2022); *see also Pomeroy v. Utah State Bar*, No. 2:21-CV-00219-TC-JCB, 2022 WL 3716940, at *3 (D. Utah Aug. 29, 2022) (question of law not controlling where, even if the Tenth Circuit found in the defendant's favor, another theory of liability would remain). Here, the Court found, based on the undisputed facts, including Defendants' own admissions, that Defendants' monthly billing structure violates the plain language of romanette (ii). March 10 Order at 11. It is thus exceedingly unlikely that an appellate ruling as to whether they *also* violate romanette (i) would alter their liability.

Moreover, Defendants have not shown that there are substantial grounds for a difference of opinion as to the application of romanette (i). Defendants once again cite *DuCharme v. Heath*, No. 10-cv-2763, 2010 WL 5211502 (N.D. Cal. Dec. 16, 2010), for the proposition that their billing complies with § 310.4(a)(2)(i).

But as the Bureau and the Court have previously explained, *DuCharme* deals with a different law and is inapposite here.[5]

## CONCLUSION

Defendants' request to bypass the ordinary process for obtaining appellate review fails to meet the exacting standards required for interlocutory appeal certification under § 1292(b). The Court should deny Defendants' motion.

Dated: March 27, 2023                    Respectfully submitted,

/s/ Alicia Ferrara
MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
*Enforcement Attorneys*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov

---

[5] Pl.'s Opp'n to Heath's Mot. for Partial Summ. J., at 41 n.11; Pl.'s Reply in Support Mot. for Partial Summ. J. on Count I, ECF No. 283, at 17 n. 9; Sept. 20, 2022 Hr'g Tr., ECF No. 516, 182:18-23.

15

*Attorneys for Plaintiff Bureau of
Consumer Financial Protection*

## CERTIFICATE OF COMPLIANCE WITH THE WORD-COUNT LIMIT

I certify that the above memorandum complies with the word-count limit of 3,100 words set by DUCivR 7-1(a)(4)(D). According to the word count function of Microsoft Word, the memorandum contains 3,084 words, excluding the face sheet, table of contents, table of authorities, signature block, and exhibits.

Dated: March 27, 2023
/s/ Alicia Ferrara
ALICIA FERRARA
*Enforcement Attorney*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-9778
alicia.ferrara@cfpb.gov