IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION, | Case No.  2:19-cv-00298-BSJ |
| *Plaintiff*, | |
| v. | |
| PROGREXION MARKETING, INC., *et al.*, | |
| *Defendants*. | |

**[PROPOSED] ORDER AWARDING PLAINTIFF MONETARY AND
INJUNCTIVE RELIEF, ASSESSING
CIVIL MONEY PENALTIES, AND ENTERING
FINAL JUDGMENT AGAINST ALL DEFENDANTS ON COUNT I**

Plaintiff Bureau of Consumer Financial Protection ("Bureau") has filed a Motion for Award of Monetary and Injunctive Relief, Assessment of Civil Money Penalties, and Entry of Final Judgment Against All Defendants on Count I ("Motion"). After considering the Bureau's briefing in support of the Motion and the entire record in the matter, the Court hereby orders that the Bureau's Motion is GRANTED. The Court makes the following findings and enters the following ORDER:

## FINDINGS

### Procedural History

1.      This is an action by the Bureau under Sections 1031 and 1036 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531 and 5536, and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. §§ 310.3 and 310.4. The Amended Complaint (ECF 457) seeks consumer redress, permanent injunctive relief, and civil money penalties against all Defendants for charging consumers unlawful advance fees in the connection with credit repair services, and against the Progrexion Defendants—PGX Holdings, Inc., Progrexion Marketing, Inc., Progrexion Teleservices, Inc., eFolks, LLC, and CreditRepair.com, Inc.—for marketing those services through deceptive representations.

2.      On March 10, 2023, the Court issued an order granting partial summary judgment to the Bureau on Count I (ECF 508) (the "March 10 Order"), which relates to Defendants' charging of unlawful advance fees.[1] The March 10 Order held that Defendants have violated the TSR, 16 C.F.R. § 310.4(a)(2), since March 8, 2016. That order contained no ruling on the remedies to be imposed on Defendants for their fee violations.

3.      The Court now decides what injunctive relief, consumer redress, and civil money penalties are warranted for Defendants' Count I violations.

### Findings of Fact

4.      This Court has jurisdiction over the subject matter of this case and has jurisdiction over all the parties thereto, and venue in this district is proper.

5.      In the March 10 Order, the Court granted the Bureau's Motion for Partial Summary Judgment Against All Defendants on Count I of the Amended Complaint and held that all Defendants violated 16 C.F.R. § 310.4(a)(2) by charging consumers unlawful advance fees. The Court's findings of fact in the March 10 Order are hereby incorporated by reference in this Order.

---

[1] Counts II-V (against the Progrexion Defendants), which relate to the Progrexion Defendants' deceptive marketing representations, remain pending at this time. There are no remaining claims against Defendant Heath PC.

6.      Entry of this Order is in the public interest, and the Court has determined that there is no just reason to delay entry of final judgment against all Defendants on Count I of the Bureau's Amended Complaint.

## Violations of 16 C.F.R. § 310.4(a)(2)

7.      Defendants are telemarketers within the meaning of the TSR, 16 C.F.R. § 310.2(ff).

8.      Defendants provide services represented to remove derogatory information from, or improve, consumers' credit histories, credit records, or credit ratings.

9.      Since March 8, 2016, Defendants have charged fees to their credit repair customers on a monthly basis ("Service Fees"), indefinitely, until a customer affirmatively terminates the agreement (or the agreement expires, in those states prohibiting indefinite contracts).

10.     Since March 8, 2016, Defendants have also charged fees to their credit repair customers during the enrollment process ("Initiation Fees"). Defendants' Initiation Fees are a prerequisite to enrolling in Lexington Law or CreditRepair.com credit repair services. Defendants' Initiation Fees are, therefore, fees for credit repair services that are covered by 16 C.F.R. § 310.4(a)(2).

11.     Defendants routinely requested and received payment of Service Fees and Initiation Fees for their credit repair services before providing consumers with

documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results were achieved, such report having been issued more than six months after the results were achieved.

12.     Defendants' fee practices violate the express language of 16 C.F.R. § 310.4(a)(2).

13.     By stipulation, the Progrexion Defendants are to be treated as a single company for purposes of liability in this case and are jointly and severally liable for any monetary relief, civil penalty, or injunction ordered against any of them.[2]

14.     The Progrexion Defendants and Heath PC are closely related businesses. As detailed in the March 10 Order, a PGX Holdings subsidiary owns the trademark "Lexington Law" and licenses it to Heath PC, and Heath PC has paid more than 80% of its total revenue to Progrexion entities.[3] Heath PC and the Progrexion Defendants jointly market and sell Lexington Law credit repair services, were both engaged in requesting and receiving consumer payments in violation of 16 C.F.R. § 310.4(a)(2), and shared in the revenues generated through that conduct. Consequently, Heath PC and Progrexion are concurrently liable for Lexington Law's violations of 16 C.F.R. § 310.4(a)(2).

---

[2] ECF 462, p. 13.
[3] ECF 508, pp. 5-6.

15.    The Progrexion Defendants only, and not Heath PC, are liable for CreditRepair.com's violations of 16 C.F.R. § 310.4(a)(2).

16.    The Court considered all of the factors listed in 12 U.S.C. § 5565(c)(3)—the size of the Defendants' financial resources and whether they acted in good faith; the gravity of the violations; the severity of the risks to or losses of the affected consumers; the history of previous violations, and such other matters as justice may require—and finds that Defendants have not demonstrated grounds to mitigate the civil penalties in this case.

### Remedies

17.    The CFPA empowers this Court to grant any appropriate legal or equitable relief with respect to a violation of Federal consumer financial law, including the refund of moneys, restitution, injunctive relief, and civil money penalties.[4]

18.    Absent a permanent injunction, there is a reasonable likelihood that Defendants will continue to engage in the conduct found unlawful in the March 10 Order or similar misconduct. The Defendants' unlawful conduct justifies permanent injunctive relief.

19.    Defendants admitted in interrogatory responses that between March 8, 2016 and July 31, 2020, the gross amount paid by Lexington Law customers for credit

---

[4] 12 U.S.C. § 5565.

repair services, less refunds, was $1,670,563,000, and the gross amount paid by CreditRepair.com customers for credit repair services, less refunds, was $237,516,000. The Court finds that these are the total Service Fees received by the Defendants between March 8, 2016 and July 31, 2020.

20.    The Bureau established through competent evidence that between August 1, 2020 and March 31, 2023, a reasonable estimate of the gross amount paid by Lexington Law customers in credit repair Service Fees, less refunds, is at least $1,002,384,832 and a reasonable estimate of the gross amount paid by CreditRepair.com customers in credit repair Service Fees, less refunds, is at least $121,465,248.

21.    The Bureau also established through competent evidence that a reasonable estimate of the gross amount, less refunds, that Defendants collected in credit repair Service Fees for each month that they continued their unlawful billing practices after March 2023 is $31,324,526 for Lexington Law credit repair services and $3,795,789 for CreditRepair.com credit repair services.

22.    The Bureau also established through competent evidence that between March 8, 2016 and July 31, 2020, Defendants collected $47,067,918 in Initiation Fees for Lexington Law credit repair services and $4,777,215 in Initiation Fees for CreditRepair.com credit repair services.

23.     The Bureau also established through competent evidence that a reasonable estimate of the gross amount collected between August 1, 2020 and March 31, 2023 from consumers for Lexington Law credit repair Initiation Fees, less refunds, is approximately $25,427,328, and a reasonable estimate of the gross amount collected from consumers for CreditRepair.com credit repair Initiation Fees, less refunds, is approximately $2,975,008.

24.     The Bureau also established through competent evidence that a reasonable estimate of the gross amount, less refunds, that Defendants collected in credit repair Initiation Fees for each month that they continued their unlawful billing practices after March 2023 is $794,604 for Lexington Law credit repair services and $92,969 for CreditRepair.com credit repair services.

25.     Therefore, the total financial harm to Lexington Law customers from Defendants' violations since March 8, 2016 is [$_____]. All Defendants are jointly and severally liable for this amount.

26.     The total financial harm to CreditRepair.com customers from the Progrexion Defendants' violations since March 8, 2016 is [$_____]. The Progrexion Defendants are jointly and severally liable for this amount.

27.    The Bureau is entitled to a judgment for consumer redress in the amounts stated in Paragraphs 25 and 26 as legal restitution or refunds, which shall be used to compensate Affected Consumers (defined below).

28.    The Bureau is entitled to, at least, First Tier civil money penalties of $6,813 against the Progrexion Defendants and against Heath PC for each day they violated 16 C.F.R. § 310.4(a)(2) since March 8, 2016, for each credit repair brand.

29.    Each set of Defendants is separately liable for civil money penalties arising from their law violations. The Progrexion Defendants owe a civil money penalty for the 16 C.F.R. § 310.4(a)(2) violations of both Lexington Law and CreditRepair.com. Heath PC owes a civil money penalty only for the 16 C.F.R. § 310.4(a)(2) violations of Lexington Law.

30.    The Court finds that Defendants' 16 C.F.R. § 310.4(a)(2) violations lasted [_] days.

31.    The Court therefore finds that the Bureau is entitled to a civil money penalty of [$_____] against the Progrexion Defendants, jointly and severally.

32.    The Court also finds that the Bureau is entitled to a separate civil money penalty of [$_____] against Heath PC.

## ORDER

### Definitions

The following definitions apply to this Order:

33.   "Affected Consumers" includes any consumer who made a payment for Lexington Law or CreditRepair.com credit repair services, including for the initiation of those services, from March 8, 2016 through the Effective Date.

34.   "Board" means the duly-elected and acting Board of Directors of PGX Holdings, Inc.

35.   "Clearly and prominently" means that:

   a.   In textual communications, the disclosure must be of a type size and location sufficiently noticeable for an ordinary consumer to read and comprehend it, in print that contrasts with the background on which it appears;

   b.   In communications disseminated orally or through audible means, the disclosure must be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it; and

   c.   In all instances, the disclosure must be presented before the consumer incurs any financial obligation, in an understandable language and syntax, and with nothing contrary to, inconsistent with, or in

mitigation of the disclosures used in any communication with the consumer.

36.   "Consumer" means any individual or an agent, trustee, or representative acting on behalf of an individual. 12 U.S.C. § 5481(4).

37.   "Consumer report" shall have the same meaning as in the Fair Credit Reporting Act, 15 U.S.C. §1681a(d).

38.   "Credit repair service" means any good or service represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating, whether or not bundled or otherwise sold in combination with other goods or services.

39.   "Defendants" means the Progrexion Defendants and Heath PC, and their successors, transferees, and assigns.

40.   "Effective Date" means the date on which this Order is entered on the docket.

41.   "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegate.

42.   "Heath PC" means John C. Heath, PC, Attorney at Law, d/b/a Lexington Law, and its successors, transferees, and assigns.

43.     "Heath PC's Executives" means Heath PC's Members, shareholders, Directing Attorney(s), and Managing Attorney(s).

44.     "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

45.     "Progrexion Defendants" means PGX Holdings, Inc., Progrexion Marketing, Inc., Progrexion Teleservices, Inc., eFolks, LLC, and CreditRepair.com, Inc., and their successors, transferees, and assigns.

46.     "Progrexion Defendants' Executives" means the Board and the Chief Executive Officer, President, and most senior executive officer in charge of the operations of each Progrexion Defendant.

47.     "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against any Defendant based on substantially the same facts as described in Count I of the Amended Complaint.

48.     "Seller" shall have the same meaning as in the TSR, 16 C.F.R. § 310.2(dd).

49.     "Telemarketer" shall have the same meaning as in the TSR, 16 C.F.R. § 310.2(ff).

50.     "Telemarketing" shall have the same meaning as in the TSR, 16 C.F.R. § 310.2(gg).

## CONDUCT RELIEF

## I

**IT IS ORDERED** that:

51.     For as long as any Defendant is a seller or telemarketer, Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who have actual notice of this Order, whether acting directly or indirectly, are permanently restrained, enjoined, and prohibited from requesting or receiving payment of any fee or consideration for credit repair services until:

   a.  The time frame in which Defendants have represented all of their credit repair services will be provided to that consumer has expired; and

   b.  Defendants have provided the consumer with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved.

52.   For ten years from the Effective Date, if any Defendant is a seller or telemarketer, Defendants and their officers, agents, servants, employees, and

attorneys, and all other persons in active concert or participation with them who have actual notice of this Order, whether acting directly or indirectly, are restrained, enjoined, and prohibited from performing credit repair services on behalf of any consumer unless and until they have entered into a written agreement with that consumer that clearly and prominently states: (a) the credit repair services Defendants will perform for the consumer; and (b) the time frame in which Defendants will perform all of the specified credit repair services. The time frame stated in the agreement must be a fixed term and shall not continue on a periodic or month-to-month basis.

53.     For ten years from the Effective Date, if any Defendant is a seller or telemarketer, Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who have actual notice of this Order, whether acting directly or indirectly, are restrained, enjoined, and prohibited from performing credit repair services on behalf of a consumer until they have entered into a written agreement with that consumer that clearly and prominently: (a) states the result (or results) of the credit repair services that Defendants will seek to achieve for the consumer; (b) states the specific amount the consumer must pay if the result is achieved; (c) informs the consumer that they will not be billed for services, and no payment is due, unless

and until Defendants provide the consumer with a consumer report demonstrating that the result has been achieved for the consumer, such report having been issued more than six months after the result was achieved; and (d) specifies when the payment for services will be due after the requirements of Paragraph 51(a) and (b) have been met, which shall be no sooner than ten calendar days after payment is requested.

## MONETARY PROVISIONS

## II

### Order to Pay Redress

**IT IS FURTHER ORDERED** that:

54.     A judgment for consumer redress is entered in favor of the Bureau as follows for Defendants' violations of 16 C.F.R. § 310.4(a)(2):

    a.   [$_____] against the Progrexion Defendants and Heath PC, jointly and severally, for Lexington Law's violations; and

    b.   [$_____] against the Progrexion Defendants, jointly and severally, for CreditRepair.com's violations.

55.     Within 10 days of the Effective Date, the Progrexion Defendants and Heath PC must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent,

and according to the Bureau's wiring instructions, [$_____] in full satisfaction of the judgment ordered in Paragraph 54(a) of this Section.

56.    Within 10 days of the Effective Date, the Progrexion Defendants must also pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, [$_____] in full satisfaction of the judgment ordered in Paragraph 54(b) of this Section.

57.    Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or the Bureau's agent according to applicable statutes and regulations to be used for redress for Affected Consumers, including legal restitution or the refund of moneys, and for any attendant expenses for the administration of any such redress.

58.    Defendants must cooperate fully to help the Bureau determine the identity and location of, and the amount of injury sustained by, each Affected Consumer. Defendants must provide such information in their or their agents' possession or control within 14 days of receiving a written request from the Bureau.

59.    If the Bureau determines, in its sole discretion, that providing redress to consumers is wholly or partially impracticable or if funds remain after the administration of redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury. Defendants will have no right to challenge the Bureau's

choice of remedies under this Section, and will have no right to contest the manner of distribution chosen by the Bureau.

60.    Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

### III

### Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED** that:

61.    Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law found in the Court's March 10 Order, and taking into account the factors in 12 U.S.C. § 5565(c)(3), the Defendants must pay civil money penalties to the Bureau as follows:

      a.  The Progrexion Defendants, jointly and severally, must pay [$_____]; and

      b.  Heath PC must pay [$_____].

62.    Within 10 days of the Effective Date, Defendants must pay their respective civil penalty amounts set forth in Paragraph 61 by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

63.   The civil money penalties paid under this Order will be deposited in the

Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12

U.S.C. § 5497(d).

64.   Defendants must treat the civil money penalties paid under this Order as

penalties paid to the government for all purposes. Regardless of how the Bureau

ultimately uses those funds, Defendants may not:

>    a.   Claim, assert, or apply for a tax deduction, tax credit, or any other tax
>
>    benefit for any civil money penalty paid under this Order; or
>
>    b.   Seek or accept, directly or indirectly, reimbursement or
>
>    indemnification from any source (other than any of PGX Holdings,
>
>    Inc.'s parent companies, shareholders, or former shareholders),
>
>    including but not limited to payment made under any insurance
>
>    policy, with regard to any civil money penalty paid under this Order.

## IV

### Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

65.   In the event of default on any Defendant's obligations to make payment

under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will

accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

66.     Defendants relinquish all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to the Defendants.

67.     Under 31 U.S.C. § 7701, each Defendant, unless it already has done so, must furnish to the Bureau its taxpayer identification numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

68.     Within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Defendant must notify the Enforcement Director of the final judgment, order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalties in any Related Consumer Action, Defendants may not argue that Defendants are entitled to, nor may any Defendant benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalties paid in this action or because of any payment that the Bureau

makes from the Civil Penalty Fund ("Penalty Offset"). If the court in any Related

Consumer Action grants such a Penalty Offset to any Defendant, the Defendant

must, within 30 days after entry of a final order granting the Penalty Offset, notify

the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury. Such a

payment will not be considered an additional civil money penalty and will not

change the amount of the civil money penalties imposed in this action.

## COMPLIANCE PROVISIONS

### V

### Role of the Board and Executives

**IT IS FURTHER ORDERED** that:

69.    The Progrexion Defendants' Executives and Heath PC's Executives must

review all reports required by this Order, and any submissions to the Bureau prior

to such submission.

70.    The Progrexion Defendants' Executives will have the ultimate responsibility

for ensuring that the Progrexion Defendants comply with this Order.

71.    Heath PC's Executives will have the ultimate responsibility for ensuring that

Heath PC complies with this Order.

72.    Ninety days after the Effective Date, one year after the Effective Date, and

on the same date each year thereafter for the next nine years, the Progrexion

Defendants and Heath PC must submit to the Enforcement Director an accurate written compliance progress report (Compliance Report), the accuracy of which is sworn to under penalty of perjury by the Progrexion Defendants' Executives and Heath PC's Executives, and which, at a minimum:

a. Describes the steps that the Progrexion Defendants' Executives and Heath PC's Executives have taken to reasonably assess whether Defendants are complying with each applicable paragraph and subparagraph of the Order;

b. Describes in detail whether and how each Defendant has complied with each applicable paragraph and subparagraph of the Order, including the manner of verification of such compliance and any corrective actions taken to remedy potential non-compliance with the applicable requirement, paragraph, or subparagraph;

c. Describes in detail whether any Defendant is engaged in telemarketing, directly or indirectly, and provides a list of any active state telemarketing registrations or licenses for any Defendant;

d. Identifies any telemarketer with whom any Defendant contracts to provide advertising, marketing, or lead generation services; and

e.  Attaches a copy of each Order Acknowledgment obtained under Section VII, unless previously submitted to the Bureau.

73.   In each instance that this Order requires the Progrexion Defendants' Executives to ensure adherence to, or perform, certain obligations of the Progrexion Defendants, the Progrexion Defendants' Executives must:

a.  Authorize whatever actions are necessary for the Progrexion Defendants to assess whether the Progrexion Defendants are complying with each applicable paragraph and subparagraph of the Order;

b.  Authorize whatever actions, including corrective actions, are necessary for the Progrexion Defendants to fully comply with each applicable paragraph and subparagraph of the Order; and

c.  Require timely reporting by management to the Progrexion Defendants' Executives on the status of compliance obligations.

74.   In each instance that this Order requires Heath PC's Executives to ensure adherence to, or perform, certain obligations of Heath PC, Heath PC's Executives must:

    a. Authorize whatever actions are necessary for Heath PC to assess whether Heath PC is complying with each applicable paragraph and subparagraph of the Order;

    b. Authorize whatever actions, including corrective actions, are necessary for Heath PC to fully comply with each applicable paragraph and subparagraph of the Order; and

    c. Require timely reporting by management to Heath PC's Executives on the status of compliance obligations.

## VI

## Reporting Requirements

**IT IS FURTHER ORDERED** that:

75. Each Defendant must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against any Defendant; or a change in a Defendant's name or address. The Defendant must provide this notice, if practicable, at least 30 days before the development, but in any case, no

later than 14 days after the development. Within 30 days of the Effective Date, each Defendant must:

      a.  Designate at least one telephone number and email, physical, and postal address as points of contact, which the Bureau may use to communicate with Defendant;

      b.  Identify all businesses for which Defendant is the majority owner, that Defendant directly or indirectly controls, by all of their names, telephone numbers, and electronic, physical, and postal addresses; and

      c.  Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

76.    Defendants must report any change in the information required to be submitted under Paragraph 75 at least 30 days before the change, or as soon as practicable after learning about the change, whichever is sooner.

77.    Within 30 days of a request by the Bureau, Defendants shall provide the Bureau with all documents and data necessary to verify the representations made in a Compliance Report.

# VII

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that:

78.    Within 30 days of the Effective Date, each Defendant must deliver a copy of this Order to each of its board members, executive officers, and attorneys, as well as to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

79.    For ten years from the Effective Date, each Defendant must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section VI, any future board members, executive officers, and attorneys before they assume their responsibilities, as well as to any managers, employees, service providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

80.    Each Defendant must secure and retain for ten years a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. §§ 7001-7006, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

81.    Ninety days after the Effective Date, each Defendant must submit to the Bureau a list of all persons and their titles to whom this Order was delivered through that date under this Section and a copy of all signed and dated statements acknowledging receipt of this Order under Paragraph 80.

# VIII

## Recordkeeping

**IT IS FURTHER ORDERED** that:

82.    For at least ten years from the Effective Date, Defendants must create, or if already created, must retain the following business records:

  a.   All documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau;

  b.   Recordings of all telephone calls discussing credit repair services with prospective customers prior to enrollment;

  c.   All telephone scripts related to credit repair services;

  d.   Telemarketing registrations and licenses and applications for such registrations and licenses;

  e.   All contracts with a telemarketer for advertising or marketing services;

     f.   Audited financial statements for all Defendants; and

     g.  All consumer complaints and refund requests (whether received directly or indirectly, such as through a third party), and any responses to those complaints or requests.

Defendants must make these materials available to the Bureau within 30 days of the Bureau's request.

## IX

## Notices

**IT IS FURTHER ORDERED** that:

83.    Unless otherwise directed in writing by the Bureau, Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "CFPB v. Progrexion Marketing, Inc., et al., Case No. 2:19-cv-00298-BSJ," and send them by overnight courier or first-class mail to the below address and contemporaneously by email to CFPB_Enforcement_Compliance@cfpb.gov:

     Assistant Director for Enforcement
     Consumer Financial Protection Bureau
     ATTENTION: Office of Enforcement
     1700 G Street, N.W.
     Washington D.C. 20552

# X

## Compliance Monitoring

**IT IS FURTHER ORDERED** that, to monitor Defendants' compliance with this Order:

84.     Within 14 days of receipt of a written request from the Bureau, Defendants must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

85.     Defendants must permit Bureau representatives to interview any employee or other person affiliated with Defendants who has agreed to such an interview regarding compliance with this Order. The person interviewed may have counsel present.

86.     Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.

# XI

## Transfer of Assignment of Operations

**IT IS FURTHER ORDERED** that:

87.     Should Defendants seek to transfer or assign all or part of their operations that are subject to this Order, Defendants must, as a condition of sale, obtain the

written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

## XII

## Retention of Jurisdiction

**IT IS FURTHER ORDERED** that:

88.    The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

## XIII

## ENTRY OF FINAL JUDGMENT

89.    Pursuant to Fed. R. Civ. P. 54(b), having found that no just reason for delay exists, this Court directs the entry of final judgment as to all Defendants, as provided in this Order, on Count I of the Bureau's Amended Complaint.

**IT IS SO ORDERED**.

DATED this ___ day of _____, 20__.

BY THE COURT:

_____

BRUCE S. JENKINS
United States Senior District Judge