MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
(202) 435-9202
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov
1700 G Street, NW
Washington, DC 20552
*Attorneys for Plaintiff Bureau of
Consumer Financial Protection*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>*Plaintiff*,<br><br>v.<br><br>PROGREXION MARKETING, INC., *et al.*,<br><br>*Defendants*. | Case No.  2:19-cv-00298-BSJ<br><br>Redacted Public Version |

**PLAINTIFF'S EVIDENTIARY OBJECTIONS TO DEFENDANTS'
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF
AND JUDGMENT**

Pursuant to DUCivR 7-1(b), Plaintiff Bureau of Consumer Financial Protection ("Bureau") objects to the admissibility, in whole or in part, of six exhibits filed in support of Defendants' Response to Plaintiff's Motion for Relief and Judgment (ECF 552). Exceptional circumstances warrant the filing of the Bureau's objections in a separate document due to Defendants' numerous and prejudicial violations of the Federal Rules of Evidence and the Federal Rules of Civil Procedure. Defendants (1) rely extensively on summary calculations for which they have not produced the underlying data to the Bureau; (2) misleadingly cite to Fed. R. Civ. P. 30(b)(6) deposition testimony about superseded datasets that the Bureau did not rely on in calculating its restitution estimate; and (3) attempt an end-run around Fed. R. Evid. 702 by offering re-packaged expert testimony through unqualified lay witnesses.

The Court should deem inadmissible and disregard, in whole or in part as detailed below, Defendants' Exhibits 2, 4, 5, 6, and 7. For the reasons explained below, the Bureau reserves its objections to Defendants' Exhibit 3. The Bureau's objections are summarized in following chart:

| Evidence Objected To | Grounds for Objection |
|---|---|
| Defs.' Ex. 2, Declaration of Gregrey Ralphs ("Ralphs Decl."), Apr. 25. | Fed. R. Evid. 1006; Fed. R. Civ. P. 37(c)(1) (failure to supplement response to RFP No. 54 to Progrexion and RFP No. 52 to Heath P.C.). |

2

| | |
|---|---|
| | Mr. Ralphs summarizes financial data that was never provided to the Bureau. |
| Defs.' Ex. 3, Declaration of Trung Khanh Lam ("Lam Decl."), Apr. 25, 2023. | Fed. R. Evid. 1006; Fed. R. Civ. P. 37(c)(1) (failure to supplement response to RFP Nos. 18, 19, and 54 to Progrexion and RFP Nos. 41 and 52 to Heath P.C.). <br><br> Mr. Lam summarizes customer data that was provided to the Bureau on May 3, 2023. The Bureau has not had the chance to thoroughly analyze this data and reserves its objections to Mr. Lam's declaration. |
| Defs.' Ex. 4, Excerpts from the Deposition of Trung Khanh Lam ("Lam Dep. Excerpt"), Apr. 28, 2021. | Fed. R. Evid. 401, 402, 403. <br><br> In the cited excerpt, Mr. Lam testifies about data that the Bureau did not use to calculate its restitution estimate and that was superseded by subsequent data productions. |
| Defs.' Ex. 5, Declaration of Chad Wallace ("Wallace Decl."), Apr. 25, 2023, ¶¶ 20, 21. | Fed. R. Evid. 401, 402, 403, 701, 702, 1006; Fed. R. Civ. P. 37(c)(1) (failure to supplement response to RFP No. 54 to Progrexion and RFP No. 52 to Heath P.C.). <br><br> Mr. Wallace summarizes financial data that was not produced to the Bureau and provides valuation testimony that is unsubstantiated and improper for a lay witness. |
| Defs.' Ex. 6, Declaration of John Heath ("Heath Decl."), Apr. 25, 2023, ¶¶ 16, 17. | Fed. R. Evid. 401, 402, 403, 701, 702, 1006; Fed. R. Civ. P. 37(c)(1) (failure to supplement response to RFP No. 54 |

| | to Progrexion and RFP No. 52 to Heath P.C.). |
| --- | --- |
| | Mr. Heath summarizes financial data that was not produced to the Bureau and provides valuation testimony that is unsubstantiated and improper for a lay witness. |
| Defs.' Ex. 7, Restitution Chart | Fed. R. Evid. 1006; Fed. R. Civ. P. 37(c)(1) (failure to supplement response to RFP Nos. 18, 19, and 54 to Progrexion and RFP Nos. 41 and 52 to Heath P.C.). |
| | The summary calculations performed by Mr. Ralphs and Mr. Lam are further summarized in Defs.' Ex. 7. |

## ARGUMENT

**I.  Defendants failed to provide the data underlying certain of their summary calculations.**

Fed. R. Evid. 1006 requires the proponent of any "summary, chart, or calculation" summitted in court to "make the originals or duplicates available for examination or copying … by other parties at a reasonable time and place." Additionally, Fed. R. Civ. P. 26(e) requires timely supplementation if a discovery response "is incomplete or incorrect" and "corrective information has not otherwise been made known to the other parties during the discovery process or in writing …." Fed. R. Civ. P. 37(c)(1) provides that failure to supplement precludes

4

a party from using the undisclosed information in support of a motion, at a hearing, or at trial, unless the failure to supplement was substantially justified or harmless.

During discovery, the Bureau asked Defendants to produce "[c]omplete information in any System of Record[1] for all Customers" of Lexington Law and CreditRepair.com with a sign-up date on or after March 8, 2016 "showing all available fields."[2] The Bureau additionally asked Defendants to produce "[a]ll documents on which you rely to support any defense that you are asserting or will assert in this lawsuit."[3]

Defendants submitted a number of summaries and calculations, described below, in support of their Response to the Bureau's Motion for Relief and Judgment, without producing the underlying data to the Bureau as they were required to do by both Fed. R. Evid. 1006 and Fed. R Civ. P. 26(e). Defendants' Exhibit 2 in its entirety, the portion of Exhibit 7 labeled "Net Profits Calculation,"

---

[1] The Bureau's Requests for Production defined "System of Record" as "any database, spreadsheet, or other repository of [electronically stored information] that contains information regarding Customer payments, the services provided to Customers, the duration of customer relationships, the referral or lead source of Customers, cancellation requests, cancellation reasons, complaints, or refunds." Ex. 1, Bureau's Second Requests for Production to PGX Holdings, Inc. (served Aug. 28 2020), p. 7; Ex. 2 Bureau's First Requests for Production to Heath, P.C. (served Sept. 25, 2020), pp. 7-8.
[2] Ex. 1, RFP Nos. 18 and 19; Ex. 2, RFP No. 41.
[3] Ex. 2, RFP No. 52; Ex. 3, Bureau's First Set of Requests for Production to PGX Holdings, Inc., RFP No. 54 (served Aug. 5, 2019).

5

and the below-cited portions of Defendants' Exhibits 5 and 6, should therefore be deemed inadmissible under Fed. R. Evid. 1006 and Rule 37(c)(1). *See Siqueiros v. General Motors LLC*, 2022 WL 3974752, at *8 (N.D. Cal. Aug. 31, 2022) (excluding summary charts under Fed. R. Evid. 1006 where the proponent did not make the underlying materials available to the other party); *Park Cityz Realty, LLC v. Archos Capital*, 2021 WL 4991717, at *8-11 (D. Utah Oct. 27, 2021) (excluding damages evidence under Fed. R. Civ. P. 37(c)(1)). In light of Defendants' production of additional data on May 3, 2023 that relates to Defendants' Exhibit 3—data which the Bureau is currently analyzing—the Bureau reserves its objections to that exhibit and to the portion of Exhibit 7 that presents Mr. Lam's calculations ("Corrections to the Bureau's Legally Invalid Gross Revenues Calculation").

### A. Defs.' Ex. 2, Declaration of Gregrey Ralphs

Mr. Ralphs, a Progrexion employee, conducted various calculations in support of Defendants' irrelevant net profits argument. To arrive at these calculations, he ███████████████████████████████████████████████████████████████████████████████████████████████████[4] None of the financial data that Mr. Ralphs consulted has been produced to the Bureau, despite the

---

[4] Ralphs Decl. ¶ 7.

Bureau's request in discovery for "[a]ll documents on which you rely to support any defense that you are asserting or will assert in this lawsuit."[5]

### B. Defs.' Ex. 3, Declaration of Trung Khanh Lam

Mr. Lam, a Progrexion employee, ███████████████████████ relating to customer payments in support Defendants' proposed restitution offsets.[6]

Defendants did not initially produce the data that Mr. Lam relied on for his calculations, despite the Bureau's requests in discovery for "[c]omplete information in any System of Record for all Customers" of Lexington Law and CreditRepair.com with a sign-up date on or after March 8, 2016 "showing all available fields,"[7] and for "[a]ll documents on which you rely to support any defense that you are asserting or will assert in this lawsuit."[8]

After receiving Defendants' opposition brief, the Bureau promptly requested the data underlying Mr. Lam's calculations. On May 3, 2023, Defendants produced extracts from the full customer data pool that Mr. Lam used to calculate Defendant's proposed offsets. The Bureau has not had the opportunity to

---

[5] Ex. 2, RFP No. 52; Ex. 3, RFP No. 54.
[6] Lam. Decl. ¶ 7.
[7] Ex. 1, RFP Nos. 18, 19; Ex. 2, RFP No. 41.
[8] Ex. 2, RFP No. 52; Ex. 3, RFP. No. 54.

7

thoroughly analyze this voluminous data, and reserves its objections to Mr. Lam's declaration.

### C. Defs.' Ex. 5, Declaration of Chad Wallace

Mr. Wallace, Progrexion's Chief Executive Officer, provided a summary calculation in support of Defendants' arguments about Progrexion's financial condition, stating that "[t]he collective cash on hand for Progrexion, by the end of this week, will be approximately $8.1 million."[9] Mr. Wallace also provided a valuation of the "non-credit-repair" components of each unlawful CreditRepair.com fee, stating that "[t]he approximate value of these services, based on internal estimates and knowledge of similar products in the market, averaged at least $12 monthly."[10]

None of the data and other supporting material (if any) relied on by Mr. Wallace was provided to the Bureau, despite its request in discovery for "[a]ll documents on which you rely to support any defense that you are asserting or will assert in this lawsuit."[11]

---

[9] Wallace Decl. ¶ 20.
[10] *Id.* ¶ 21. The Bureau also objects to Mr. Wallace's valuation testimony under Fed. R. Evid. 401, 402, 403, 701, and 702. *See infra*, pp. 12-15.
[11] Ex. 2, RFP No. 52; Ex. 3, RFP. No. 54.

### D. Defs.' Ex. 6, Declaration of John Heath

Mr. Heath, the Principal and Directing Attorney of John C. Heath Attorney at Law P.C. (d/b/a/ Lexington Law) provided a summary calculation in support of Defendants' arguments about Heath P.C.'s financial condition, stating that "[b]y the end of this week, Lexington Law will have approximately $1.8 million cash on hand."[12] Mr. Heath also provided a valuation of the "non-credit-repair" components of each unlawful Lexington Law fee stating that "[t]he approximate value of these services, based on internal estimates and knowledge of similar products in the market, averaged at least $12 monthly."[13]

None of the data or other supporting material (if any) relied on by Mr. Heath was provided to the Bureau, despite its request in discovery for "[a]ll documents on which you rely to support any defense that you are asserting or will assert in this lawsuit."[14]

### E. Defs.' Ex. 7, Restitution Chart

The calculations performed by Mr. Ralphs and Mr. Lam are further summarized in Defendants' Exhibit 7, which shows Defendants' proposed offsets

---

[12] Heath Decl. ¶ 16.
[13] *Id.* ¶ 17. The Bureau also objects to Mr. Heath's valuation testimony under Fed. R. Evid. 401, 402, 403, 701, and 702. *See infra*, pp. 12-15.
[14] Ex. 2, RFP No. 52; Ex. 3, RFP. No. 54.

to the Bureau's restitution estimate. The figures in the "Net Profits Calculation" column are based on data that was never produced to the Bureau and the proffered deductions in the "Corrections…" column are based on data that was produced on May 3, 2023, which the Bureau is currently analyzing, and as to which the Bureau reserves its objections.

**II.     Defendants rely on irrelevant Fed. R. Civ. P. 30(b)(6) deposition testimony about superseded data.**

Defendants cite the Fed. R. Civ. P. 30(b)(6) deposition testimony of Mr. Lam in support of an incorrect claim that the Bureau's restitution estimate includes payments for credit monitoring services.[15] In the cited deposition excerpt, Bureau counsel asked Mr. Lam ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and Mr. Lam testified ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬[16] Bureau counsel then asked whether there was ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[15] Opp'n 9 (citing Defs.' Exhibit 4, Lam Dep. Excerpt).
[16] Lam. Dep. Excerpt 63:14-16.

██████████████████████████████████████████████████

████████ and Mr. Lam testified ███████████████ [17]

But, as explained in the Bureau's reply brief, the Bureau's restitution estimate does not rely on Defendants' customer data; rather, it relies on their interrogatory responses, which stated the "gross amount paid … for credit repair services, less refunds."[18] If Defendants' interrogatory responses were incorrect, it was their duty under Fed. R. Civ. P. 26(e) to correct them. They have not done so. Because the Bureau relied on Defendants' interrogatory responses, rather than their customer data, to calculate its restitution estimate, Mr. Lam's testimony is irrelevant and Defendants' citation to it is misleading. Fed. R. Evid. 401, 402, 403; *see Armijo v. Santa Fe Cnty.*, 2018 WL 3118290, at *8 (D.N.M. June 25, 2018) (booking records that the defendant police officers did not consider in deciding to arrest the plaintiff not relevant to qualified immunity defense).

Even if the Bureau had relied on Defendants' customer data for its estimate, Mr. Lam's testimony would still be irrelevant because it relates to a data file that was superseded by Defendants' subsequent data productions. After Mr. Lam's April 2021 deposition, Defendants twice re-produced their customer data, most

---

[17] *Id.* 63:17-64:1.
[18] ECF 544-15, PX-327, ECF 544-16, PX-328.

recently in September 2021. The replacement datasets exclude customers who signed up for Defendants' non-credit repair service (ReportWatch), and for customers who transitioned to credit monitoring after signing up, distinguish those payments from the payments made for credit repair services.[19] Thus, the replacement datasets are not overinclusive as Defendants misleadingly suggest.

### III. Defendants improperly and belatedly proffer expert testimony through lay witnesses.

Under Rule 701(c), a lay witness may not offer opinion testimony that is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Thus, "a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by an ordinary person." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (citation omitted). "[A] party simply may not use Rule 701 as an end-

---

[19] *See* Ex. 4, Ltr. from Bureau counsel M. McOwen to Defs.' Counsel W. Harrington & K. Tayman, May 5, 2021, p. 3; Ex. 5, Decl. Trung Khanh Lam, June 21, 2021, Ex. A, pp. 2-4 (agreeing to provide data for "[a]ll clients that signed up for … credit repair between March 6, 2016 and July 31, 2020 (excluding clients that were enrolled during that time period for ReportWatch)" and "[d]ata sufficient to show the gross payment amount by Product ID.").

run around the reliability requirements of Rule 702." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216 (10th Cir. 2011) (citation omitted).

Defendants rely on the declarations of Chad Wallace and John Heath to support their erroneous argument that they are entitled an offset for the "non-credit-repair" components of their unlawfully billed services. Mr. Wallace and Mr. Heath each assert that the "value" of these services—which they describe as including "some combination of credit monitoring, monthly credit reports, identity protection, and fraud alerts"—was approximately $12 per month.[20]

Defendants previously sought to introduce similar testimony through their proffered expert Victor Stango, who opined that the Bureau's relief estimate ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but did nothing to validate that opinion.[21] This Court properly excluded Mr. Stango's testimony.[22] Defendants now seek to offer similar testimony through Mr. Wallace and Mr. Heath—unqualified lay witnesses whose testimony is merely a re-packaging of what Defendants already tried and failed to get in through an expert. The Court should reject this attempt to effect an end-run around Rule 702.

---

[20] Wallace Decl., ¶ 21; Heath Decl. ¶ 17.
[21] ECF 374-1, Expert Report of Victor Stango, p. 25.
[22] ECF 456.

Mr. Wallace's and Mr. Heath's valuation of the non-credit repair components of Defendants' bundled services, based in part on their claimed industry knowledge, is not the sort of opinion that "could be reached by an ordinary person." *LifeWise*, 374 F.3d 917 at 929. As Tenth Circuit has explained,

> [t]he prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences.

*James River*, 658 F.3d at 1214 (quoting *Asplundh Mfg. Div. v. Benton Harbor Eng'g.*, 57 F.3d 1190, 1196 (3d Cir. 1995)). The valuation testimony offered by Mr. Wallace and Mr. Heath requires precisely the sort of specialized knowledge that places it beyond the bounds of Rule 701. *See, e.g., id.* (property valuation testimony not admissible under Rule 701); *Kechi Twp. v. Freightliner, LLC*, 592 F. App'x 657, 672-76 (10th Cir. 2014) (testimony as to the value of farm equipment and real estate not admissible under Rule 701).

Nor may Mr. Wallace or Mr. Heath offer testimony as experts under Rule 702. Not only are they unqualified, and their opinions entirely unsubstantiated, but they were never disclosed as experts and the deadline to do so has long passed.[23]

---

[23] Fed. R. Civ. P. 26(a)(2); ECF 138.

*E.g., Bryant v. Colo. Dep't of Transp.*, 2018 WL 2445831 at *5 (D. Colo. May 31, 2018) ("Defendants did not disclose Trooper Hanson as an expert witness, and thus any testimony he offers must be limited to the confines of Rule 701").

Further, the valuation testimony of both Mr. Wallace and Mr. Heath lacks any support in the record and is entirely conclusory and speculative, and therefore should be excluded under Fed. R. Evid. 401, 402, and 403. And for the reasons explained *supra* (at pp. 8-9), Fed. R. Evid. 1006 and Fed. R. Civ. P. 37(c)(1) preclude Defendants from proffering this testimony because they failed to supply any of the material on which Mr. Wallace and Mr. Heath supposedly relied.

## CONCLUSION

For the reasons stated herein, the Court should deem inadmissible and disregard Defendants' Exhibits 2 (Ralphs Decl.) and 4 (Lam Dep. Excerpt) in their entirety; the portion of Defendants' Exhibit 7 (Restitution Chart) labeled "Net Profits Calculation"; paragraphs 20 and 21 of Defendants' Exhibit 5 (Wallace Decl.); and paragraphs 16 and 17 of Defendants' Exhibit 6 (Heath Decl.). The Bureau reserves its objections Defendants' Exhibit 3 (Lam Decl.) and the portion of Defendants' Exhibit 7 labeled "Corrections to the Bureau's Legally Invalid Gross Revenues Calculation."

Dated: May 9, 2023                             Respectfully submitted,

<div style="margin-left: 40%;">

/s/ Alicia Ferrara
MAUREEN MCOWEN
JONATHAN REISCHL
TRACY L. HILMER
ALICIA FERRARA
*Enforcement Attorneys*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-9553
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

</div>