IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>Plaintiff,<br><br>v.<br><br>PROGREXION MARKETING, INC., et al.<br><br>Defendants. | Case No. 2:19-CV-00298-BSJ<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF AND JUDGMENT**<br><br>**(REDACTED)** |

  The Bureau's Motion for Relief and Judgment ("Motion"), ECF No. 544, seeks wide-ranging monetary relief for payments made to Defendants up to and through March 31, 2023. The Bureau, however, agreed years ago to limit discovery to a subset of Defendants' financial information, most of which extended only through July 31, 2020, 33 months before the end of the Bureau's claimed remedies period.  To backfill this lacuna, the Bureau's Motion simply relies on extrapolations and guesses as to information it never bothered to obtain either voluntarily or through court processes.  In response, and anticipating that it would be helpful to provide the Court *facts* rather than bare conjecture, Defendants' Opposition relied on competent, admissible evidence commonplace in motions for judgment: business records and declarations by employees with personal knowledge.  Perhaps to distract from the legal errors in its remedies theories and factual errors in its calculations, the Bureau launched a collateral attack, seeking to exclude certain financial information Defendants used to rebut the Bureau's Motion.  The Bureau's side show mischaracterizes the nature and admissibility of that evidence (to which they can raise no serious *substantive* rebuttal) and should be rejected.

1

**I.        The Bureau Has Waived Any Objections to Trung Khanh Lam's Declaration**

The Bureau briefly suggests it *might* object, at some point in the future, to Mr. Lam's declaration (Defs.' Opp. Ex. 3, ECF No. 554-3), but such an objection would be baseless because, as the Bureau admits, it already has the data it needs to validate Mr. Lam's calculations.[1]  Pl.'s Evidentiary Objections ("Objs."), ECF No. 559 at 7–8.  Defendants "produced extracts from the full customer data pool that Mr. Lam used to calculate Defendant's proposed offsets" 20 days ago, on May 3, and to date the Bureau has not asserted any objection.  *Id.* at 7.

Evidentiary objections must be filed together with responsive pleadings (14 days from the date of the motion or opposition).  *See* DUCivR7-1(b)(1)(B), (b)(3)(B).  Defendants filed their opposition to the Bureau's Motion for Judgment on April 25, 2023, and after correspondence with the Bureau, it produced data underlying Mr. Lam's declaration on April 28 and May 3.  Even assuming the Bureau should be given some additional time beyond its reply deadline to review the data it received on those dates, the opportunity to object has lapsed.  Its objections to Mr. Lam's declaration, if any, are waived.[2]

---

[1] The Bureau claims that Defendants should have provided the Bureau *in advance* with data that rebuts the Bureau's April 11, 2023 Motion, under a theoretical "obligation" to produce data supporting Defendants' defenses.  Nonsense—the Rules do not require Defendants to clairvoyantly anticipate that the Bureau would base its motion on inaccurate conjecture.  Moreover, the parties agreed to a cutoff of July 31, 2020, for the production of client data in response to the Bureau's requests.  *See* Ex. 1, CFPB's Sept. 30, 2020 Ltr. at 4 n.1; Ex. 2, Defs.' Nov. 19, 2020 Ltr. at 5.  Any suggestion that Defendants should have produced additional client data prior to responding to the Bureau's Motion in the case is (at best) misleading.

[2] Any latent objections are waived for another reason: The Bureau relies on Mr. Lam's declaration and underlying data in its own reply brief and supporting declaration.  Pl.'s Reply, ECF No. 558 at 9 & Ex. 2; *see Friends of Tuhaye, LLC v. Tuhaye Homeowners Ass'n*, 777 F. App'x 903, 912 (10th Cir. 2019) (applying invited-error doctrine in similar circumstances).

**II.     The Bureau's Objection to Mr. Lam's Deposition Rests on a Falsehood**

In briefing, Defendants pointed to sworn deposition testimony confirming that the Bureau's restitution demand is overinclusive in part because it includes payments for purely *credit monitoring* (i.e., non-credit-repair) products, which "[t]he Bureau agrees . . . are not redressable." Defs.' Opp., ECF No. 552 at 9; Pl.'s Reply, ECF No. 558 at 10. The Bureau asserts in its Objections that the deposition testimony is "irrelevant" and pertains to data that have been "superseded." Objs., ECF No. 559 at 10–12. Both assertions are false.

As to the first, during an April 2021 deposition about payment data produced by Defendants, the Bureau asked Defendants' Rule 30(b)(6) witness whether the production



. Defs.' Opp. Ex. 4, ECF No. 554-4 at 63. The witness testified, ▮ ▮ *Id.* The Bureau further asked whether ▮ ▮ . The witness answered ▮ *Id.* at 63–64.

This wasn't news to the Bureau. In its interrogatories, the Bureau had asked for the "**gross amount paid** by [CreditRepair.com and Lexington Law] credit repair Customers . . . less refunds," whether or not those clients had *also* used credit monitoring services during their lifetime, and Defendants responded by providing the data the Bureau requested. PX 327 at 6; PX 328 at 6 (emphasis added). Defendants' interrogatory responses included an admittedly clumsy description, but the Bureau's counsel and witnesses repeatedly have confirmed their understanding that Defendants' discovery responses and productions *include* payments for credit monitoring (i.e., non-credit repair) services.[3] *E.g.*, Sept. 20, 2022 Hrg. at 86 (Bureau's counsel:

---

[3] The Bureau speculates perhaps there is some disparity between Defendants' interrogatory responses and the produced data, such that the Bureau could not recreate the results using the

3

"at some point in time" consumers in the produced dataset "may have switched" from credit repair to credit monitoring); Ex. 3, Frederick Dep. 226–27 ███████████████████████████████████████████████████████████████████████.

And as to the second, in May 2021, only five days after Mr. Lam's Rule 30(b)(6) deposition, the Bureau asked Defendants to produce another round of client data, to include "all existing fields in the prior production" plus some in addition, and **specifically to include** payment data for consumers "who signed up for Credit Repair[ ] services *and* credit monitoring service, but not people who only signed up for credit monitoring services."  Ex. 4, CFPB's May 5, 2021 Ltr. at 2–3 (emphasis original).  Despite the untimely request, Defendants confirmed two days later they would produce data, as before, regarding "[a]ll clients that signed up for [ ] credit repair" but "excluding clients that ***only*** were enrolled during that time period for ReportWatch," Lexington Law's credit monitoring service.  Ex. 5, Defendants' May 7, 2021 Ltr. at 2–3 (emphasis added).[4]  The Bureau misquotes this correspondence egregiously, omitting the word "only."  Objs., ECF No. 559 at 12 n.19.  That misquotation and the argument surrounding it are worth more than $30 million in unjustifiable restitution as to Lexington Law clients alone.  Defs.' Opp. Ex. 3, ECF No. 554-3 ¶¶ 17–19.

---

produced data.  Objs., ECF No. 559 at 11.  But it knows that to be untrue.  The interrogatory responses (PX 327, 328) directed the Bureau to particular documents, identified by Bates number, where the Bureau could tally up the "gross amount paid" by credit repair clients, and they noted "[t]he burden of deriving or ascertaining the information responsive to this Interrogatory is the same for Plaintiff as it is for [Defendants]."  PX 327 at 6; PX 328 at 6.

[4] This post-deposition document request, which asked only for supplemental data and not correction of any existing data, is the sole basis for the Bureau's claim that Defendants' opposition relies on "deposition testimony about superseded data."  Objs., ECF No. 559 at 10.  The Bureau has made the same misleading claim in the past, and in both instances it has been unable to identify anything inaccurate or even outdated about the witness's testimony.  ECF No. 201 at 4; *see* ECF No. 209 at 5.  The Bureau cannot simply erase unfavorable deposition testimony by serving an untimely document request after the fact.

4

After all this time, it is incomprehensible that the Bureau persists in claiming its restitution demand "exclude[s] customers who signed up for Defendants' non-credit repair service." Objs., ECF No. 559 at 12. At no point during four years of litigation, including more than two years since discovery closed, has the Bureau ever asked for credit monitoring payments to be excluded or disaggregated from Defendants' productions or interrogatory responses. Instead it swept in tens of millions of dollars in an unjustified demand, refused to correct itself, and now insists it has met its burden to "reasonably approximate[ ]" Defendants' "unjust gains." *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 67 (2d Cir. 2006). Plainly it has not.

### III. The Bureau's Objection to Gregrey Ralphs' Declaration Is Meritless and Futile

Because equitable restitution is a "profits-based remedy," "courts must deduct legitimate expenses before ordering" such relief. *Liu v. SEC*, 140 S. Ct. 1936, 1948, 1950 (2020); *id.* at 1942–43 (equating "restitution" and "disgorgement"). Mr. Ralphs' declaration provides information about Defendants' profits and expenses and explains that Progrexion's profits equal ▮▮▮▮▮ of its revenues. Defs.' Opp. Ex. 2, ECF No. 554-2 ¶ 16.

The Bureau has staked its claim to money relief on the idea that accounting for Defendants' profits and expenses is unnecessary. Pl.'s Reply, ECF No. 558 at 5–8. According to the Bureau, this is the unusual case in which restitution occurs not *in equity* but *at law*, and the Supreme Court's instruction in *Liu*—that equitable money remedies are limited to profits—does not apply.[5] If the Bureau is right on that score, then the Ralphs declaration will be ignored on relevance grounds. If the Bureau is wrong (and it is), then its restitution demand will have been

---

[5] It is unclear "how the Bureau's [conception of] 'legal restitution' differs from 'payment of damages,'" which the Bureau has sworn off in this case. *Integrity Advance, LLC v. CFPB*, 48 F.4th 1161, 1178 (10th Cir. 2022) (Phillips, J., concurring); ECF No. 374 at 1 ("the Bureau does not seek" "economic damages").

immensely skewed, regardless of any other errors,[6] and the Bureau will have failed to meet its burden to "reasonably approximate" Defendants' "unjust gains." *Verity*, 443 F.3d at 67. Either way, the Bureau wins nothing even if its objection is sustained.

Presumably that is why the Bureau *has never asked* to see the financial data underlying Mr. Ralphs' declaration. By contrast, the Bureau asked to see data underlying Mr. Lam's declaration three days after Defendants' opposition, and Defendants supplied that data *the same day*. When the Bureau demanded more granular detail on a Sunday morning, counsel replied Monday afternoon offering to cooperate further, and Defendants supplied additional data two days thereafter. But even now, 28 days after Defendants filed their opposition brief attaching Mr. Ralphs' declaration, the Bureau still has not inquired about the underlying data. It cannot complain for the first and only time in an evidentiary objection. *Branch v. Gov't Emps. Ins. Co.*, 286 F. Supp. 3d 771, 779 (E.D. Va. 2017) (Rule 1006 satisfied where an explanation for the summary was provided and opposing party never requested anything further).

### IV. John Heath and Chad Wallace Are Competent to Opine on the Value of Their Companies' Services

The objections to Mr. Heath and Mr. Wallace's declarations are similarly without merit. It is not true that "the data or other supporting material (if any) relied on" by these witnesses is out of the Bureau's reach. Objs., ECF No. 559 at 8, 9. The Bureau fails to articulate what financial or product-related documents it seeks and does not have already, and incorrectly claims that these witnesses could not have personal knowledge about the services their companies

---

[6] The Bureau also admits that, in a claim brought under the Telemarketing Sales Rule, which regulates "telemarketing acts or practices," its "approximation" neglected to deduct more than ▮▮▮▮▮ from its restitution demand for payments made by clients who were not engaged through telemarketing. Pl.'s Reply, ECF No. 558 at 8–9. That whopping ▮▮▮▮▮ error by itself accounts for ▮▮▮▮▮ of the Bureau's demand and is indicative of a careless process for compiling a monetary demand.

provide. The Bureau is well aware of the various product levels offered by Defendants, including details about Defendants' products, service levels, and corresponding prices. ECF No. 257 Exs. 2 & 26.

Credit monitoring services are included in every Lexington Law service level. ECF No. 257 Ex. 2. Every service level includes at least two monthly credit reports. *Id.* Every service level includes identity theft insurance, some up to $1 million in coverage. *Id.* Most service levels include credit score improvement analyses, and some service levels include personal finance features like transaction alerts and risk alerts. *Id.* Each of those non-credit-repair services is independently valuable, and pricing for comparable products is in the public domain.[7] This information is all fully available to the Bureau, but the Bureau failed to account for it in its restitution demand.

Nor are these declarations in the realm of expert testimony.[8] Mr. Heath and Mr. Wallace gained knowledge of the value of their services through their combined decades of experience in and extensive familiarity with their industry. It is not expert testimony to recount that information to the Court; indeed, under the Bureau's formulation, no witness could testify about knowledge specific to their job because a juror may not be familiar with their line of work. This

---

[7] *See, e.g.*, CFPB, *What is a credit monitoring service?* (Sept. 4, 2020), https://bit.ly/43fXD0b ("Some services cost over $15 a month"); ECF No. 257 Ex. 2 (Lexington Law's "ReportWatch" credit monitoring service costs $12.95 monthly); Equifax, *What is Identity Theft Insurance?*, https://bit.ly/3Or94O9 ("Identity theft insurance typically costs between $25 and $60 a year.") (last visited May 23, 2023); FICO, *Choose a plan*, https://bit.ly/43evrKS (offering service packages with credit monitoring, identity theft insurance, and identity monitoring for $29.95 and $39.95 monthly) (last visited May 23, 2023).

[8] The Bureau mischaracterizes the Court's ruling precluding the testimony of Victor Stango. ECF No. 456 at 2. That ruling does not hold that the value of non-credit-repair services is irrelevant to the Bureau's demand for restitution. If that were the Court's ruling, it would have said as much.

7

is not the type of complex valuation testimony that courts sometimes exclude from lay witnesses in areas like the valuation of land. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (excluding lay witness from conducting "a post-fire estimate of the pre-fire value of a dilapidated, condemned, 39-year old building"); *Kechi Twp. v. Freightliner, LLC*, 592 F. App'x 657, 675–76 (10th Cir. 2014) (excluding lay witness valuation of "large, specialized, expensive pieces of equipment" and of land that required calculating depreciation after a building was destroyed). The value of Defendants' non-credit-repair products is a "straightforward, common sense" judgment from someone who is familiar with competitors' offerings. *Kechi*, 592 App'x at 675 (quoting *James River*, 658 F.3d at 1216).

If the Bureau believed this evidence was inadequate or incorrect, it was free to advance competing proof. But the Heath and Wallace testimony is admissible and directly relevant to the issues the Bureau chose to pursue at the remedies stage of this case. The objections should be overruled.

## CONCLUSION

For the reasons stated herein, the Court should overrule the Bureau's evidentiary objections to Defendants' Exhibits 2, 4, 5, 6, and 7 to the Response in Opposition to Plaintiff's Motion for Relief and Judgment.

Dated: May 23, 2023

Respectfully submitted,

*/s/ Edward J. Bennett*
Edward J. Bennett*
Edward C. Barnidge*
Suzanne Salgado*
Shauna M. Kramer*
Emma J. Nino*
Daniel Whiteley*
Paul A. Hoversten*
Loryn Helfmann*

8

Atticus DeProspo*
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000
ebennett@wc.com

*admitted pro hac vice


Karra J. Porter
Christensen & Jensen
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
(801) 323-5000
karra.porter@chrisjen.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 23, 2023, I caused a true and correct copy of the foregoing to be filed on the CM/ECF system, which will send notification of such filing to all parties and counsel in this case.

                                                */s/ Emma J. Nino*
                                                Emma J. Nino