IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION, <br>     *Plaintiff*, <br><br>        v. <br><br> PROGREXION MARKETING, INC., *et al*., <br><br>     *Defendants*. | Case No.  2:19-cv-00298-BSJ <br><br> [THIRD AMENDED PROPOSED] PRETRIAL ORDER |

Table of Contents

1.   JURISDICTION AND VENUE ........................................................................1

2.   GENERAL NATURE OF THE CLAIMS OF THE PARTIES .....................2

3.   UNCONTROVERTED FACTS ....................................................................15

4.   CONTESTED ISSUES OF FACT ...............................................................16

5.   CONTESTED ISSUES OF LAW .................................................................20

6.   EXHIBITS ...................................................................................................22

7.   WITNESSES ...............................................................................................24

8.   REQUESTS FOR INSTRUCTIONS ...........................................................27

9.   AMENDMENTS TO PLEADINGS .............................................................28

10.  DISCOVERY ...............................................................................................28

11.  PENDING AND ANTICIPATED MOTIONS ..............................................28

12.  TRIAL SETTING .........................................................................................29

13.  POSSIBILITY OF SETTLEMENT .............................................................30

This matter having come before the court on June 29, June 30, September 20, and September 21, 2022, and on July 10 and July 11, 2023, at pretrial conferences held before the Honorable Bruce S. Jenkins, pursuant to Fed. R. Civ. P. 16; and Maureen McOwen, Jonathan Reischl, Tracy Hilmer, and Alicia Ferrara having appeared as counsel for Plaintiff, and Williams & Connolly LLP and Karra J. Porter having appeared as counsel for Defendants, the following action was taken:

1.    JURISDICTION AND VENUE

This is an action for injunctive relief, monetary relief for affected consumers, and civil money penalties. Jurisdiction of the court is invoked under 28 U.S.C. §§ 1331 & 1345. The jurisdiction of the court is not disputed and is hereby determined to be present. Venue was determined by the court to be proper pursuant to 12 U.S.C. § 5564(f). Venue is laid in the Central Division of the District of Utah. *See* 28 U.S.C. § 125.

2.     GENERAL NATURE OF THE CLAIMS OF THE PARTIES

(a)     Plaintiff's claims:

## *Count I – TSR Billing Claims Against Heath PC and Progrexion*

On March 10, 2023, this Court granted Plaintiff's Motion for Partial
Summary Judgment on Count I Against All Defendants, holding that Defendants[1]
violated the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(a)(2), by failing
to comply with the rule's payment preconditions prior to charging consumers for
telemarketed credit repair services.

For Defendants' TSR billing violations, Plaintiff seeks monetary relief, in
the form of legal restitution or refund of moneys, for telemarketed consumers who
paid for Defendants' credit repair services, including for the initiation of those
services, on or after March 8, 2016; a civil money penalty against Heath PC for
violating § 310.4(a)(2) since March 8, 2016 with respect to Lexington Law credit
repair services; separate civil money penalties against the Progrexion Defendants
for violating § 310.4(a)(2) since March 8, 2016 with respect to both Lexington
Law and CreditRepair.com credit repair services; and injunctive relief against all

---

[1] The Defendants are: PGX Holdings, Inc. ("PGX Holdings"), Progrexion
Marketing, Inc. ("Progrexion Marketing"), Progrexion Teleservices, Inc.
("Progrexion Teleservices"), eFolks, LLC ("eFolks"), and CreditRepair.com, Inc.
("CreditRepair.com"), collectively referred to as "Progrexion" or the "Progrexion
Defendants" and John C. Heath, Attorney-at-Law, P.C., d/b/a Lexington Law
("Heath PC" or "Lexington Law").

Defendants going forward, including a requirement that Defendants fundamentally change their billing practices to comply with the law.[2]

Because the Court has determined that Defendants' credit repair billing practices have violated 16 C.F.R. § 310.4(a)(2), Heath PC and Progrexion are liable, jointly and severally, without further showing, to refund all moneys paid by any telemarketed consumer for Lexington Law credit repair services during the actionable period (March 8, 2016 to the present), and the Progrexion Defendants are likewise liable, jointly and severally, to refund all moneys paid by any telemarketed consumer for CreditRepair.com credit repair services during the actionable period. Defendants are liable to make full refunds to their telemarketed credit repair customers because Defendants never complied with § 310.4(a)(2)'s requirements during the actionable period, and thus each billing for their telemarketed credit repair services was unlawful.[3] No deduction is appropriate for the implied monetary value of bundled services or payments made by repeat

---

[2] The Bureau's specific relief requests, and the legal and factual bases therefore, are set out in Plaintiff's Motion for Award of Monetary and Injunctive Relief, Assessment of Civil Money Penalties, and Entry of Final Judgment Against All Defendants on Count I, ECF 544 (Relief Motion), and Plaintiff's Reply in support of its Relief Motion, ECF 558. The Court denied the Bureau's Relief Motion without prejudice. ECF 574.

[3] *See* Relief Motion, pp. 3-10.

customers.[4] And no further deduction is appropriate for non-credit repair payments because the Bureau has included only credit repair payments in its calculation.[5]

The parties previously had a dispute as to whether the CreditRepair.com services Monitor & Maintain and ThinkCredit were properly considered credit repair services. The parties have resolved their dispute and the applicable payments for those services have been included in the Bureau's relief calculation.[6]

On June 13, 2023 the Bureau requested updated consumer datasets that all parties can rely on, which cover the entire time period and include all fields related to Plaintiff's claimed redress and Defendants' claimed offsets. Comprehensive, common datasets would yield greater certainty in the calculations and reduce unnecessary disputes. Defendants produced some of the data that the Bureau requested on June 30 and July 2, 2023.

Regarding civil penalties, the Bureau's burden under 12 U.S.C. § 5565(c)(2) is to show the number of violations and, for Tier 2 or Tier 3 violations under § 5565(c)(2)(B) and (C), the violator's scienter. The Court will determine the penalty amounts based on the number of violations, Defendants' scienter (if necessary), and any applicable statutory factors under § 5565(c)(3). Here, the

---

[4] *See* Reply in Support of Relief Motion, pp. 11-13.
[5] *Id.*, pp. 10-11.
[6] The Bureau has agreed to exclude payments for a separate service called "ThinkCredit Without Credit Repair," which Defendants represent was offered between January and November 2018.

Bureau will show that the maximum Tier 1 penalty is appropriate against Heath PC for its violations of the TSR every day for at least 2,587 days with respect to its Lexington Law operations, the maximum Tier 1 penalty is appropriate against the Progrexion Defendants for their violations of the TSR every day for at least 2,587 days with respect to their Lexington Law operations, and the maximum Tier 1 penalty is appropriate against the Progrexion Defendants for their violations of the TSR every day for at least 2,587 days with respect to their CreditRepair.com operations.

The Bureau additionally seeks injunctive relief to prevent Defendants from committing further violations of § 310.4(a)(2). The injunction should bar Defendants from requesting or receiving payment from telemarketed consumers for credit repair services until the requirements of § 310.4(a)(2) are fulfilled; require Defendants to enter into written agreements with each telemarketed customer clearly setting forth the time frame in which all of the services will be performed, the credit repair results Defendants will seek to achieve, the cost of the services if those results are achieved, and when payment will be due; and include provisions to permit the Bureau to monitor and enforce Defendants' compliance with the order's provisions.[7]

---

[7] The Bureau included proposed injunctive provisions in the proposed order filed with its Relief Motion, ECF 544.

The Bureau will offer evidence regarding Defendants' continued violations of § 310.4(a)(2) after the March 10 Order, including testimony from at least one consumer. For example, Roy Mertz, a former Lexington Law customer who signed up through telemarketing, will testify about the repeated emails that he received from Defendants attempting to convince him to re-sign his contract online and charges for credit repair services by Defendants after March 10, 2023.

*Counts II-V – Deception and Substantial Assistance Claims Against Progrexion*

In Counts II and III, Plaintiff alleges that Defendants PGX Holdings, Progrexion Marketing, Progrexion Teleservices, eFolks, and CreditRepair.com (collectively, "Progrexion" or the "Progrexion Defendants"), engaged in deceptive acts or practices in violation of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531, 5536(a)(1), and the TSR, 16 C.F.R. § 310.3(a)(4). Plaintiff alleges that Progrexion relies on marketing affiliates (also known as "Hotswap Partners") to advertise their services, and that certain Hotswap Partners, referred to here as the Relevant Hotswap Companies,[8] used deceptive, bait advertising to generate referrals to Defendants' credit repair services. Plaintiff

---

[8] The Relevant Hotswap Companies are: OLP.com ("One Loan Place"), The H.O.P.E. Program, LLC ("HOPE"), Ascent Mortgage Resource Group ("Ascent"), Easyhomeownership.net ("Easy Home Ownership"), and YHTBA Corp. ("Rent2Own.House"). In this action, Plaintiff will not pursue claims or monetary remedies pertaining to Ownerwiz Realty, Inc. or Hotswap Partners other than the five Relevant Hotswap Companies under Counts II-V of the Amended Complaint.

further alleges that the Relevant Hotswap Companies were acting as Progrexion's agents and Progrexion is liable for the acts of its agents. Plaintiff further alleges that Progrexion had knowledge—that is, actual knowledge, reckless indifference, or intentional avoidance of the truth—of the deceptive advertising schemes and either participated in those schemes or had the authority to control the deceptive acts or practices, but allowed them to proceed.

In Counts IV and V, Plaintiff alleges that Progrexion substantially assisted deceptive acts or practices in violation of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(3), and the TSR, 16 C.F.R. § 310.3(b). Plaintiff alleges that Progrexion provided many forms of assistance and support to its Hotswap Companies that were engaged in deceptive advertising, and that Progrexion either knew, consciously avoided knowing, or recklessly disregarded, the Hotswap Companies' deceptive acts or practices.

For Defendants' deception and substantial assistance violations, Plaintiff seeks monetary relief, in the form of legal restitution or the refund of moneys, for hotswap-affected consumers who paid Defendants on or after July 21, 2011; civil monetary penalties for each violation that occurred on or after July 21, 2011; and injunctive relief going forward, including a requirement that Defendants eliminate their use of deceptive advertising in their hotswap telemarketing channel.

There are four disputed legal questions relevant to Counts II-V (*see infra* Contested Issues of Law 9 through 12). The Bureau's positions regarding the Bureau's burden to show the right to and scope of consumer relief and Progrexion's statute of limitations defense are set out in the Appendix. The remaining legal question is whether the Relevant Hotswap Partners were covered persons or service providers when they advertised for the Defendants. *See* 12 U.S.C. § 5481(6), (26). Progrexion has conceded that it is a covered person[9] and the Bureau's position is that the five Relevant Hotswap Partners were indisputably service providers to Progrexion, as well as engaged in offering or providing consumer financial products or services in their own right.

(b)     Defendants' claims:

Defendants deny that any of the Bureau's prayed-for relief should be granted and deny any liability for the claims alleged in Counts II through V.[10]

*Count I*

Although Defendants acknowledge the Court's March 10, 2023 ruling as to the meaning of the AFP, Defendants maintain that their past billing practices were

---

[9] Tr. Hr'g June 30, 2022, 120:22-121:6 (The Court: "Is [Progrexion] acknowledged to be a covered person?" Counsel for Defendants: "Yes, Your Honor.").

[10] On March 10, 2023, the Court granted the Bureau's Motion for Partial Summary Judgment as to liability for Count I.  Dkt. No. 508.  This proposed order is intended to address the issues remaining for decision following the Court's ruling, as to which Defendants preserve their objections and rights to appeal.

undertaken in good faith and with a reasonable basis in applicable law as they understood it prior to the Court's order.  Defendants also deny that the Bureau is entitled to any monetary relief, civil monetary penalties, or injunctive relief for Count I.[11]

As to monetary relief, the Bureau cannot bear its burden to prove that restitution or refunds are appropriate remedies because it has failed to provide proof that consumers were harmed, and in fact has disavowed that it must demonstrate such harm.  Even if the Court determines that restitution or refunds are appropriate remedies, the Bureau also bears the burden to prove that the amount of restitution or refunds it seeks reflects Defendants' allegedly unjust gains.  Any restitution or refund[12] figure must exclude payments for services that do not fall within the category of "credit repair," expenses Defendants incurred to operate and provide services, *see* Appendix at p. 11 n.24 (amount of restitution, an equitable remedy, may not exceed Defendants' "net profits."); *Liu v. SEC*, 140 S.

---

[11] Defendants' positions as to the Bureau's requests for relief on Count I are explained more fully in Defendants' Response in Opposition to the Bureau's Motion for Relief, ECF No. 554.

[12] For the first time in this proposed order, the Bureau argues that Defendants must make "full" refunds of all payments received.  The word "full" does not appear in the statute, and interpreting the plain meaning of "refund of moneys" to require return of gross revenues regardless of consumer satisfaction or services rendered would make the term "restitution" superfluous and give consumers an unjustified windfall.

Ct. 1936, 1942–43 (2020), and payments by clients or customers who were satisfied with the services they received.

As to civil monetary penalties, there is no basis in fact or law for the award of the maximum Tier I penalty under 15 U.S.C. 5565(c)(3). The mitigating factors set forth in 12 U.S.C. 5565(c)(3), notably the Defendants' good faith efforts to comply with all legal requirements as they understood them, militate in favor of a modest penalty, if any. Moreover, any penalty amount must be distributed among Defendants, not assessed three times over, as it is based on the same underlying violations.

Additionally, the Bureau is not entitled to injunctive relief. After decades of silence during which Defendants relied on and conformed their conduct to the prevailing view of the law, the Bureau sought through this action to enforce a novel interpretation.[13] When this Court ultimately agreed with the Bureau's interpretation, Defendants promptly conformed their actions to the law, just as they had done for decades based on their prior interpretation.[14] Defendants' good faith compliance confirms that no injunction is appropriate.

---

[13] At the June 30, 2022 Pretrial Conference, the Court dismissed Defendants' constitutional defenses and directed other changes to the parties' joint proposed pretrial order. This proposed order is intended to reflect the Court's rulings, as to which Defendants preserved their objections and rights of appeal.

[14] Defendants reviewed the Bureau's contentions regarding one consumer, Roy Mertz, out of the 375,000 consumers affected by the Court's March 10, 2023

Finally, to the extent the Bureau now argues billing a client for services that were provided under client contracts executed online or otherwise separate from a telemarketing transaction can nonetheless violate the ***Telemarketing*** Services Rule, such argument is not only an incorrect expansion of the Rule to cover ***non***-telemarketed services but outside the scope of both the Amended Complaint and the Court's March 10, 2023 Order.

*Counts II-V*

As to Counts II–III, Progrexion denies engaging in deceptive acts or practices in violation of the CFPA or the TSR. The Bureau alleges that Progrexion contracted with Relevant Hotswap Companies who used deceptive advertising to generate referrals, specifically by falsely representing that certain products or services would be available to consumers who signed up for credit repair services. Progrexion maintains that such products or services either were in fact available, or Progrexion did not know that they were not available. Moreover, Progrexion had robust compliance programs designed to protect consumers, including a policy and practice of ensuring that its employees did not tie signing up for credit repair services with eligibility for a third party's product or service—either explicitly or implicitly—and the evidence in the case will reflect this practice. As a result,

---

Order. After reviewing his case, Defendants paid back to Mr. Mertz the amounts he was inadvertently billed in May 2023 because he should not have been billed for those amounts.

Progrexion neither participated in any allegedly deceptive scheme nor stood by and knowingly allowed such a scheme to proceed; rather, it actively worked to avoid consumer confusion.

Nor can Progrexion be liable under the Bureau's agency theory. Neither the CFPA nor the TSR provides for this type of secondary liability. Even if there were some statutory basis for the Bureau to hold Progrexion liable for a third-party agent's actions, there would be no basis for concluding that the Relevant Hotswap Companies acted under Progrexion's control. And any misrepresentations any Relevant Hotswap Company may have made about *its own business* was outside the scope of any agency relationship that might have existed with a Defendant.

Finally, Progrexion denies liability under Counts IV and V for substantially assisting deceptive acts or practices in violation of the CFPA or the TSR. Progrexion maintains that it did not knowingly, recklessly, or with conscious avoidance provide substantial assistance to entities in violation of these provisions because those entities were not in fact engaged in deceptive acts and because Progrexion had no knowledge of any alleged deception. In addition, these provisions only prohibit the knowing or reckless provision of substantial assistance to a "covered person" or "service provider," 12 U.S.C. § 5536(a)(3), or in relation "to the offering or provision of a consumer financial product or service subject to

12

[the CFPA]," 15 U.S.C. § 6105(d).  The Relevant Hotswap Companies in the rent-to-own business do not fit either category.

As set forth in more detail in the Appendix, the Bureau also should be barred from recovery due to its failure to act diligently in investigating the conduct underlying this suit or to take any action based on evidence it gathered years before filing its complaint that it now claims as the basis for its allegations,[15] and because the government maintained its silence for decades while Defendants relied on and conformed their conduct to the prevailing view of the law.  This delay, along with the Bureau's failure to request a preliminary injunction when it ultimately did bring suit years later, also should preclude the Bureau from securing the injunctive relief it seeks.[16]

As to Counts II-V, Defendants submit that the Bureau cannot recover for any alleged violations that occurred before March 8, 2016 due to the three-year statute of limitations applicable to claims under the TSR and CFPA.  The Bureau discovered, or had a basis for investigating the claims brought here more than five years prior to March 8, 2019, when the parties entered into a tolling agreement, but nonetheless failed to timely investigate or file claims.

---

[15] *See* Appendix at pp. 12-16.

Defendants also deny that the Bureau is entitled to any monetary relief, civil monetary penalties, or injunctive relief for Counts II-V.

As to monetary relief, the Bureau bears the burden to prove that restitution or refunds are appropriate remedies in part because there was actual consumer reliance on any purported misrepresentations made *by the Defendants*—a contention the Bureau's evidence does not support.[17]

As described above, the Bureau also bears the burden to prove that the amount of restitution or refunds it seeks reflects Defendants' allegedly unjust gains.  This burden requires the Bureau to define the *scope* of liability and Defendants' supposed "unjust gains" at all relevant times, which it cannot do..

As to civil monetary penalties for Counts II–V, in the event of a liability finding, there is no basis in fact or law for the award of Tier II or Tier III penalties under 15 U.S.C. 5565(c)(3).  Nor can the Bureau seek damages based on Defendants' entire customer base.  There is no valid basis by which the Bureau can extrapolate from the limited, non-representative sample of consumers referenced in the factual record to prove that all customers were exposed to any purported misrepresentations, let alone that there was universal, detrimental reliance.

---

[17] *See* Appendix at pp. 9-11 (no authority supports the Bureau's attempt to apply the *Freecom* principle—that widespread dissemination of material misrepresentations can create a rebuttable presumption of consumer reliance—to purported misrepresentations made by a third party).

Defendants reserve all rights as to defenses asserted in this litigation.

3.     UNCONTROVERTED FACTS

The following facts are established by admissions in the pleadings, by order

pursuant to Fed. R. Civ. P. 56(d), or by stipulation of counsel:

1.     The Progrexion Defendants, including PGX Holdings,

Progrexion Marketing, Progrexion Teleservices, eFolks, and

CreditRepair.com, shall be treated as a single company for the

purposes of establishing liability in this litigation.

2.     Defendant PGX Holdings, Inc. agrees to be liable for any

judgment against the Progrexion Defendants in this litigation.

3.     For purposes of this litigation, evidence of any action,

omission, or knowledge of any Progrexion Defendant is

attributable to all Progrexion Defendants, and all Progrexion

Defendants shall be jointly and severally liable for any

monetary relief or civil money penalty and subject to all

injunctive provisions, if any are ordered. Proof of a defense as

to any Progrexion Defendant is attributable to all Progrexion

Defendants.

Bureau's position on additional facts:  The parties previously agreed to 24

additional uncontroverted facts established by admissions in the pleadings, other

record admissions, or by stipulation of counsel. *See* ECF No. 438, § 3(a), (b), (c), (d) (signed by counsel for all parties). Defendants refuse to include those agreed facts in this version of the proposed pretrial order. Plaintiff's position is that the parties remain bound by their prior agreement and their joint representation to the Court that those facts are uncontroverted.

Defendants' position on additional facts:  This section previously included unnecessary and incomplete statements from the Complaint based on the Bureau's interpretation of the model pretrial order from the District of Utah.  Pursuant to the Court's guidance during the Pretrial Conference in June, Defendants removed those statements.  *See* 6/29/22 Tr. at 121:16-123:9.  It is neither appropriate nor accurate to include as uncontroverted facts in the Pretrial Order certain statements from the Complaint that do not accurately reflect all relevant facts.

4.   CONTESTED ISSUES OF FACT

The contested issues of fact related to Count I relief are as follows:

1.   What is the total amount of payments (minus refunds) for telemarketed credit repair services by consumers who enrolled in Lexington Law's credit repair services on or after March 8, 2016, including after April 5, 2023?[18]

---

[18] The parties are still analyzing Defendants' recently produced data and may be able to resolve Contested Issues of Fact 1 and 2 prior to the start of the Pretrial Conference.

2.     What is the total amount of payments (minus refunds) for telemarketed credit repair services by consumers who enrolled in CreditRepair.com's credit repair services on or after March 8, 2016, including after April 5, 2023?

3.     Is $12 per month the monetary value, if any, of the non-credit-repair component of Defendants' bundled credit repair services?[19]

4.     Do Defendants have any legitimate business expenses and, if so, what is their amount?[20]

5.     Do any of the statutory factors, 12 U.S.C. § 5565(c)(3), support mitigation or enhancement of the penalty imposed on any Defendant?

6.     Is there a cognizable danger that Defendants will violate it 16 C.F.R. § 310.4(a)(2) in the future?

---

[19] The fact issue stated in paragraph 3 is only pertinent if the Court accepts Defendants' legal argument that Defendants are, as a legal matter, entitled to an offset for the implied monetary value of the non-credit-repair component of Defendants' bundled credit repair services.

[20] The fact issue stated in paragraph 4 is only pertinent if the Court accepts Defendants' legal argument that Defendants are, as a legal matter, entitled to an offset for legitimate expenses under *Liu v. SEC*, 140 S. Ct. 1936 (2020).

The contested issues of fact related to Counts II-V are:

7.     In connection with generating leads for Defendants or advertising Defendants' services, did any of the Relevant Hotswap Companies make material representations that were likely to mislead ordinary consumers?

8.     In connection with handling telephone calls transferred from the Relevant Hotswap Companies, did Progrexion employees make material representations that were likely to mislead ordinary consumers?

9.     In connection with advertising credit repair, identifying potential credit repair customers, and transferring potential customers to Progrexion, were the Relevant Hotswap Companies acting as agents of Progrexion?[21]

10.    Did Progrexion possess the requisite mental state regarding whether the Relevant Hotswap Companies made material representations that were likely to mislead ordinary consumers in connection with generating leads for Progrexion Marketing

---

[21] The issues stated in paragraphs 9-13 are only pertinent if the Bureau is able to prove that the Relevant Hotswap Companies used false or misleading advertising or made false or misleading statements.

and/or advertising CreditRepair.com or Lexington Law services?

11. Did Progrexion directly participate in or have the authority to control any deceptive practices in which the Relevant Hotswap Companies allegedly engaged?

12. As to each of the Relevant Hotswap Companies: during what time period(s) did the Relevant Hotswap Company make any material representations that were likely to mislead ordinary consumers; during what time periods did Progrexion possess the requisite mental state to be held liable for such actions; and which consumers were affected?

13. What assistance or support, if any, did Progrexion provide to the Relevant Hotswap Companies, and was it substantial assistance or support?

14. Did the Plaintiff discover, or should it reasonably have discovered, the facts constituting its claims regarding the Relevant Hotswap Companies (Counts II-V) prior to March 8, 2016?

5.     CONTESTED ISSUES OF LAW

The contested issues of law related to Count I relief, in addition to those implicit in the foregoing issues of fact related to Count I relief, are as follows:

1.     Should the value of "non-credit-repair" services (e.g., credit monitoring) provided to Defendants' customers that signed up for bundled credit repair services be included in any calculation of Count I restitution or refunds?

2.     Was the fee that Defendants characterize as a fee for the resale of a full TransUnion credit report, and that Plaintiff characterizes as an initiation fee, a fee for "goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating"?

3.     Should payments by repeat customers (i.e., those who signed up for Defendants' credit repair services more than once) be included in any calculation of Count I restitution or refunds?

4.     Under *Liu v. SEC*, 140 S. Ct. 1936 (2020), should Defendants' legitimate business expenses, if any, be included in any calculation of Count I restitution or refunds?

5.   With respect to telemarketed credit repair customers who were enrolled in Defendants' credit repair services as of April 5, 2023, and who subsequently re-signed an agreement for Defendants' credit repair services online (without further telemarketing), are the services provided to those consumers subject to the TSR and are those consumers entitled to a refund or restitution for any payments made since April 5, 2023?

6.   Are Heath PC and the Progrexion Defendants separately liable for civil money penalties or should one penalty be assessed against all Defendants for each violation?

7.   Are the Progrexion Defendants liable for civil money penalties for their violations of 16 C.F.R. § 310.4(a)(2) associated with their CreditRepair.com operations and separate civil money penalties for their 16 C.F.R. § 310.4(a)(2) violations associated with their Lexington Law operations?

8.   Is there a cognizable danger that Defendants will violate 16 C.F.R. § 310.4(a)(2) in the future?

The contested issues of law related to Counts II-V, in addition to those implicit in the foregoing issues of fact related to Counts II-V, are:

9.    Can Progrexion be held liable under 12 U.S.C. § 5536(a)(1)(B) or 16 C.F.R. § 310.3(a)(4) for deceptive acts or practices by the Relevant Hotswap Companies in connection with marketing Lexington Law and CreditRepair.com's credit repair services?

10.    What is Plaintiff's burden in order to obtain consumer redress for the deception claims (Counts II-V)?[22]

11.    Are Counts II, III, IV, and/or V of the Complaint barred or limited by the applicable statute of limitations?[23]

12.    Were the Relevant Hotswap Companies covered persons or service providers as those terms are defined in the CFPA during the period each advertised for Defendants?

6.    EXHIBITS

The following were received in evidence or were identified and offered:

(a)    Joint exhibits identified: see Attachment A.[24]

(b)    Plaintiff's exhibits identified: see Attachment B.

(b)    Defendants' exhibits identified: see Attachment C.

---

[22] See Appendix for the parties' position statements on this Contested Issue of Law.

[23] See Appendix for the parties' position statements on this Contested Issue of Law.

[24] Certain Joint Exhibits are subject to objections regarding limited purpose, as indicated in Attachment A.

(c)     Exhibits received in evidence and placed in the custody of the clerk may be withdrawn from the clerk's office upon signing of receipts therefor by the respective parties offering them.  The exhibits shall be returned to the clerk's office within a reasonable time and in the meantime shall be available for inspection at the request of other parties.

(d)     Exhibits identified and offered that remain in the custody of the party offering them shall be made available for review by the offering party to any other party to the action that requests access to them in writing.

(e)     Except as otherwise indicated in the Objections listed in Attachments A, B, and C, the authenticity of the exhibits listed in Attachments A, B, and C has been stipulated, but they are subject to other objections, if any, by an opposing party at the trial as to their relevancy, admissibility, and materiality.

(f)     All affirmative FRE 1006 summary exhibits[25] and any other affirmative exhibits to be offered, the necessity for which reasonably cannot now be anticipated, will be submitted to opposing counsel at least 30 days prior to trial. Rebuttal exhibits (including FRE 1006 summary rebuttal exhibits) will be exchanged at times to be agreed upon by the parties.

---

[25] The parties are working on calculations and summary exhibits related to the Bureau's consumer redress demand based on Defendants' recently produced datasets and will supplement their respective Exhibit Lists as needed before the Pretrial Conference.

7.    WITNESSES[26]

(a)    In the absence of reasonable notice to opposing counsel to the contrary:

(i)    Plaintiff <u>will</u> call as witnesses:[27]

- Christopher Albanese*^
- Shane Frederick*^
- Timothy Hanson*^
- Camille Hinds*^
- Elizabeth Rosario*^
- Jesse Beal*^
- Jeremy Crane*^
- J.R. Curtis^
- Blakely Hankins^
- John C. Heath*^
- Reagan Nickl^
- Robert Olson^
- Chad Wallace*
- The following individual consumers affected by Defendants' alleged misconduct:
  - Chris Hilderbrand*
  - Arkh Isra Ali-Dey*^

---

[26] Witnesses marked with an asterisk are expected to be called in connection with Count I relief; witnesses marked with a carrot are expected to be called in connection with Counts II-V.

[27] Not all of these individuals are within the Court's subpoena power and they may not agree to attend. The Bureau reserves the right to designate deposition testimony in the event a witness refuses to appear.

- o   Jahzara Isra Ali-Dey*^
- o   David Jacobs*^
- o   Jacqueline Jacobs*^
- o   Roy Mertz*
- o   Robert Nelson*^
- o   Susie Renee Parker*^
- o   Susan Robinson*^
- o   Pamela Shaw*
- o   Buck Slover*^
- o   Christopher Wilburn*^
- o   Maryellen Woods*^

(ii)   Plaintiff <u>may</u> call as witnesses:[28]

- Lorenzo McQuiller*
- Timothy Williams*^
- Progrexion or Heath custodian of records with knowledge of the company's record-keeping practices if necessary to authenticate documents or establish a business records foundation*^

---

[28] Due to significant health concerns that are a barrier to travelling to Utah and attending trial in person, Plaintiff may seek leave to have certain consumer witnesses testify via live video conference (i.e., Zoom) or to take trial depositions to preserve the testimony of those consumers.

Defendants contend the Court should deny any request by Plaintiff to have consumer witnesses testify remotely or to take their depositions now, long after discovery has been closed.  Despite selecting and identifying the at-issue consumers over a year and a half ago, Plaintiff chose not to depose a single consumer during the discovery period.  Any request to allow remote testimony from these non-deposed individuals or to reopen discovery on the eve of trial would be prejudicial to Defendants and should be denied.

(iii)   Plaintiff will likely use the following depositions:

- Jesse Beal (May 5, 2021)*^
- Joseph Delfgauw (Jan. 8, 2021 & Jan. 14, 2021)^
- Kelly Etherington (Apr. 28, 2021)*^
- Jacob Hamilton (May 6, 2021)^
- Jeffrey Johnson (May 10, 2021)*^
- Terry Kealamakia (May 11, 2021)*^
- Brenda Kemp (Dec. 15, 2020)^
- Trung Khanh Lam (Apr. 28, 2021)*^
- Billy Ness (Feb. 12, 2021)^
- Khang Nguyen (May 10, 2021)*^
- Christopher Robinson (Jan. 28, 2021 & Feb. 9, 2021)^
- Christina Rook & Vincent Russo (Feb. 24, 2021)*^
- Chad Wallace (May 5, 2021)*^

(b)   In the absence of reasonable notice to opposing counsel to the contrary:

(i)   Defendants <u>will</u> call as witnesses (not including any witnesses solely for impeachment or rebuttal):

- Christopher Albanese^
- Brad Blanchard^
- J.R. Curtis^
- Kelly Etherington^
- Jacob Hamilton^
- Blakely Hankins^

26

- John C. Heath*^
- Cody Johnson*^
- Terry Kealamakia^
- Trung Khanh (Tony) Lam*^
- Khang Nguyen^
- Kirk Nielson^
- Randy Padawer^
- Chad Wallace*^

(ii)    Defendants <u>may</u> call as witnesses:

- Kurt Artecona^
- Arnold Barnett*^
- John Delponti*^
- Thomas Maronick*^
- Cynthia Thaxton^
- Yoram Wind ("Jerry")*^

(iii)    Defendants will likely use the following depositions:

- Joe Delfgauw (Jan. 08, 2021 & Jan. 14, 2021)^
- Brenda Kemp (Feb. 15, 2021)^
- Thomas Kim (May 13 & 14, 2021)^
- Christopher Robinson (Jan. 28, 2021 & Feb. 9, 2021)^
- Christina Rook & Vincent Russo (Feb. 24, 2021)^

8.    REQUESTS FOR INSTRUCTIONS

If the case is to be tried before a jury, requests for instructions to the jury and special requests for voir dire examination of the jury shall be submitted to the court

27

pursuant to DUCivR 51-1.  The parties' submissions shall not be limited by the contested issues of fact and law outlined above, and all parties reserve their rights to request any and all relevant instructions.  Counsel may supplement requested instructions during trial on matters that could not reasonably be anticipated prior to trial.

9.    AMENDMENTS TO PLEADINGS

On August 17, 2022, with leave of Court, Plaintiff filed an Amended Complaint.  ECF No. 457.  Defendants filed their Answers to the Amended Complaint on August 31, 2022. ECF Nos. 458, 459.

10.    DISCOVERY

Discovery has been completed.

11.    PENDING AND ANTICIPATED MOTIONS

    a.  Plaintiff's Motion to Exclude the August 20, 2021 Expert Report of John DelPonti, Jr. and Related Testimony (ECF 224)

    b.  Plaintiff's Motion to Exclude the Rebuttal Expert Report and Testimony of Thomas J. Maronick (ECF 295)

    c.  Plaintiff's Motion to Exclude Testimony of John DelPonti, Jr., Related to His Oct. 25, 2021 Supplemental and Rebuttal Expert Reports (ECF 361)

d.  Defendants' Motion to Exclude the Expert Reports and Testimony of Dr. Shane Frederick (ECF 362)

e.  Plaintiff's Motion to Exclude the Testimony of Dr. Yoram Wind and his Expert Report (ECF 367)

f.  Plaintiff's Motion to Exclude the Testimony of Dr. Arnold Barnett (ECF 371)

g.  Defendants' Brief in Support of Jury Demand (ECF 442)

h.  The parties anticipate filing motions *in limine* after the conclusion of the final pretrial conference.

12.  TRIAL SETTING

At this time, Plaintiff estimates that its trial presentation will take approximately 11 days (including rebuttal); Defendants estimate that their trial presentation will take approximately 4–8 days, the precise length of which will be heavily dependent on the substance of Plaintiff's case. All parties reserve their rights to revise these estimates.

*Complete either a. or b.*

a.    The case was set for trial _____ with/ _____ without a jury on _____, 20____ at _____ o'clock ___.m. at Salt Lake City.  *See* 28 U.S.C. § 1404(b).

b.      No definite setting was made, but it was estimated that the case will be set for trial no later than _____, 20__. Estimated length of trial is __ - __ days.

13.     POSSIBILITY OF SETTLEMENT

The possibility of settlement is considered poor at this time.

The foregoing proposed pretrial order (prior to execution by the court) is hereby adopted this _____ day of _____, 20____.

_____
Hon. Bruce S. Jenkins
United States District Judge

Counsel:

/s/ Jonathan Reischl
Maureen McOwen
Jonathan Reischl
Tracy L. Hilmer
Alicia Ferrara
(202) 435-9202
maureen.mcowen@cfpb.gov
jonathan.reischl@cfpb.gov
tracy.hilmer@cfpb.gov
alicia.ferrara@cfpb.gov
1700 G Street, NW
Washington, DC 20552

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

/s/ Shauna M. Kramer
Edward J. Bennett*
Edward C. Barnidge*
Suzanne Salgado*
Shauna M. Kramer*
Paul A. Hoversten*
Emma J. Nino*
Daniel Whiteley*
Loryn Helfmann*
Atticus DeProspo*
Williams & Connolly LLP
680 Maine Avenue S.W.
Washington, DC 20024

Karra J. Porter
Christensen & Jensen
257 East 200 South, Suite 1100
Salt Lake City, UT 84111

(801) 323-5000
Karra.porter@chrisjen.com


*Attorneys for Defendants*
(*admitted *pro hac vice*)